UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| **Plaintiff** | ) | **Civil Case No. 00-035-L** |
| **v.** | ) | **Judge Ronald R. Lagueux** |
| **FAIRWAY CAPITAL CORPORATION** | ) | **Motion** |
| **Defendant** | ) | |

**MOTION OF THE U.S. SMALL BUSINESS ADMINISTRATION AS RECEIVER FOR FAIRWAY CAPITAL CORPORATION FOR ENTRY OF AN ORDER APPROVING THE THIRD RECEIVER'S REPORT FOR THE PERIOD AUGUST 1, 2002 TO JULY 31, 2005**

COMES NOW the U.S. Small Business Administration, as Receiver for Fairway Capital Corporation (the "Receiver"), by its undersigned counsel, and hereby moves this Court to enter the [proposed] Order filed herewith as Exhibit A which approves and confirms the Third Receiver's Report for the period from August 1, 2002 to July 31, 2005 (the "Third Receiver's Report"), which is submitted herewith, and the acts, transactions, receipts, and disbursements reported therein.

The Third Receiver's Report, a Memorandum of Law, and the [proposed] Order are submitted concurrently herewith.

Respectfully submitted,
U.S. SMALL BUSINESS ADMINISTRATION,
as Receiver for Fairway Capital Corporation

Dated: 11/28/05

By: Thomas W. Rigby
Thomas W. Rigby
(DC Bar No. 463532; Virginia Bar No. 34663)
Chief Counsel for SBIC Litigation,
Office of SBIC Enforcement,
Office of General Counsel
U.S. Small Business Administration
409 3rd Street, S.W., 7th Floor
Washington, DC 20416

Tel: (202) 619-1610
FAX: (202) 205-7154

Attorney for the Receiver

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing documents entitled "Motion of the U.S. Small Business Administration, as Receiver for Fairway Capital Corporation", "Memorandum of Law in Support Thereof", "Third Receiver's Report for the period August 1, 2002 to July 31, 2005", and [proposed] Order were served by First Class U.S. mail, postage prepaid, on November 28, 2005 upon the following:

Lisa Dinerman, Esq.
Assistant United States Attorney
Office of the United States Attorney
50 Kennedy Plaza, 8th Floor
Providence, Rhode Island 02903

Allan E. Hanson, Esq.
District Counsel
SBA Providence District Office
380 Westminster Mall, 5th Floor
Providence, Rhode Island 02903

Arlene P. Messinger, Esq.
Assistant General Counsel/SBIC Enforcement
Office of General Counsel, 7th Floor
U.S. Small Business Administration
409 Third Street, S.W.
Washington, D.C. 20416

Robert Corrente, Esq.
Christopher Bush, Esq.
Hinckley, Allen & Snyder LLP
1500 Fleet Center
Providence, Rhode Island 02903

Andrew S. Richardson, Esq.
Ch. 7 Trustee
C.R. Amusements, LLC
182 Waterman Street
Providence, Rhode Island 02906

Frank D. Kirby, Esq.
Douglas J. Gervolino, Esq.
Kirby & Marullo
314 West Second Street
South Boston, Massachusetts 02127

K. Joseph Shekarchi, Esq.
33 College Hill Road, Suite 15e
Warwick, Rhode Island 02886

Peter G. Berman, Esq.
Raskin & Berman
116 East Manning Street
Providence, Rhode Island 02906

Arnold Kilberg
Joan Kilberg
3554 Pine Lake Ct.
Delray Beach, FL 33445

Craig M. Scott, Esq.
Stacey Nakasian, Esq.
Duffy & Sweeney, Ltd.
One Turks Head Place, Suite 1200
Providence, Rhode Island 02903

Edward J. Bertozzi, Jr., Esq.
Edwards & Angell, LLP
2800 Financial Plaza
Providence, RI 02903

Lawrence L. Goldberg, Esq.
96 Jefferson Boulevard
Warwick, Rhode Island 02888

Jeffrey H. Gladstone, Esq.
Robert K. Taylor, Esq.
Partridge, Snow & Hahn, LLP
180 South Main Street
Providence, Rhode Island 02903

Thomas E. Carlotto, Esq.
Michael W. Carroll, Esq.
Schechtman, Halperin, Savage, LLP
86 Weybosset Street
Providence, Rhode Island 02903

Jeffrey S. Brenner, Esq.
Nixon Peabody, LLP
One Citizens Plaza, 7th Floor
Providence, Rhode Island 02903

Joseph M. DiOrio, Esq.
As Chapter 11 Trustee
Holland and Knight, LLP
One Financial Plaza, Suite 1800
Providence, RI 02903

Joseph P. Ferrucci, Esq.
Ferrucci Russo, P.C.
55 Pine Street, 4th Floor
Providence, RI 02903

Ronald Markoff, Esq.
Law Offices of Ronald Markoff
55 Pine Street, 3rd Floor
Providence, RI 02903

Theodore Orson, Esq.
55 Dorrance Street, Suite 400
Providence, RI 02903

Richard R. Beretta, Esq.
Maria J. Goncalves, Esq.
Adler, Pollock & Sheehan, P.C.
2300 Financial Plaza
Providence, RI 02903

Leonard DePasquale, Esq.
United States Trustee
United States Trustee's Office
10 Dorrance Street, Room 910
Providence, RI 02903

Wayne M. Kezirian, Esq.
Gaebe & Kezirian
128 Dorrance Street
Providence, RI 02903

Adam C. Robitaille, Esq.
Roberts, Carroll Feldstein & Pierce
Ten Weybosset Street
Providence, RI 02903

Richard Gemma, Esq.
MacAdams & Wieck
101 Dyer Street
Providence, RI 02903

Patrick T. Conley, Esq.
1445 Wampanoag Trail, Suite 203
East Providence, RI 02915

Neal J. McNamara, Esq.
Holland & Knight, LLP
One Financial Plaza, Suite 1800
Providence, Rhode Island 02903

Arlene M. Embrey, Esq.
Office of General Counsel, 7th Floor
U.S. Small Business Administration
409 Third Street, S.W.
Washington, D.C. 20416

Karen Davidson, Esq.
One Ship Street
Providence, Rhode Island 02903

Stephen A. Rodio, Esq.
Rodio & Brown, Ltd.
91 Friendship Street
Providence, Rhode Island 02903

Everett A. Petronio, Sr., Esq.
Law Offices of Everett A. Petronio, Inc.
1239 Hartford Avenue
P.O. Box 19040
Johnston, Rhode Island 02919

Cheryl Lynn Kilberg
2766 North Greenwood Avenue
Arlington Heights, Illinois 60004

Gary Dale Kilberg
90 Irving Avenue
Providence, Rhode Island 02906

Jennifer Leigh Kilberg
933 Watkins Street, N.W., Loft C
Atlanta, GA 30318

Merrill J. Friedmann, Esq.
Friedemann & Associates
462 Broadway
Providence, RI 02909

Robert E. Bollengier, Esq.
Stephen Browning House
In the Village of Apponaug
3214 Post Road
P.O. Box 7617
Warwick, RI 02887

Brian S. Stern
Principal Agent for the Receiver
SBA, as Receiver for Fairway Capital Corporation
666 Eleventh St., N.W. Suite 200
Washington, DC 20001

Kevin D. Heitke, Esq.
1452 Broncos Highway, Suite 203
P.O. Box 556
Harrisville, RI 02830-0556

Louis A. Geremia, Esq.
GEREMIA & DeMARCO, LTD.
99 Wayland Ave.
Providence, RI 02906

BY: ______________________

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **Plaintiff** | **Civil Case No. 00-035-L** |
| v. | **Judge Ronald R. Lagueux** |
| **FAIRWAY CAPITAL CORPORATION** | |
| | **Memorandum** |
| **Defendant** | |

**MEMORANDUM IN SUPPORT OF MOTION OF THE U.S. SMALL BUSINESS ADMINISTRATION AS RECEIVER FOR FAIRWAY CAPITAL CORPORATION FOR ENTRY OF AN ORDER APPROVING THE THIRD RECEIVER'S REPORT FOR THE PERIOD AUGUST 1, 2002 TO JULY 31, 2005**

The U.S. Small Business Administration, as Receiver for Fairway Capital Corporation (the "Receiver"), by its undersigned counsel, moves this Court to approve and confirm the Third Receiver's Report for the period from August 1, 2002 to July 31, 2005 (the "Third Receiver's Report"), which is submitted herewith, and the acts, transactions, receipts, and disbursements reported therein.

## FACTS

The Receiver was appointed by an Order of this Court dated March 13, 2000 (the "Receivership Order") and was charged, among other things, with "marshaling and liquidating all of Fairway's assets and satisfying the claims of creditors therefrom in the order of priority as determined by this Court." Receivership Order, ¶ 1. The Third Receiver's Report, filed herewith, summarizes the Receiver's activities for the period from August 1, 2002 to July 31, 2005 with regard to the Receiver's duties under the Receivership Order.

## ARGUMENT

The Receivership Order provides for a final report by the Receiver. Receivership Order, ¶ 10. Based upon its experience, the Receiver has determined that periodic reports will assist the Court in its oversight duties with respect to this Receivership. The periodic review and confirmation of the acts, transactions, receipts, and disbursements reported by the Receiver allows the Receiver to continue its activities and work as confirmed by the Court, and to adjust its activities if the Court so directs. Therefore, the Receiver moves this Court to approve and confirm the Third Receiver's Report for the period from August 1, 2002 to July 31, 2005. The Third Receiver's Report and a proposed Order are submitted concurrently herewith.

Respectfully submitted,
U.S. SMALL BUSINESS ADMINISTRATION,
as Receiver for Fairway Capital Corporation

Dated: 11/28/05

By: Thomas W. Rigby

Thomas W. Rigby
(DC Bar No. 463532; Virginia Bar No. 34663)
Chief Counsel for SBIC Litigation,
Office of SBIC Enforcement,
Office of General Counsel
U.S. Small Business Administration
409 3rd Street, S.W., 7th Floor
Washington, DC 20416

Tel: (202) 619-1610
FAX: (202) 205-7154

Attorney for the Receiver

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| **Plaintiff** | ) | **Civil Case No. 00-035-L** |
| **v.** | ) | **Judge Ronald R. Lagueux** |
| **FAIRWAY CAPITAL CORPORATION** | ) | |
| **Defendant** | ) | |

## THIRD RECEIVER'S REPORT FOR THE PERIOD AUGUST 1, 2002 TO JULY 31, 2005

## I. INTRODUCTION

This Third Receiver's Report ("Third Report") is being filed with this Court by the United States Small Business Administration ( "SBA"), which was appointed Receiver ("Receiver") for Fairway Capital Corporation ("Fairway") pursuant to the Order of this Court dated March 13, 2000 (the "Receivership Order").[1] This Third Report summarizes the activities of the receivership for the period from August 1, 2002 through July 31, 2005, the background of the receivership, and its current cash position. Where significant events occurred subsequent to the period covered by this Third Report but before the submission of this Report to this Court, they are also reported herein.

The First Receiver's Report ("First Report") was filed on August 21, 2001 and summarized the receivership activities for the period from March 13, 2000 through May 31, 2001. The First Report was approved and confirmed by this Court's Order dated August 23, 2001.

The Second Receiver's Report ("Second Report") was filed on September 13, 2002 and summarized the receivership activities for the period from June 1, 2001 through July 31, 2002. The Second Report was approved and confirmed by this Court's Order dated October 8, 2002.

---

[1] The Order was entered by the Honorable Mary M. Lisi. By Order entered June 11, 2002, Judge Lisi recused herself from participation in this case, and it was reassigned to the Honorable Ronald R. Lagueux.

The First and Second Reports are incorporated by reference herein, and collectively referred to as the "prior Reports".

**TABLE OF CONTENTS**

| | | | |
|---|---|---|---|
| I. | Introduction | | page 1 |
| II. | Background | | page 3 |
| III. | Operation of the Receivership | | page 4 |
| | A. | General Operations | page 4 |
| | B. | Notice of Receivership | page 5 |
| | C. | Personnel | page 5 |
| | D. | Corporate Compliance, Accounting and Tax Matters | page 6 |
| | E. | Claims Matters | page 7 |
| IV. | Asset Accounts | | page 8 |
| | A. | Cash | page 9 |
| | B. | Non-Performing Debt Instruments | page 10 |
| | C. | Real Estate Owned | page 11 |
| | D. | Other Assets | page 11 |
| | E. | Claims Against Others | page 19 |
| V. | Legal Actions | | page 22 |
| VI. | Claims Against the Receivership Estate | | page 26 |
| VII. | Receipts and Disbursements | | page 35 |
| VIII. | Conclusion | | page 36 |
| Exhibit A | | | page 37 |

## II. BACKGROUND

The background of this receivership was described in detail in the First Report, which is specifically incorporated herein. As pertinent for purposes of continuity, Fairway was licensed as a Small Business Investment Company ("SBIC") by SBA on January 31, 1990, under §301(c) of the Small Business Investment Act of 1958 (the "Act"), as amended. In accordance with the Act, SBA guaranteed two subordinated debentures issued by Fairway, which were issued, respectively, on September 26, 1990 in the amount of $5,000,000 (the "First Debenture"); and on June 26, 1991 in the amount of $2,500,000 (the "Third Debenture"). These debentures required Fairway to make periodic payments from the date of issuance through and including the maturity of the debentures.

By letter dated May 20, 1994, Fairway was informed that SBA had determined that Fairway had violated certain regulations, and SBA accelerated Fairway's entire debt. On June 1, 1994, Fairway made full payment on the Second Debenture. On November 1, 1996, Fairway and SBA entered into an agreement that provided that Fairway would liquidate its assets and pay all its outstanding indebtedness to SBA by May 1, 1997. Arnold Kilberg, the former President/Investment Advisor of Fairway, guaranteed this payment. Fairway did not make full payment within an extended time period, and SBA again demanded prompt full payment of the remaining indebtedness from Fairway. On January 7, 1999, SBA notified Fairway that Fairway remained in default on its obligations, and had violated regulations in not filing requested reports.

On January 25, 2000, SBA filed a Complaint seeking the appointment of SBA as receiver for Fairway. After a hearing before this Court, SBA was appointed Receiver for Fairway on March 13, 2000. On May 5, 2000, the Court entered Judgment in favor of the Receiver against Fairway in the total amount of $694,642.92 ($670,504.62 plus 170 days of per diem interest of $141.99 from November 18, 1999), and post-judgment interest. These matters are of record in this Court.

On January 8, 2004, this Court entered its Order (the "January 2004 Order") which granted the Receiver's Motion for Partial Consolidation of the Fairway Receivership Estate. The Court found that Fairway is the true owner of Acropolis Enterprises, Inc. ("Acropolis")

and Pantheon Enterprises, Inc. (formerly known as Participation Services Corporation) ("Pantheon"), and that Acropolis and Pantheon were alter egos of Fairway up to March 13, 2000. This Court further found that its exercise of jurisdiction under 15 U.S.C. §687c contained in the Receivership Order includes jurisdiction over Acropolis, Pantheon and their subsidiaries. Therefore, all provisions of the Receivership Order with respect to Fairway apply equally to Acropolis, Pantheon and their subsidiaries. (The Court also authorized the Receiver to establish a Supplemental Claims Bar Date and procedure for claims to be filed against Acropolis, Pantheon and their subsidiaries, discussed hereinafter.)

## III. OPERATION OF THE RECEIVERSHIP

### A. General Operations

The overall function of the Receiver is to identify, marshal, administer, and liquidate the assets of Fairway, wherever located. In furtherance of this objective, the Receiver's agents have analyzed records maintained by SBA, as well as records maintained by the former management of Fairway, and has analyzed Fairway's assets, and is continuing to analyze the debts, claims and legal proceedings involving Fairway. The Receiver has continued to collect funds due to Fairway and to otherwise administer the Receivership, the sole purpose of which is to effectuate an orderly liquidation of Fairway, subject to the approval of this Court.

A substantial amount of time has been expended by the Receiver during each of the three reporting periods to obtain detailed information about Fairway's assets. This has been compelled by the overall absence of complete and detailed accounting records received from the prior management of Fairway. Notwithstanding the multiple piecemeal submissions of various records and documents by the Kilberg-controlled prior management in delayed response to the Receiver's multiple demands, as of the date of the preparation of this Third Report, it appears to the Receiver that the accounting records received are still incomplete. Furthermore, the Receiver is compelled to review all documents received in order to determine which documents were received and which are still missing. The Receiver has also found that many documents received are copies of those documents and records which have been previously submitted either in original or copy form. As a result, the Receiver has expended

considerable time and still does not have complete accounting records.

Specific actions taken by the Receiver to identify, marshal, administer, and liquidate the assets of Fairway are discussed in greater detail below. Upon completion of the liquidation of Fairway, the proceeds of the liquidation will be used to satisfy the claims of creditors, including SBA, in the order of priority determined by this Court. Any excess proceeds will be distributed to the shareholders as ordered by this Court.

## B. Notice of Receivership

In accordance with paragraph 4 of the Receivership Order, the Receiver gave written notice of its appointment to relevant individuals and entities, to the extent that the Receiver had been able to obtain correct mailing addresses. In addition, the Receiver has notified all U.S. District Courts, in accordance with 28 U.S.C. §754, and has served notice of the stay of litigation, ordered in paragraph 7 of the Receivership Order, on those courts in which the Receiver is aware of pending actions involving Fairway.

## C. Personnel

During the period of this Third Report, pursuant to paragraph 5 of the Receivership Order, the Receiver has continued to utilize the services of lawyers, accountants and other professionals to assist in operating the Receivership. In March 2000, Stephen D. Jones was retained as Principal Agent for the Receivership. Wyndell O. Banks assumed the Principal Agent position in August 2001. Brian S. Stern was retained as Principal Agent in May 2002.

The Receiver maintains all of Fairway's corporate, financial, and accounting records, and performs all accounting functions at its Receivership Office, located at 666 Eleventh Street, N.W., Suite 200, Washington, D.C. 20001. The Receiver shares office space and administrative services with a large number of other receiverships.

The Principal Agent assists the Receiver in (1) the administration of the assets and accounts of Fairway; (2) the carrying out receivership functions and responsibilities, including the liquidation of Fairway's assets in an orderly manner; (3) the pursuit of claims against others on behalf of Fairway which may result in monetary recovery for the receivership estate; and (4) the satisfying of claims of creditors in the order of priority as determined by this Court.

In addition to the Principal Agent, during the period of this Third Report the Receiver has retained other persons to render assistance from time to time, including Charles P. Fulford, who assists the Receiver on certain issues concerning Hotel on the Cay in St. Croix; Zarrelli & Riggs, P.C., CPAs, which maintains the books and accounting records of the Receiver; Duffy & Sweeney, Ltd., a Providence, RI, law firm retained to assist the Receiver in various legal issues in Rhode Island; Hunter, Cole & Bennett, a St. Croix, U.S. Virgin Islands law firm (no longer retained), and Jacobs & Brady, PC, also a St. Croix law firm, have both been retained to assist the Receiver on certain issues concerning Hotel on the Cay in St. Croix; the law offices of Ronald Markoff, a Providence, RI law firm retained to assist the Receiver in title issues relating to real property in which Fairway holds an interest; Ober, Kaler, Grimes, & Shriver, a Washington, DC law firm retained to assist the Receiver in various commercial issues; Cushman & Wakefield, a commercial real estate company hired to conduct a thorough appraisal of the property located at Rocky Point Amusement Park in conjunction with the Receiver (the "Moneta Receiver") for Moneta Capital Corporation ("Moneta"); and Ken Perry to assist the Receiver with property services with respect to the Rocky Point property.

## D. Corporate Compliance, Accounting and Tax Matters

Fairway is a Rhode Island S Corporation, and its principal place of business was Providence. The Receiver has notified the Secretary of State for Rhode Island that Fairway has been placed in receivership. The Receiver has also changed Fairway's registered agent in Rhode Island and other jurisdictions where Fairway has or had business relationships, and has served notice accordingly. The Receiver notified all taxing authorities that Fairway had been placed in federal receivership, and that this Court has jurisdiction over all matters involving the Fairway receivership estate. Fairway was current in its tax filings at the inception of the Receivership. The Receiver has timely filed Fairway's tax returns for all years through December 31, 2004.

The tax returns which have been prepared and filed by the Receiver were prepared to the best of its accountants' abilities based upon the incomplete accounting records supplied to the Receiver by the former management of Fairway. As previously stated, notwithstanding that

various incomplete portions of the books and records of Fairway have been received by the Receiver on several occasions since the inception of the receivership, and notwithstanding both oral and written requests by the Receiver for specific additional books and records, through the period of this Third Report, the Receiver has still not received a complete set of corporate and accounting records from the prior management of Fairway. At this time, the Receiver believes that the incompleteness of the books and records may never be cured.

## E. Claims Matters

This Court entered an Order on May 2, 2001 by which it approved the form and manner of notice to claimants and establishing August 6, 2001 as the claims bar date, by which date all claims against Fairway, the Receiver, or the Fairway Receivership Estate were to be submitted to the Receiver or be forever barred. The notice to claimants and creditors was published in The Providence Journal and The St. Croix Avis, and the Receiver also mailed actual notices to numerous potential claimants. Twenty-two (22) individuals and entities filed claims, many containing multiple parts. The Receiver filed its Recommended Disposition of Claims in the Court on October 20, 2004, and served a copy on each of the 22 claimants. In summary, this Court approved the Receiver's recommendations by its Order dated February 16, 2005. The Court approved the withdrawal of one claim; approved the allowance of one claim in full; approved the allowance in part and the denial in part of six (6) claims filed by four (4) claimants (count three [3] for the reason that one claimant is included in the count of claimants whose claims were rejected); and approved the denial of nine (9) claims. Additionally, this Court rejected 22 claims filed by 8 claimants as general unsecured creditors of the Fairway Receivership for the reason that each related to a specific Participation Loan Agreement, which matter was resolved by this Court and published in its September 12, 2002 Order (hereinafter referred to as the "Pay Participant Order").[2] This Court also approved and confirmed the SBA's perfected security liens in certain Fairway assets. This Court authorized

[2] As pertinent, the Pay Participant Order held that the proceeds collected by the Fairway Receiver as the lead lender under the terms of the relevant Participation Loan Agreement, are separate from Fairway's general funds and are not subject to the claims of general creditors under the Bar Date Claims procedure. Rather, the collection and *pro rata* distribution of the proceeds are governed by the terms of the respective Participation Loan Agreement, including the rights of the lead lender to deduct its costs of collection from distributions to

the Receiver to pay allowed claims in the order and priority established in the Order to the extent of available assets for payment, and further authorized the Receiver to delay such payments until it has received claims in response to the Supplemental Bar Date established by the Receiver in accordance with the Court's January 2004 Order, discussed hereinafter.

Claimant Government of the U.S. Virgin Islands ("US VI") filed an objection to the Court-ordered disposition of its claims, and the Receiver filed its Response. This Court heard arguments on July 12, 2005, and took the matter under advisement. The Court's opinion is pending. Claimants Gregory T. Parkos, Trustee of the Gregory T. Parkos Irrevocable Trust – 1994 and Joan M. Parkos Moran, Trustee of the Joan M. Parkos Irrevocable Trust - 1994 (collectively, "Parkos") objected to the disposition of its claims, to which the Receiver filed its Response. After hearing thereon on July 12, 2005, the Court entered its Order on July 15, 2005 denying the Parkos' Motion and affirming the determination in its February 16, 2005 Order.

An objection was also filed by claimant Law Offices of Everett A. Petronio, Inc. The Receiver filed its Response stating that it agreed that it appeared that a scrivener's error had occurred, and that the amount which should be allowed is $42,334.12, which amount was not accurately reflected in the Order. The Receiver recommended and requested that this Court amend its February 16, 2005 Order at paragraph 6(e) to state that Petronio's claim should be allowed in the amount of $42,334.12, and denied in the balance of the claim in the amount of $246,021.35. This Court entered its Amended Order on May 18, 2005 adopting the Receiver's recommendation and amending its February 16, 2005 Order at paragraph 6(e) to allow Petronio's claim in the amount of $42,334.12 and denied in the balance of the claim.

## IV. ASSET ACCOUNTS

At the beginning of the Receivership, the Receiver identified eight assets in Fairway's portfolio. During the period of this Third Report, in addition to cash, the remaining assets consisted of two non-performing loans, positions in five syndicated loans and in the assets acquired through foreclosures on the secured collateral for those loans, and claims against

---

participants.

seven other persons and/or entities. The current status of these accounts is described below.

**A. Cash**

All cash is deposited into a fully collateralized, interest bearing bank account in the name of SBA as Receiver for Fairway Capital Corporation. The Receivership began operations on March 13, 2000, with a zero cash balance, and the Receiver immediately borrowed $50,000 from SBA, pursuant to a Receiver's Certificate, to fund operations. (Fairway's account maintained at Sovereign Bank in Rhode Island was closed during the first reporting period and the balance of $7.53 was transferred to the Receiver's bank account.) Through the date of the filing of this Third Report, Fairway has issued eight (8) Receiver's Certificates for and borrowed from SBA a total of $600,000. As shown on Exhibit A to this Third Report, the balance in the Receiver's bank account as of July 31, 2005 was $533,470.02.[3]

During the period of this Third Receiver's Report, receipts from receivership operations totaled $1,469,020.49, while receivership expenditures totaled $630,140.27, and distributions to participants in the American Shipyard Corp. loan totaled $744,252.32. A detailed Summary of Cash Receipts and Disbursements is attached as Exhibit A to this Report.

**B. Non-Performing Debt Instruments**

1. A&R Trucking Company

[3] Paragraph 9 of the Receivership Order authorizes the Receiver to borrow on behalf of Fairway, from the SBA, up to $100,000 and to issue Receiver's Certificates of Indebtedness in the principal amounts of the sums borrowed. By Order entered March 27, 2000, this Court authorized the Receiver to increase its borrowing to $500,000. This Court entered its Order on July 23, 2002 which further increased the Receiver's maximum amount of borrowing from the SBA to $650,000 to enable the Receiver to continue to carry out its duties as mandated by the Receivership Order, and to provide for $150,000 additional financing to the Hotel on the Cay Timeshare Association, Inc. in accordance with the specific terms stated in the Order. This Court entered its Order on March 4, 2003 authorizing the Receiver to further increase its borrowings to $800,000. Pursuant thereto, the Receiver issued its eighth (8th) Receiver's Certificate on or about March 27, 2003, in the amount of $100,000, increasing its borrowings to a total of $600,000.

This portfolio company has been involved in bankruptcy proceedings since 1993, IN RE: Acciardo, Ronald and Acciardo, Joanne, dba A&R Trucking Co., Case No. 93-10633 AV, US Bankruptcy Court, District of Rhode Island. Fairway made a loan to the company and took a mortgage interest in the Acciardos' residence as security. The Bankruptcy Trustee paid Fairway $14,418.44 in February 2001 for its claim in full. The Receiver deposited that check with a restrictive endorsement for the reason that the pre-receivership manager of Fairway believed that Fairway was entitled to additional interest. During this third reporting period, the Receiver obtained a copy of the Consent Order entered June 3, 1999 by the Bankruptcy Court by which the prior management of Fairway and the Bankruptcy Trustee agreed that the amount paid to Fairway is the full settlement amount of Fairway's claim. The Bankruptcy Court entered the Discharge of Debtor on January 2, 1996, and entered its Final Order closing the proceeding on October 31, 2001. The Receiver has discharged Fairway's mortgage and UCC liens.

In consideration of the foregoing, there cannot be any additional recovery from the debtors. The Receiver respectfully recommends and requests that this Court authorize it to abandon further efforts to collect on this loan and to write off any outstanding balance from Fairways books.

2. Stephen Gordon Principal Balance at 5/31/02: $2,216.93

Fairway made a loan to Stephen Gordon which was in default at the inception of the receivership. Fairway's books and records contain only minimal information on this loan. During the First Reporting period, the Receiver made a demand for payment. Mr. Gordon disputed the balance demanded. During the Second Reporting period, the Receiver's accountants reconstructed the Gordon loan records and a revised demand for payment was made. During this Third Reporting Period, the Receiver and Gordon agreed upon a settlement amount. Gordon has paid the settlement amount in full and the Receiver has returned the original Note marked Satisfied. This loan portfolio has been fully liquidated and closed.

## C. Real Estate Owned

During the period of this Third Report, the Fairway Receivership did not have title to

any real estate.

## D. Other Assets

### 1. Roseland Acres Equestrian Center, Inc.

In June 1990 Wallace Capital Corporation ("Wallace"), another SBIC which was in receivership, made a loan in the amount of $660,000 to Roseland Acres Equestrian Center, Inc. ("Roseland"), a working horse farm and equestrian center located in Tiverton, Rhode Island. Fairway simultaneously bought a fifty percent (50%) participation in this loan. In May 1996, Fairway sold a $175,000 part of its $330,000 participation to Moneta Capital Corporation ("Moneta"), another SBIC formerly controlled by Arnold Kilberg that is now in receivership, leaving Fairway with a $155,000 participation principal interest. This loan was in default at the inception of the Wallace Receivership in 1997 and was still in default at the inception of the Fairway Receivership. The loan was secured by a first mortgage on the property and liens on the horses, equipment and supplies, and by the personal guarantee of Nancy E. White, the owner of Roseland.

The Wallace Receiver obtained two independent appraisals of the Roseland real property and the personal property. It also retained Sage Environmental, LLC ("Sage") to conduct an environmental inspection of the property because of the existence of multiple underground storage tanks ("USTs"). After its inspection, Sage advised that the presence or extent of any contamination could not be determined definitively until the USTs were removed. In November 2003, the agents for the Wallace Receiver and the Fairway Receiver visited the Roseland property, and met with an auction company and a realtor to assist in evaluating the real estate and personal property, including the potential market value at a private sale or public auction. The Receiver was also informed by the Tiverton Tax Collector that there was more than $150,000 owed in real estate tax arrears, which are liens on the property. The Receivers' agents also met with Ms. White and discussed settlement options to enable her to maintain her ownership of the property. A settlement could not be reached.

The Wallace Receiver determined that the best course of action was to foreclose on its mortgage and sell the Roseland property at public auction. The Wallace Receiver obtained

entry of an Order in both the Wallace Receivership and in this Fairway Receivership, lifting the respective judicial stay for the limited purpose of allowing the Wallace Receiver to commence civil legal proceedings and foreclose its mortgage and security interests to liquidate this asset. The public auction was held on March 29, 2004, at which the property sold for the total sum of $320,000. Fairway's 50% distributive share of the sale proceeds, less its share of the collection costs, totaled $138,389.80, which amount it received from the Wallace Receiver in September 2004, and which was deposited into the Receiver's bank account as shown on Exhibit A to this Report.[4]

The Wallace Receiver also researched the assets and income of Ms. White, the sole guarantor of the loan. She had no assets with market value nor a regular income which could be attached to satisfy the remaining balance of the debt which would warrant the time and costs to obtain a judgment against her. The Wallace Receiver also concluded that it appeared unlikely that a significant recovery could be made in the future from Ms. White. However, in consideration that the Wallace Receivership was terminating, on the remote chance that Ms. White may have attachable assets or income in the future, the Wallace Receiver assigned to the Fairway Receiver its duties as the lead lender to empower the Fairway Receiver to proceed against Ms. White. The assignment was made for no value because the Wallace Receiver did not anticipate that significant recovery will be obtained from Ms. White in the future. The Wallace Receiver retained its 50% participation interest in any recoveries that may be received. The Wallace Receivership has terminated. The assumption of its lead lender responsibilities by the Fairway Receiver does not add an asset with value to the Fairway Receivership.

2. Country Crest Place, Cumberland, RI

This property was a strip shopping plaza located in Cumberland, R I, owned by Zeus Realty Holdings, LLC ("Zeus"), a wholly-owned subsidiary of Moneta. Fairway owned a

[4] The Moneta Receiver filed a bar date claim for payment of its *pro rata* participating share of the distribution received by the Fairway Receiver. For the reason that the Moneta Receiver did not produce a Secondary Participation Agreement, its request for payment was not subject to the Pay Participant Order. Rather, the Moneta claim was considered and allowed in the amount of $73,388.11 as a general unsecured claim to be paid from the general funds of the Fairway Receivership Estate *pro rata* with all other general unsecured allowed claims.

5.1% interest in the participation loan secured by the property. The Moneta Receiver sold the property during Fairway's second reporting period and closed on the sale. As of the date of the preparation of this Third Report, the Moneta Receiver and its accountants have compiled and reconciled a complete accounting of all cash disbursements and receipts for the property. The Moneta Receiver has reported that upon the resolution of certain accounting issues, any proceeds remaining after Moneta has been repaid the operating expenses it has incurred will be distributed to the participants in the original loans secured by this property.

3. Rocky Point Amusement Park

This property is a defunct landmark amusement park consisting of 124 acres of waterfront land on Warwick Neck, Rhode Island. A detailed history of this participation loan is stated in the Second Receiver's Report. Fairway owns a 10% interest in this participation loan.[5] After receiving the authorization from its Receivership Court and from the U.S. Bankruptcy Court for the District of Rhode Island, the Moneta Receiver instituted a foreclosure sale of the mortgage on the property on July 29, 2003. The Moneta Receiver was the successful bidder at that auction, and took title to the property. The Moneta Receiver marketed the property and extensively interviewed a number of potential purchasers, reviewing their development plans for the property. It established a number of terms which potential buyers had to meet. On November 5, 2003, a telephone auction was held among the five potential purchasers which were still interested at the price which the Moneta Receiver found acceptable. Vanderbilt Capital, LLC ("Vanderbilt") was the highest bidder with a bid offer of $25 million.

The terms of a purchase and sale agreement were agreed upon by the Moneta Receiver and Vanderbilt in May 2004. The parties executed two contracts: one for the Rocky Beach portion of the property, and the second for the remaining portion of Rocky Point. The sale is contingent upon Vanderbilt receiving all of the required permits for the development of the property. The Moneta Receivership Court approved the sale by its Order dated November 10, 2004. In December 2004 the sale was advertised in the Wall Street Journal, the Boston Globe,

[5] Fairway was the initial lead lender in this participation loan. Moneta, by its Receiver, took over control of the loan and mortgage in April 2002, and has been the lead lender since that date.

and the Providence Journal. No counter-offers were received. Vanderbilt and the Moneta Receiver are prepared to proceed with the sale upon the disposition of the two objections described below.

Scotti & Associates ("Scotti") is a real estate brokerage firm that had been retained by the bankruptcy trustee for CR Amusements.[6] Scotti filed a Motion with the Moneta Receivership court objecting to the sale to Vanderbilt and seeking to intervene on the basis that the Moneta Receiver should pay Scotti a commission on the $25 million sale to Vanderbilt. The Moneta Receivership Court denied Scotti's Motion and overruled its objection, and instructed it to file a claim with the Moneta Receiver, which it did. The Moneta Receiver took the position that Scotti did nothing to bring about the sale to Vanderbilt and therefore is not entitled to a commission. A hearing was held before the Receivership Court and its decision is pending.

The Rocky Beach Association (the "Association"), consisting of some of the owners of the cottages located on the Rocky Beach portion of the property, also objected and sought to intervene on the basis that the selling price for the Rocky Beach portion of the property was arbitrarily determined and therefore unfairly interfered with their right of first refusal. The Moneta Receivership Court held a hearing on the Association's Motion. The Motion to intervene was granted for a limited purpose, but the objection was overruled. The Association filed an appeal to the First Circuit Court, which appeal is pending. The Moneta Receiver's position is that the purchase price was not arbitrarily determined and that the Association's argument is without merit. Both the Moneta Receiver and Vanderbilt are continuing to negotiate with the Association to reach a settlement.

The Moneta Receiver prospectively believes that it will realize a substantial net recovery after payment of senior liens and its costs of marketing and sales. The Fairway Receivership is entitled to its *pro rata* share of any net recovery.

4. Hotel on the Cay/Legend Resort, LP, Christiansted, St. Croix, USVI.

---

[6] *In re: C.R. Amusements, LLC d/b/a Rocky Point Amusement Park*, BK No. 99-10154, U.S. Bankruptcy Court, District of Rhode Island.

The background and history of this portfolio have been described in detail in the prior Reports, and is restated here only to the extent required for continuity. Hotel on the Cay is a time share resort located on Protestant Cay, an island located in Christiansted Harbor, St. Croix, U.S. Virgin Islands. In 1991, Fairway made a $1.7 million loan to TSA Acquisition, Inc. and Legend Resorts, LP (collectively "Legend"), the operator of the Hotel. Fairway took a security interest in various unsold time share unit weeks, and in Legend's ground lease with the Virgin Islands government ("US VI"). Fairway sold participations in the loan, retaining for itself a $450,000 interest. Moneta Capital Corporation ("Moneta") purchased a $400,000 participation, which is held by the Moneta Receiver.

After Legend defaulted on the loan in 1993, a Kilberg-controlled alter ego of Fairway, PSC, now known as Pantheon Enterprises, Inc. ("Pantheon"), foreclosed on the unsold time share units and on the ground lease interest in 1994. In the foreclosure sale PSC claimed title to approximately 1,447 unsold time share weeks, and the ownership interest in the ground lease. Another Kilberg-controlled Fairway alter ego, Participation Management Corporation ("PMC"), ran the daily affairs of Hotel on the Cay commencing in 1994.

In 1996, the US VI filed a debt and eviction action against Legend to recover the leased property, *Government of the Virgin Islands v. Legend Resorts, L.P. v. Participation Services, Inc.*, Civil No. 612/1996, Territorial Court of the Virgin Islands, division of St. Croix (the "Legend suit"). The Hotel on the Cay Time Share Owners Association ("HOTC"), formally incorporated in April 1997, took over the management of the Hotel on the Cay on June 1, 1997 and intervened in the Legend suit. In June 1998, the US VI and HOTC entered into a Stipulated Settlement which, in pertinent part, provides that in consideration for HOTC withdrawing its pleading in the Legend suit, starting June 1, 1998 the US VI recognized HOTC as the lessee and granted it a lease through December 31, 2039 for the two hotel buildings which houses the timeshare units

HOTC filed suit against PSC, PMC, Fairway, Joseph Longo, Jr., and Kilberg in *HOTC v. Arnold Kilberg, Fairway, et al.*, C.A. No. 97-279T, US DC, DRI, (the "HOTC suit") seeking payment for unpaid assessments for the 1,447 time share units owned by Pantheon, among other things. After a bench trial, Judge Torres issued his Memorandum and Order on April 7, 2000. He awarded HOTC judgment against Fairway totaling in excess of $1.3

million. The enforcement of the Judgment was enjoined by the judicial stay contained in the Moneta Receivership Order and in the Fairway Receivership Order.

After concluding their due diligence concerning all aspects of Hotel on the Cay, the Fairway and the Moneta Receivers determined that the best course of action to follow in order to realize a reasonable return on this asset, and avoid a possible total loss, was to enter into an agreement of cooperation with HOTC, and necessarily into a lease control agreement with the US VI, in order to enable the Receivers to revitalize the Hotel on the Cay and market the approximately 1,447 unsold timeshare units in which Fairway (and Moneta) has an interest. On or about June 24, 2001 the Fairway Receiver, the Moneta Receiver, and HOTC entered into an Agreement of Co-Operation ("Agreement"), which was approved by the Moneta Receivership Court on July 13, 2001 and by the Fairway Receivership Court on July 25, 2001.

On the Receiver's Motion, this Court entered its Order dated March 2, 2002 in which it ordered that all assets recorded in the St. Croix, U.S. Virgin Islands land records in Pantheon's name be deemed transferred to the Fairway Receivership Estate in the name of the Receiver. Thus, during the Second Reporting Period the Fairway Receiver regained control of the Legend assets that had been improperly assigned to PSC and other Kilberg-controlled entities.

In addition, in January 2002, the representatives of the Fairway Receiver and the Moneta Receiver met with the Governor of the U. S. Virgin Islands and his counsel to present the Receivers' proposed Lease Control Agreement. Subsequently, the representatives of the Receivers have had a number of meetings with the Governor's representatives and counsel. Notwithstanding the efforts of the Receivers, and the representations made by the US VI representatives, as of the date of preparation of this Third Report, there has not been any action taken by the Governor on the Lease Control Agreement.

As noted in Section III (E), *supra.*, the US VI filed its claim in response to the Notice of Claims Bar Date. In addition to seeking monetary awards for various tax claims, it also sought the immediate possession of Protestant Cay and the Hotel properties. This Court's February 16, 2005 Order denied the US VI's claim for possession, confirmed "the validity, effectiveness, and enforceability of the Stipulated Settlement effective June 1, 1998 entered by and between the Government of the U.S. Virgin Islands and the HOTC Association . . ." for

the lease of the Hotel on the Cay, and further confirmed that the HOTC Association is the rightful holder of the leasehold premises until December 15, 2020. As also noted, the US VI filed its Objections, and the Receiver filed its Response, currently under advisement before this Court.

Pursuant to this Court's January 8, 2004 Order, the Receiver published and served its Supplemental Claims Bar Date Notice to creditors or potential claimants of Acropolis, Pantheon, or Participation Management Corporation ("PMC") and their subsidiaries. The US VI filed its claim against those Fairway alter ego entities. In essence, it seeks additional monetary awards for additional taxes accrued since its initial claim. It also reasserted and incorporated all of its initial claims, including its claim for possession of Protestant Cay and the Hotel, as stated in its Complaint filed in the Legend suit. Its Supplemental Claim is discussed in Section VI, *infra*.

Notwithstanding that the US VI's Objections to this Court's disposition of its initial claims are pending decision by this Court, and that the US VI has filed its Supplemental Claims which essentially renews and updates each and every one of its initial claims, and that the US VI Governor has not taken any action on the Lease Control Agreement, the Receivers are still willing to engage in discussion with the US VI representatives in order to reach an acceptable resolution of these issues. The Receiver continues to believe that entering into the Lease Control Agreement and thereafter carrying out the remaining steps under the Agreement of Co-operation, including the additional funding to HOTC for the improvement of the Hotel on the Cay presents the best course of action for all parties involved. The Receivers then will be in a position to develop and actively implement a formal marketing program to sell the available time share units in order to liquidate the participation investments.

5. Joshua Sears Manor/Vancisin

Wallace was the lead lender in a $525,000 loan to the Vancisins, doing business as Joshua Sears Manor, an inn on Cape Cod, MA, which was pledged as collateral for the loan. Fairway bought a $200,000 participation in this loan, and subsequently in 1996 sold a $121,488 participation to Moneta. After the Vancisins defaulted on the loan, Wallace foreclosed on and sold the property, and received full payment from the sale.

The Fairway Receiver filed its claim against the Wallace Receivership for its participation share. The Wallace Receivership Court approved Fairway's claim and during the Second reporting period on May 17, 2002, the Wallace Receiver paid to the Fairway Receivership $164,547.85 as its participatory share of the net proceeds, which amount was deposited into the Receiver's insured bank account.[7] Liquidation of this asset has been completed.

6. <u>American Shipyard Corporation</u>

The history of this loan was detailed in the Second Report to this Court. As there reported, by its Order entered on July 23, 2002, this Court ordered that all rights and obligations as lead lender be deemed to have been returned to Fairway. Pursuant thereto, the Fairway Receiver received all monthly payments made thereafter by American Shipyard Corporation ("ASC") and obtained the turnover of all amounts then held in escrow as a result of ASC distributions. After the Receiver reconstructed the accounting books and records it obtained from the pre-receivership management of Fairway in order to determine the status of each of the claimed participation interests in the ASC Loan, it made regular monthly payments to all participants whose interests had been determined to be valid. (Fairway does not own a participation interest in ASC.)

During this Third Reporting period, on June 18, 2003, this Court ordered that the lead lender position in this participation loan be turned over to the Moneta Receiver. The Fairway Receiver provided all of its ASC files and transferred all amounts then being held in its bank account to the Moneta Receiver. Pursuant to the turnover Order, the Fairway Receiver also presented an accounting of its costs expended and was reimbursed for the same by the Moneta Receiver.

**E. <u>Claims Against Others.</u>**

---

[7] The Moneta Receiver filed a bar date claim for payment of its *pro rata* participating share of the distribution received by the Fairway Receiver. For the reason that the Moneta Receiver did not produce a Secondary Participation Agreement, its request for payment was not subject to the Pay Participant Order. Rather, the Moneta claim was considered and allowed in the amount of $100,793.77 as a general unsecured claim to be paid from the general funds of the Fairway Receivership Estate *pro rata* with all other general unsecured allowed claims.

1. Against Shareholders

Fairway's balance sheet at December 31, 1999, prepared by Arnold Kilberg & Company, CPAs, showed an asset titled "Loans Receivable From Shareholders" in the amount of $375,894.23. During the Second reporting period, the Receiver made written demand on each of the several shareholders for the repayment to the Fairway Receivership of the full amount of the "Shareholders Loans". The Receiver's claims against each of the two groups of shareholders, Paul Anjoorian ("Anjoorian") and Gary, Cheryl, and Jennifer Kilberg (collectively referred to as the "Kilberg Children"), have been settled and satisfied during this Third reporting period. Anjoorian paid the Receiver the total sum of $275,251.61, and the Kilberg Children paid the total sum of $274,432.00, as both payments are shown on Exhibit A to this Report.

2. Against Receiver's Former Agent

The Receiver noted certain discrepancies in the invoicing for services of a former Principal Agent that do not appear to have been in the best interests of the Receivership Estate. The Receiver made demand on Mr. Banks for repayment of the questioned amount. During this Third Reporting period, on or about March 18, 2004, the Receiver and its former agent entered into a Settlement Agreement and Mutual Release ("Agreement") resolving the claims of the Receiver against the former agent. Mr. Banks paid the settlement amount in accordance with the terms of the Agreement on August 3, 2004, and the Receiver Discharged its junior mortgage on his residence given as security for his payment under the terms of the Agreement. This matter is concluded.

3. Against Arnold Kilberg

*In re: ARNOLD KILBERG*, Debtor, Case No. 04-10632, Chapter 7, US Bankruptcy Court, District of Rhode Island (converted from Chapter 11). The Receiver timely filed a general unsecured proof of claim on behalf of the Fairway Receivership estate in the Chapter 11 case in the amount of $9,929,163 on June 24, 2004. The Receiver was served with Notice of Need to File Proof of Claim in the Chapter 7 proceeding, dated March 9, 2005. On April

25, 2005, the Receiver timely filed its general unsecured claim on behalf of the Fairway Receivership estate in the Chapter 7 proceeding, in the amount of $22,048,502. The proof of claim filed in the Chapter 7 case embraces all claims which Fairway had at the date of filing against Arnold Kilberg and all of his owned or controlled alter-ego entities, including amounts identified on Fairway's balance sheet at December 31, 1999 titled "Due From Affiliates and Associates".

4. Against Northeast Capital Corporation ("Northeast Capital")

*Norman J. Bolotow v. Northeast Capital Corporation, et al.*, Providence, RI Superior Court, P.M. No. 03-1199. The state court ordered Northeast Capital into receivership. The Receiver timely filed a general unsecured proof of claim on behalf of the Fairway Receivership estate in the state court receivership in the total amount of $697,199 on September 25, 2003. The books and records of Fairway that were under the control of Arnold Kilberg identify Northeast Capital as owing Fairway $30,552 as of December 31, 1998 for amounts booked as "Due from Affiliates and Associates." Arnold Kilberg owed the Fairway Receivership estate at least $697,199 as of December 31, 1998 for funds that he, by his own testimony,[8] had improperly taken by himself and/or through entities that he owned and/or controlled, from Fairway in the form of "Shareholder Loans" and other amounts booked as "Due from Affiliates and Associates." Northeast Capital, as a joint and several debtor under a common fund, owes Fairway the principal amount of $697,199 (of which the claim for $30,552 is a part), plus pre-judgment interest at the Rhode Island statutory rate of 12% per annum.[9]

5. Against Rosedale Properties, LLC ("Rosedale")

*Sovereign Bank vs. Rosedale Properties, LLC*, Providence, RI Superior Court, P.M. No. 03-3750. The state court ordered Rosedale into receivership. On December 19, 2003, the Receiver timely filed a general unsecured proof of claim on behalf of the Fairway Receivership estate in the state court receivership in the total stated amount of $697,199 under a common

---

[8] Testimony under oath given by Arnold Kilberg, January 11, 2002, in *Paul Anjoorian v. Arnold Kilberg, et al.*, State of Rhode Island, Providence County Superior Court, C.A. No. 94-1125. Mr. Kilberg testified that he transferred money from, to, and between the accounts of, for example, Governor Financial, Acropolis, Hamlet, or Rosedale, to whichever entity ". . . needs money to pay the bills on that particular day . . ." Transcript, p. 72. Based upon that testimony, the Court, Silverstein, J., found that ". . . there's a common treasury that utilizes these funds when and where it suits the interest of Mr. Kilberg so that there has been a disregard of the corporate structure." Transcript, p. 84.

[9] The principal amount claimed, $697,199, includes amounts booked as "Shareholder Loans". The total amount claimed after the addition of pre-judgment interest thereon, will be credited with the negotiated settlement amounts received from Anjoorian and from the Kilberg Children, discussed in sub-section 1. Against Shareholders, above.

fund owed by Arnold Kilberg, including $38,915 directly owed by Rosedale, as shown on the books and records of Fairway that were under the control of Arnold Kilberg as of December 31, 1998. (See footnotes 13 and 14, *supra.*) In addition, Arnold Kilberg owes to the Fairway Receivership estate the amount which this Court, pursuant to its May 2, 2001 Order, ultimately determines is owed by Fairway, the Fairway Receiver, or the Fairway Receivership estate to claimants who filed claims in response to the Receiver's Bar Date Notice.[10] As concluded by Judge Silverstein in the *Anjoorian* case, *supra.*, Rosedale is an entity that is part of Arnold Kilberg's common fund, and as such Rosedale is liable to the Fairway Receivership estate for all of the amounts owed to it by Arnold Kilberg, including all amounts which this Court determines are owed by the Fairway Receivership estate to Bar Date Claimants.

6. Against Governor Financial Center, LLC ("Governor")

*Sovereign Bank vs. Governor Financial Center, LLC,* Providence, RI Superior Court, P.M. No. 03-3749. The state court ordered Governor into receivership. On December 19, 2003, the Receiver timely filed a general unsecured proof of claim on behalf of the Fairway Receivership estate in the state court receivership in the total stated amount of $697,199 under a common fund owed by Arnold Kilberg, including $6,500 directly owed by Governor, as shown on the books and records of Fairway that were under the control of Arnold Kilberg as of December 31, 1998. (See footnotes 13 and 14, *supra.*) In addition, Arnold Kilberg owes to the Fairway Receivership estate the amount which this Court ultimately determines, pursuant to its May 2, 2001 Order, is owed by Fairway, the Fairway Receiver, or the Fairway Receivership estate to claimants who filed claims in response to the Receiver's Bar Date Notice. (See footnote 15, *supra.*) As concluded by Judge Silverstein in the *Anjoorian* case, *supra.*, Governor is an entity that is part of Arnold Kilberg's common fund, and as such Governor is liable to the Fairway Receivership estate for all of the amounts owed to it by Arnold Kilberg, including all amounts which this Court determines are owed by the Fairway Receivership estate to Bar Date Claimants.

7. Against Hamlet Properties, LLC ("Hamlet Properties")

---

[10] See discussion in Section III (E). Claims Matters, *supra*. The determination of the total amount of claims allowed is pending this Court's determination of Objections to the disposition of claims. See also discussion in Section VI, *infra.*, of the 34 claims filed in response to the Notice to All Creditors or Claimants of Acropolis, Pantheon, PMC and Their Subsidiaries, served in accordance with this Court's January 2004 Order directing the Receiver to establish a Supplemental Claims Bar Date. The Receiver reserved its right to amend its Proof of Claim filed in Northeast, Rosedale, Governor, and the Hamlet Properties, LLC receivership, *infra*. The Receiver anticipates that it will amend each Proof of Claim upon this Court's final disposition of all claims filed in response

*US SBA as Receiver of Wallace Capital Corporation vs. Hamlet Properties, LLC*, Providence, RI Superior Court, P.M. No. 04-2807. The state court ordered Hamlet Properties into receivership. On October 8, 2004, the Receiver timely filed a general unsecured proof of claim on behalf of the Fairway Receivership estate in the state court receivership in the total stated amount of $697,199 under a common fund, including $45,000 directly owed by Hamlet Properties, as shown on the books and records of Fairway that were under the control of Arnold Kilberg as of December 31, 1998. (See footnotes 13 and 14, *supra*.) In addition, Arnold Kilberg owes to the Fairway Receivership estate the amount which this Court pursuant to its May 2, 2001 Order, ultimately determines is owed by Fairway, the Fairway Receiver, or the Fairway Receivership estate to claimants who filed claims in response to the Receiver's Bar Date Notice, and such amounts as this Court determines are owed to claimants who filed claims in response to the Receiver's Supplemental Bar Date Notice. (See footnote 15.) Referring again to Judge Silverstein's conclusion in the *Anjoorian* case, *supra*., as an entity that is part of Arnold Kilberg's common fund, Hamlet Properties is liable to the Fairway Receivership estate for all of the amounts owed to it by Arnold Kilberg, including all amounts which this Court determines are owed by the Fairway Receivership estate to Bar Date Claimants.

## V. LEGAL ACTIONS

The following summarizes the litigation cases which have impacted the liquidation of one or more portfolio assets. Each case has generally been discussed in the prior Reports.

A. *Paul Anjoorian v. Arnold Kilberg, et al., supra.*

This case is ongoing litigation between Anjoorian and the Kilberg Children. It previously impacted the recovery and collection by the Receiver of the "Shareholders Loans" from Anjoorian and the Kilberg Children. As discussed in Section IV (E) (1), above, the Receiver's claims against Anjoorian and the Kilberg Children have been settled and satisfied. This litigation no longer impacts the Fairway Receivership estate.

B. *Blackstone Nine, GP v. Danglares Lopes, et al.*, State of Rhode Island, Providence County Superior Court, C.A. No. 00-2786

This case was described in the First Report. Because Fairway was a named defendant, this matter was stayed by this Court's Receivership Order and the Receiver filed a Notice of

---

to both the Notice of the claims bar date and the Notice of the supplemental claims bar date.

Stay in this case in June 2000. During this Third Reporting Period, the Receiver confirmed that Fairway received a payment from Moneta in 1996 (pre-receivership) for the sale by Fairway and purchase by Moneta of the Lopes loan. The Moneta Receiver is currently in the process of having the loan and the real estate mortgage securing the loan assigned from Fairway to Moneta.

C. Litigation related to Hotel on the Cay - Several lawsuits have been filed involving Legend and Hotel on the Cay, and involving Fairway, either directly or in the interests of the receivership estate. The most important of these were discussed in the body of the Second Receiver's Report, at Section IV (D) (3) therein.

1. *HOTC Timeshare Association, Inc. v. Arnold Kilberg, Fairway, et al.*, C.A. No. 97-279T, US DC, D RI (the "HOTC suit").

This lawsuit was discussed in detail in the Second Report and in the Receiver's Recommended Disposition of Bar Date Claims. In essence, Judge Torres issued his Memorandum and Order on April 7, 2000, in which he awarded HOTC Timeshare Association, Inc. ("HOTC") judgments totaling $1,312,860. Enforcement of the judgments was enjoined by the judicial stay contained in the Fairway Receivership Order. Pursuant to the terms of the Agreement of Co-operation entered June 24, 2001 by the Fairway and Moneta Receivers, and HOTC (see footnote 7, *supra*.), for consideration received, HOTC assigned to the Moneta Receiver all of its rights in the civil action and in the Judgment. The assignment has been completed.

2. *Government of the Virgin Islands v. Legend Resorts, L.P. v. Participation Services, Inc.,* Civil No. 612/1996, Territorial Court of the Virgin Islands, St. Croix Division (the "Legend suit")

The Government of the Virgin Islands ("US VI") seeks (1) payment of approximately $1.45 million for unpaid rent, taxes, late charges, penalties, workman's compensation insurance premiums, and related penalties and costs; and (2) the immediate possession of Protestant Cay, including the Hotel property. PSC and HOTC were later added to the case as

intervenors. In June, 1998, the US VI and HOTC entered into a Stipulated Settlement under which HOTC leased from the US VI the actual hotel buildings themselves on Protestant Cay. The Receiver filed its Notice of Appointment and Stay in April 2000. The US VI filed its Motion for Relief from the Stay Order, to which the Receiver filed its Objection to the Motion. After hearing argument on September 30, 2003, this Court denied the Motion. The Stay remains in effect, and this Court has retained jurisdiction of the US VI's equitable and monetary claims.

The Complaint and supporting documents filed in the US VI's lawsuit formed the basis and grounds for its equitable claim for the immediate possession of Protestant Cay, St. Croix, US VI filed in response to the Notice of Claims Bar Date served by the Receiver. Its claim also sought payment of more than $1.45 million. In this Court's Order dated February 16, 2005, it denied the US VI's equitable claim for possession, and confirmed the validity, effectiveness, and enforceability of the Stipulated Settlement effective June 1, 1998 entered by the US VI with HOTC, and further confirmed the status of HOTC as the rightful holder of the leasehold premises until December 15, 2020. This Court further allowed a total of $430,421.84 (comprised of $200,128.49 for priority tax claims, and $230,293.35 in general unsecured claims) of the claim, and denied the balance of the claim in the amount of $1,020,338.76.

As discussed in Section II (E), *supra.*, the US VI filed an Objection to this Court's disposition of its claim, to which the Receiver filed its Response. The matter is under advisement. The US VI has also filed a claim in response to the Notice of Supplemental Claim Bar Date, discussed in Section VI, *infra*.

3. *Belisle, et al. v. N.E.B., Inc., Legends Resort, L.P., et al.,* Civil No. 587/1996, Territorial Court of the Virgin Islands, St. Croix Division

This suit was filed by Philip Belisle, a timeshare owner, on behalf of the Belisle Group of timeshare owners against N.E.B., Inc. (the general partner of Legend), Legend and PSC, in an action for conversion, breach of contract and declaratory judgment. Fairway was added as a defendant in an amended complaint. The Receiver filed its Notice of Appointment and Stay in April 2000.

The Belisle Group filed a claim in response to the Claim Bar Date Notice. Its claim, in

the amount of $1,184,385, consisted of all causes of action asserted in the Third Amended Complaint which it "proposed" to be filed in the above suit. This Court's Order dated February 16, 2005 denied the claim in total.

4. *Pantheon Enterprises, Inc. v. Hotel on the Cay Timesharing Association, Inc., et al.,* Civil No. 553/1998, Territorial Court of the Virgin Islands, St. Croix Division

This is an action for debt and foreclosure of mortgage. The Court granted defendants' motion to dismiss the Complaint. Pantheon's appeal is pending. The Receiver filed its Notice of Appointment and Stay in April 2000.

Pantheon filed a Third action, *Pantheon Enterprises, Inc. v. Hotel on the Cay Timesharing Association, Inc., et al.,* Civil No. 259/1999, an action for intentional interference with contractual relations and for damages against HOTC and its president, and individual directors, as a result of the Stipulated Settlement HOTC had entered into with the US VI. The Receiver filed its Notice of Appointment and Stay in April 2000.

D. Litigation related to Rocky Point Amusement Park - There have been three lawsuits involving Rocky Point Amusement Park and CR Amusements, in which Fairway has an interest. They were discussed in the body of the Second Report, at Section IV(D) (2) therein.

1. *In re: C.R. Amusements, LLC d/b/a Rocky Point Amusement Park,* BK No. 99-10154 (Ch. 7), U.S. Bankruptcy Court, D RI.;

2. *Andrew Richardson vs. Moneta Capital Corporation et al,* A.P. No. 99-1079

This adversary action was dismissed with prejudice in July 2002 by Stipulation of the parties.

3. *Acropolis Enterprises, Inc. vs. CR Amusements, LLC et al.,* A.P. No. 99-1076

On February 20, 2001, RI Bankruptcy Judge Votolato entered judgment in favor of Acropolis on all counts. The parties filed a Stipulation of Dismissal with Prejudice of the appeal to the U.S. District Court, D RI in August 2001. The judgment entered by the

Bankruptcy Court is final.

## VI. Claims Against the Receivership Estate

In Section II, Background, above, it was noted that this Court's January 2004 Order, *inter alia,* authorized the Receiver to establish a Supplemental Claims Bar Date and procedure for creditors and claimants to file claims against Acropolis, Pantheon and their subsidiaries. Pursuant thereto, the Receiver established March 1, 2005 as the Supplemental Claims Bar Date. It served a copy of the Notice to All Creditors or Claimants of Acropolis, Pantheon, PMC and Their Subsidiaries ("Notice to Creditors") on all potential claimants of which it was aware, and published the Notice to Creditors once each week for two weeks in The Providence Journal and in The St. Croix Avis. The Notice to Creditors was published in the January 7 and 14, 2005 editions of each newspaper.

In response to the mailed and published Notices, the Receiver has received claims from a total of 34 claimants through the date of submission of this Third Report to the Court, in addition to the Judgment in favor of the SBA against Fairway, discussed above in Section II, Background, and in addition to the 22 claims received in response to the initial Claims Bar Date Notice, discussed in Section III (E), Claims Matters, above. The Receiver reviewed the content of each claim filed and has sent a letter to each of 15 claimants advising each that its claim did not respond to all of the requirements set forth in the Notice to Creditors. The Receiver invited each of those claimants to provide written clarification of, and documentary supplementation to its claim in accordance with the Notice to Creditors. At the date of the preparation of this Report, the claimants are responding.

The following summary states the name of each of the supplement claimants, the amount of its claim(s) or other relief sought, and a brief description of its basis for the claim.

1. SBA as Receiver for Moneta Capital Corporation ("Moneta") vs. Acropolis; $1,657,128.18; contingent claims against Arnold Kilberg ("Kilberg"), as an alter ego of Acropolis.

2. SBA as Receiver for Moneta vs. Pantheon; $1,657,128.18; contingent claims against Kilberg, as an alter ego of Pantheon.

3. U.S. Small Business Administration ("SBA") as assignee of the assets and claims of the Wallace Capital Corporation ("Wallace") receivership estate; $1,583,263 total; funds improperly taken by Kilberg or Kilberg owned and/or controlled entities, from participation loan assets of Wallace, including: (a) secured and/or priority claims totaling $1,159,722 consisting of Wallace's *pro-rata* share of funds due from the (i) receipts from the American Shipyard Loan, (ii) proceeds paid for damage to the collateral in the Chateau Enterprises and Valley Enterprises Loan, (iii) receipts from the Mary's Motor Lodge Loan, (iv) due from the sale of real estate collateral for the Taunton Coin Loan, (v) distributive share from the Corliss Landing/Marsh Landings Associates Loan, (vi) due from the sale of collateral securing the Rocky Point loan; and (b) unsecured and/or non-priority claims totaling $423,491 consisting of (i) $400,000 principal investment in Legend Resorts Loan, (b) $23,491 fees paid by Wallace to Arnold Kilberg & Co. for accounting services which proved to be of no value. All of these claims were assigned to the SBA at the termination of the Wallace receivership.

4. Verdolino & Lowey, P.C. ("V&L") are the accountants to the Chapter 7 Trustee for the bankruptcy estate of Arnold Kilberg. The Bankruptcy Court for the District of RI entered its Order December 8, 2004 authorizing the professionals providing services to the Kilberg bankruptcy estate to file claims against the alter ego estates of the Debtor. On that basis, V&L seeks reimbursement from Acropolis as an alter ego of Kilberg. Through December 31, 2004, approximately $166,402.36 in fees and expenses claimed, with the reservation to amend or supplement, and without waiver to full payment from the bankruptcy estate.

5. Holland & Knight LLP ("H&K") were counsel to the Chapter 7 Trustee for the bankruptcy estate of Arnold Kilberg. The Bankruptcy Court for the District of RI entered its Order December 8, 2004 authorizing the professionals providing services to the Kilberg bankruptcy estate to file claims against the alter ego estates of the Debtor. Based on that Order, H&K seeks reimbursement from Acropolis as an alter ego of

Kilberg. Through December 31, 2004, approximately $436,476.22 in fees and expenses claimed, with the reservation to amend or supplement, and without waiver to full payment from the bankruptcy estate.

6. Robert Miller ("Miller"); $100,000 total; $50,000 subparticipation purchased from Joan F. Kilberg in Fairway loan to J.T. Properties, Inc., which Miller alleges was transferred to Northeast Capital, an alter ego of Acropolis; and $50,000 participation in a loan from Joan F. Kilberg to the Trustees of the E. Walsh Trust.

7. L&M Cars, Inc. ("L&M"); $100,000 + interest; claimant alleges that it made a loan in the principal amount to Northeast Capital with interest at the rate of 9% per annum, an alter ego to Acropolis.

8. Richard Lubin ("Lubin"); $100,000 total; $50,000 subparticipation purchased from Joan F. Kilberg in Fairway loan to J.T. Properties, Inc., which Lubin alleges was transferred to Northeast Capital, an alter ego of Acropolis; and $50,000 participation in a loan from Joan F. Kilberg to the Trustees of the E. Walsh Trust.

9. Joan F. Kilberg ("Kilberg"); $1,013,220 total; $150,000 participation interest in mortgage loan to Rocky Point Amusements, Inc.; $150,000 subparticipation interest in Rocky Point loan purchased from John Holmes, Jr., an individual; and $12,000 subparticipation interest in Rocky Point loan purchased from Harold Schein, an individual; $701,220 accrued interest calculated at the rate of 15.5% per annum on the principal of $312,000 from November 1990 through April 30, 2005.

10. Timesharing Associates, Ltd. ("TSA"); $372,697.08 as of May 1, 1997 plus interest at the rate of 12% per annum in the amount of $350,320.35, for a total of $723,017.43; TSA recorded a Security Agreement and Mortgage in September 1992 in the St. Croix Recorder of Deeds office on numerous timeshare unit weeks in the Hotel on the Cay, and recorded a Notice of Judgment Lien against those same timeshare unit weeks on

August 13, 1993 in the St. Croix Recorder of Deeds office, based on a judgment issued in its favor against Legend Resorts, the Cerillis, TSA Acquisition Corp., among other defendants. Legend Resorts, the Hotel owner at that time, mortgaged the Hotel to Fairway and Participation Services Corporation ("PSC"). Fairway and PSC sought to foreclose their single mortgage. TSA's liens were apparently senior to the Fairway/PSC mortgage. TSA entered into an agreement with Fairway/PSC which provided that in exchange for TSA releasing its priority liens and allowing Fairway/PSC to proceed with the foreclosure, Fairway/PSC would pay TSA 14.3% of the proceeds from the sales and/or extension of unit weeks in the Hotel. In reliance on Fairway/PSC's representations, TSA released its liens. Fairway/PSA foreclosed and assumed operation of the Hotel and, TSA alleges, has sold unit weeks and extensions but has not delivered any portion of the proceeds to TSA.

11. Elizabeth Wuillermin; $30,000; alleged value of time share in Aruba that Acropolis, Pantheon, PMC, or subsidiaries service and/or manage, that may be lost as result of their failure to manage and keep obligations current.

12. Government of the U.S. Virgin Islands ("US VI"); (1) $182,354.26 inclusive of interest and penalties for unemployment insurance trust fund owed by PMC for the quarters 94-3 through 98-1; (2) $541,172.77 (this is the amount claimed in the proof of claim signed by the Labor Commissioner; $654,628.88 is stated in the Notice of Claim signed by counsel; and a draft Complaint dated March 24, 1998 submitted in support states a claim of $539,687.13) inclusive of interest and penalties for unemployment insurance trust fund owed by Pantheon Enterprises Inc. d/b/a Hotel on the Cay for the quarters 86-4 through 97-4; and (3) the US VI incorporates its August 2001 Notice of Claim previously filed in the Fairway Receivership, and asserts as its current claim "any portion of that claim not satisfied by Fairway", which includes monetary claims and its equitable claim for immediate possession of Protestant Cay (including the HOTC property), in support of which it submitted a copy of its 6-page Notice of Claim (without supporting exhibits which included claimant's suit for debt and eviction,

*Government of the Virgin Islands, v. Legend Resorts, L.P. v. Participation Services, Inc., supra.*, the Legend suit, discussed in Section V (C) (2), above).

13. Law Offices of Everett A. Petronio, Inc. ("Petronio"); dollar amount not specified; for legal services rendered; resubmitted law firm's bills previously filed in the Fairway Receivership for services rendered to Arnold Kilberg and alter ego entities owned and/or controlled by him.

14. Nancy Troy Lovett ("Lovett"), Nancy Troy Lovett Self-Directed Individual Retirement Account ("Lovett SDIRA"), and Raul L. Lovett Marital Trust ("Lovett Trust"); $661,272 total; (1) for conversion by Acropolis of $94,151 paid by American Shipyard Corp on the loan in which Lovett, Lovett SDIRA, and Lovett Trust purchaseD a participation interest; and (2) Acropolis as an alter ego of Northeast Capital owes Lovett SDIRA on an open-end mortgage and note the principal amount of $234,000 plus interest thereon, totaling $252,720 as of December 31, 2004; and owes Lovett interest totaling $80,401 as of December 31, 2004 on an open-end mortgage and note in the principal amount of $73,000 (which principal amount has been paid).

15. Gregory T. Parkos, Trustee of The Gregory T. Parkos Revocable Trust – 1994 ("Gregory Trust"), and Joan M. Parkos Moran, Trustee of the Joan M. Parkos Revocable Trust – 1994 ("Joan Trust") both as assignees of The Parkos Family 1986 Trust ("Family Trust"); Gregory Trust claims $266,021.35 pre-petition, and $102,559.92 post-petition; and Joan Trust claims $60,000 pre-petition: (1) The Family Trust purchased a $400,000 participation in the Fairway Loan to Rocky Point; the lead lender conducted an auction sale of the equipment, and the net proceeds of which were paid to Moneta but not to claimants, of which the Family Trust should have been paid $120,000, which is claimed $60,000 by the Gregory Trust and $60,000 by the Joan Trust; (2) the Family Trust participation in American Shipyard Loan ("ASC") which totaled 12.8% of the Loan, and was assigned all to the Gregory Trust, which claims (a) $206,021.35 (claimant made an arithmetic error stating its claim is $266,021.35),

comprised of $112,809.25 of capitalized interest when the Loan was reorganized in bankruptcy, and $57,049 as its share of the principal payment of $245,000 made within five days of the confirmation of the bankruptcy plan reducing the then principal amount of the ASC Loan to $4.0 million, and $36,163.10 in interest payments which were received by Pantheon or Acropolis from January 1, 1999 through March 13, 2000; and (b) $102,559.92 for interest payments after March 13, 2000.

16. Joanne & Jack Mascola ("Mascolas"); $1,725; the Mascolas are the timeshare owners of three unit weeks in the Hotel on the Cay; they seek recovery of their payment of $975 to PSC for a special assessment, and their payment of $750 retainer paid to the attorney who represented the HOTC Timesharing Association in defense of Pantheon's suit.

17. Ronald Carmark, CPA, MBA ("Carmark"); $32,506.30 total; Carmark purchased all accounts receivable of the Arnold Kilberg & Company accounting practice from the Kilberg Bankruptcy estate. The claim consists of an account receivable for accounting services provided by Arnold Kilberg & Company to Fairway in the amount of $5,864.80, and services provided to Acropolis in the amount of $26,641.50.

18. Ronald Carmark, CPA, MBA ("Carmark - 2"); $41,501.75 total; $12,305.36 for wages, $13,868.03 pension plan contributions, back earned vacation wages of $9,844.82, and unreimbursed business expenses $1,483.54, all earned and accrued while an employee of Arnold Kilberg & Company, an alter ego of Acropolis.

19. Alicia A. Sasso ("Sasso"); $1,269.22; for wages earned and not paid while an employee of Arnold Kilberg & Company, an alter ego of Acropolis.

20. Carol Ann Izzard ("Izzard"); $5,248.10 total; for wages $1,615.38, pension plan

contributions of $3,168.24, unreimbursed business expenses of $464.48, all earned and accrued and not paid while an employee of Arnold Kilberg & Company, an alter ego of Acropolis.

21. Dennis J. Maxwell, CPA ("Maxwell"); $8,111.18 (arithmetic error, total of support documents is $8,133.18); wages earned and not paid while an employee of Arnold Kilberg & Company, $4,000, plus earned and unpaid vacation days totaling $2,200, plus unreimbursed out-of-pocket expenses totaling $1,933.18.

22. Isherwood & Isherwood, P.C. ("Isherwood"); $8,758.22; unpaid invoices for legal services rendered to PSC.

23. Hotel on the Cay Timeshare Association, Inc. ("HOTC"); $2,565,372.10, consisting of Judgment awarded in *HOTC v. Kilberg, Fairway, et al., supra.*, $1,312,860.20, and accrued interest thereon at 10% per annum, $1,252,511.90; in support, claimant attached a copy of the Memorandum and Order issued by Judge Torres in the case.

24. Legend Resorts, LP, Estate of Joan Cerilli, Benedetto A. Cerilli, Jr., Estate of Joseph Cerilli, all c/o Benedetto A. Cerilli, Jr.; no amount of claim is stated; claimant attaches and resubmits its claims previously filed in the Fairway Receivership; claimants also argue that when Fairway undertook the active management of the Hotel using its alter egos, it ceased being a limited partner in Legend and it incurred liability as a general partner.

25. Metacom Medical Associates, Inc. 401k Plan ("Metacom") f/k/a Paul J. Agatiello 401k Plan f/k/a Paul Agatiello, MD Retirement Plan; consisting of (1) $54,000 invested with Fairway in August 1992, on which monthly interest was paid at the rate of 15% per annum through April 1993, then apparently transferred to Moneta and Joan Kilberg and monthly interest payments from Joan Kilberg continued through July 1996, at which time claimant believes funds were invested in Rocky Point, but principal has never been paid back; (2) $90,000 participation interest in Rocky Point purchased from PSC dated

September 26, 1994, on which interest was paid from November 1994 through July 1996, but principal amount not repaid; and (3) $100,000 participation interest in Rocky Point purchased by Paul J. Agatiello, MD, individually from PSC dated September 26, 1994, and audit letter dated May 12, 1997 from Moneta, principal amount not repaid [in the Receiver's Recommended Disposition of Supplemental Claims, this will claim will be treated as a claim submitted by Paul Agatiello, MD].

26. John P. Gyorgy, Noel & Gyorgy LLP ("Gyorgy"); $3,290.39; unpaid invoices for legal services rendered to Acropolis between June 2000 and September 2001 in regard to C.R. Amusements, LLC, adversary proceeding in bankruptcy.

27. Joseph Longo ("Longo"); $115,199.39; IRS assessed Longo, as the responsible individual, penalties totaling $86,430.67 plus interest totaling $28,352.84 for nonpayment of Federal employee withholding taxes (Form 941) by Participation Management Company c/o Hotel on the Cay for the quarters ending 12/31/1995 through 3/30/1997; and IRS filed a Federal Tax Lien against Longo.

28. The Narragansett Bay Commission ("NBC"); $4,737.87; for sewer use fees at five real properties located in Providence, RI: (1) 285 Governor St., in name of Arnold Kilberg; (2) 19 South Angell St., in name of Northeast Capital; (3) 88 Irving Ave., in the name of Washington Condominium Association (believed to be part of Hamlet Properties Receivership); (4) 90 Irving Ave, in name of Hamlet Properties, LLC; and (5) 98 Irving Ave, in name of Washington Condominium Association; NBC also filed claims in the Hamlet Properties Receivership, the Northeast Capital Receivership, and in the Arnold Kilberg Chapter 7 Bankruptcy; it does not seek duplicate payments.

29. The following two claims were filed by counsel under a single cover/transmittal letter:

(a) PHH Mortgage ("PHH"); $351,575.93 as of February 9, 2005 balance of principal, interest, expenses outstanding on Note secured by first Mortgage on real estate owned by Joan and Arnold Kilberg located at 3554 Pine Lake Court, Delray

Beach, FL 22445; and

(b) Deutsche Bank National Trust Company ("Deutsche Bank"); $592,332.68 as of February 9, 2005 balance of principal, interest, expenses outstanding on Note secured by first Mortgage on real estate owned by Joan and Arnold Kilberg located at 642 Blackstone Blvd., Providence, RI 02906.

30. Henry Vara, Francis DiMento, Rita DiMento and James Callahan ("Vara et al."); a monetary award is not sought; collectively claimants are 49% minority owners of C.R. Amusements, LLC, and are presently Appellants in *Callahan et al. v. Moneta Capital Corporation*, Case No. 04-1950, 1st Cir., involving Appellants' filling of an amended Proof of Claim in the Moneta Receivership; claimants request that any hearing to be scheduled on the Receiver's Objection to its Proof of Claim herein be stayed until the U. S. Circuit Court issues its decision on claimants' Appeal.

31. JoAnn Palmieri ("Palmieri"); $440,000 (current value of home) or discharge of mortgage on residence; Palmieri and her former husband gave a mortgage on their residence to Participation Services Corporation as security for its loan to Chateau Enterprises, their business, which mortgage was assigned to Acropolis; they request a discharge and release of their mortgage, which is not a claim against an asset of the Fairway receivership estate; the Receiver's investigation has confirmed that the loan has been repaid and it is preparing the necessary documents to discharge the mortgage.

32. Susan E. Bergeron ("Bergeron"); amount of claim not specified; claim against Acropolis as an alter ego of Arnold Kilberg for payment to claimant of the pension/profit sharing plan owed to Bergeron's late husband, Alfred A. Bergeron Jr., CPA, employed by Kilberg.

33. Ruth Haber Shonbrun ("R. Shonbrun"); $194,850 total; $60,000 participation interest in Rocky Point Loan plus $134,850 interest thereon calculated at the rate of 15.5% per

annum from November 1990 through April 30, 2005.

34. Estate of Arthur Shonbrun ("Shonbrun Estate"); $259,800 total; $80,000 participation interest in Rocky Point Loan plus $179,800 interest thereon calculated at the rate of 15.5% per annum from November 1990 through April 30, 2005.

As described above, numerous individual claims are based upon the claimant's purchase of a participation in a loan in which Fairway was the lead lender. Each of those claims will be disposed of in accordance with this Court's Order dated September 12, 2002, the Pay Participant Order (see footnote 2, *supra*.).

The Receiver is reviewing and researching each claim and receiving supplementation from claimants as appropriate. Upon its conclusion, the Receiver will file with this Court and serve on each claimant the Receiver's Notice and Determination of Claims Received in Response to the Supplemental Claims Bar Date. That Notice will contain the Receiver's recommendation for the disposition of each claim, and its recommendation for a summary procedure by which this Court will be able to expeditiously resolve any disputes by any claimant arising from the Receiver's recommended disposition of its claim.

## VII. RECEIPTS AND DISBURSEMENTS

The Schedule attached as Exhibit A to this Report sets forth Cash Receipts and Disbursements for the current reporting period, August 1, 2002 to July 31, 2005, and from the inception of the receivership through the current period, March 13, 2000 to July 31, 2005.

## VIII. CONCLUSION

This Third Receiver's Report was prepared by Brian S. Stern, Principal Agent for the Receiver, with accounting information provided by Zarrelli & Riggs, PC, CPAs.

Respectfully submitted,
U.S. SMALL BUSINESS ADMINISTRATION,
AS RECEIVER FOR FAIRWAY CAPITAL CORPORATION

Dated: Nov. 22, '05

Brian S. Stern, Principal Agent
666 Eleventh St., N.W. - Suite 200
Washington, DC 20001
Tel: (202) 272-3604
FAX: (202) 504-2247