UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, Plaintiff, | ) | |
| v. | ) | C.A. No. 00-035L |
| FAIRWAY CAPITAL CORPORATION, Defendant. | ) | |

In Re Motion of the Government of the Virgin Islands Objecting to the Receiver's Recommended Disposition of Claims.

## DECISION AND ORDER

Ronald R. Lagueux, Senior United States District Judge.

This matter comes before the Court on a Motion filed by the Government of the Virgin Islands ("Claimant") Objecting to the Receiver's Recommended Disposition of the Claims of the Government of the Virgin Islands as Required by the Court's Order dated February 16, 2005.

Claimant seeks to have this Court dismiss for lack of subject matter jurisdiction or for insufficient service of process the Receiver's opposition to Claimant's equitable claim for possession of Protestant Cay and all permanent improvements thereon, including the Hotel on the Cay Resort. Alternatively, Claimant requests that this Court abstain from making any determination as to Claimant's equitable claim for possession. If this Court exercises jurisdiction over this matter, Claimant

seeks judgment from this Court granting its equitable claim and its monetary claims to the extent that they were allowed by the Receiver. Claimant also requests a plenary trial concerning the portion of its monetary claims that the Receiver disallowed.

For the reasons set forth at length below, this Court exercises its exclusive jurisdiction over this matter; accepts and adopts the Receiver's recommendation to disallow Claimant's equitable claim for possession of Protestant Cay; and accepts and adopts the Receiver's recommendations allowing in part and denying in part Claimant's monetary claims.

## Facts and Travel

### I. The Receivership

This matter began when the Small Business Administration (the "SBA") filed a Complaint for Receivership, Judgment and Permanent Injunctive Relief (the "Receivership Complaint") against Fairway Capital Corporation ("Fairway"), a Rhode Island corporation, on January 19, 2000 for, among other things, the failure of Fairway to pay amounts it owed to the SBA. This Court, by its March 13, 2000 Order (the "Receivership Order") issued pursuant to 15 U.S.C. § 687c, established the Fairway Receivership Estate (the "Fairway Estate") and took exclusive jurisdiction of Fairway "and all of its assets and property, of whatever kind and wherever located . . ." Receivership Order, ¶ 1. The Receivership Order also appointed the SBA as Receiver "for

the purpose of marshaling and liquidating all of Fairway's assets and satisfying the claims of creditors therefrom in the order of priority as determined by this Court." Id.

Later, this Court entered an Order dated May 2, 2001 Approving the Form and Manner of Notice to Claimants and Establishing a Claims Bar Date (the "Bar Date Order") that established a procedure by which creditors would be given notice to present their claims to the Receiver by a certain date. Pursuant to the Bar Date Order, the Receiver solicited claims against Fairway, the Fairway Estate, and assets or funds in the possession of the Receiver. The Receiver made direct mailings of the Notice to All Creditors or Claimants of Fairway Capital Corporation (the "Notice to Creditors") to all known prospective claimants and published the Notice to Creditors twice in The Providence Journal and The St. Croix Avis.

In response to the Receiver's solicitations, Claimant submitted equitable and monetary claims to the Receiver. On October 20, 2004, the Receiver filed its Notice of Recommended Disposition of Claims Received in Response to Claims Bar Date ("Recommendations") recommending that Claimant's equitable claim for immediate possession of Protestant Cay be denied and that Claimant's monetary claims be allowed in part and denied in part. On February 16, 2005, this Court issued an Order (the "Approval Order") granting the Receiver's Motion for Entry of an Order

Approving the Receiver's Recommendations. The Approval Order also established a procedure by which this Court could hear any objections to the Receiver's Recommendations, including the specific factual and legal grounds for the objections. On April 27, 2005, Claimant submitted a Response in Opposition to the Receiver's Recommendations with this Court.

II. Standard of Review

In accepting or rejecting the claims of creditors, as well as in filing a report of findings of fact and conclusions of law, a receiver acts like a master. 3 Ralph Ewing Clark, Clark on Receivers § 650, 657 (3d ed. 1959). A district court must decide de novo all objections to findings of fact and conclusions of law made or recommended by a master before ruling on the master's recommendations. Fed. R. Civ. P. 53(g)(1), (3)-(4).

Federal Rule of Civil Procedure 53 was amended in 2003 to include a de novo standard of review for a master's findings of fact. Fed. R. Civ. P. 53 advisory committee's note, 2003 amendments. Rule 53 was "revised extensively to reflect changing practices in using masters" as courts appoint masters to perform a variety of functions. Id. Rule 53(g)(3) had formerly required the application of a clear-error standard of review to a master's factual findings. 9 James Wm. Moore et al., Moore's Federal Practice, § 53.42[1] (3d ed. 1997). Such a deferential standard is now recognized to be more appropriate for findings that do not

go to the merits of an underlying claim. See Fed. R. Civ. P. 53 advisory committee's note, 2003 amendments. The application of de novo review is consistent with the standard of review applied to those portions of a magistrate judge's report and recommendation to which an objection is made. See 28 U.S.C. § 636 (2005); Mills v. Brown, 372 F. Supp. 2d 683, 685 (D.R.I. 2005).

Consistent with the standard of review required under Fed. R. Civ. P. 53(g), this Court proceeds to apply a de novo standard of review to Claimant's objections to the findings of fact and conclusions of law contained in the Receiver's Recommendations.

III. Factual Background

In the Approval Order, this Court indicated that it would resolve Claimant's objections to the Receiver's Recommendations on the basis of the claim documents previously submitted to the Receiver as part of the Claims Bar Date procedure, the Receiver's Recommendations, Claimant's Motion by way of objection, and the Receiver's opposition to Claimant's Motion. With one exception, Claimant did not provide any specific factual objections to the Receiver's Recommendations. Thus, on the basis of these documents, including Chief Judge Ernest Torres' factual findings in Hotel on the Cay Time-Sharing Ass'n v. Kilberg, C.A. No. 97-279-T, 2000 WL 34019282 (D.R.I. Apr. 6, 2000), a separate action upon which the Receiver relied in composing its Recommendations, the Court finds the following facts to be undisputed except where

otherwise noted.

A. Creation of the Time-Share Units

Protestant Cay is a small island located in the United States Virgin Islands and is owned by the Government of the Virgin Islands. On April 6, 1964, the Legislature of the Virgin Islands authorized the Governor of the Virgin Islands to negotiate a lease for Protestant Cay by Act No. 1179 (the "Enabling Act"). Within one month, the Governor executed the Ground Lease which leased Protestant Cay to Hotel on the Cay, Inc. for fifty years. The Ground Lease provides that the leasehold interest may be assigned by the lessee with the written consent of the Governor. Subsequently, two amendments of the Ground Lease were executed. Both Amendment I to the Ground Lease, dated December 30, 1968 ("Amendment I"), and Amendment II to the Ground Lease, dated December 16, 1992 ("Amendment II"), were signed by the Governor. Amendment II extended the term of the Ground Lease to the year 2020.

The Ground Lease was eventually assigned to Oliver Plunkett. In August of 1980, Plunkett filed the Declaration of Partial Leasehold Ownership Plan Establishing the Hotel on the Cay a Time-Sharing Vacation Ownership Plan (the "Declaration") with Claimant to create approximately 2,900 weekly time-share units at the Hotel on the Cay Resort (the "Resort"). After recording the Declaration, Plunkett sold approximately one half of the time-

share units, leaving approximately 1,400 time-share units unsold. The Receiver claims an ownership interest in these unsold units.

B. Legend Resorts

In 1982, Plunkett declared bankruptcy. In 1986, the trustee of Plunkett's bankruptcy estate conveyed Plunkett's interest in the Ground Lease to Harborfront Properties, Inc. ("Harborfront"), a Virgin Islands corporation. The bankruptcy trustee simultaneously conveyed an interest in the unsold units to Protestant Cay, Ltd. On December 28, 1990, Legend Resorts, L.P. ("Legend"), a Rhode Island limited partnership, and TSA Acquisition, Inc. ("TSA") obtained the unsold units from Protestant Cay, Ltd. In order to purchase the unsold units and obtain an interest in the Ground Lease, Legend and TSA borrowed $1.7 million from Fairway. Fairway obtained a mortgage on the Ground Lease from Harborfront, as well as mortgages on the time-share units from Legend and TSA, and acquired a twenty percent equity ownership interest in Legend as a limited partner. From December 24, 1990 through November 28, 1995, Legend's general partner was N.E.B., Inc. ("NEB"), a Rhode Island corporation, while its limited partners included Joan Cerilli, Jane Cerilli, and Fairway. In 1991, Legend took an assignment of the Ground Lease from Harborfront with the consent of the Governor. The following year, Amendment II to the Ground Lease was executed by the Governor.

In March of 1994, Fairway incorporated Participation Services Corporation ("PSC") to service the loan made to Legend (the "Legend Loan") and other Fairway loans. Fairway assigned its interest in the Legend Loan and related mortgages to PSC on July 12, 1994. This assignment was later determined to have violated SBA regulations. On September 1, 1994, a subsidiary of PSC, Participation Management Corporation ("PMC"), entered into an agreement with Legend to manage the Resort. According to the factual findings made by Chief Judge Torres in Kilberg, PMC managed the Resort from September 1, 1994 until May 31, 1997. 2000 WL 34019282, at *4. In April of 1997, the time-share unit owners formally incorporated the Hotel on the Cay Time-Share Association ("HOTC") which had previously been created by the Declaration. Id. at *2, *6. HOTC took over management of the Resort on June 1, 1997.[1] Id. at *6.

C. The Foreclosure Action

In 1994, PSC initiated an action for foreclosure, Participation Services Corp. v. Legend Resorts, L.P., Civil No. 727/1994, (the "Foreclosure Action") in the Territorial Court of the Virgin Islands, Division of St. Croix (the "Territorial Court") against Legend, Harborfront and TSA on their mortgages.

---

[1]Claimant argues that a scrivener's error in the Kilberg decision mistakenly identified the date that marked the beginning of HOTC's management of the time-share property. This writer addresses this argument in considering Claimant's monetary claims.

Claimant also was named as a defendant in that action. PSC recorded a lis pendens on the property on October 4, 1994 and recorded a Stipulated Judgment of Foreclosure on June 7, 1996. In November of 1996, the Territorial Court approved an Amended Consent Judgment from Legend that was signed by the president of Legend's general partner, NEB. The following month, PSC obtained a judgment in the Foreclosure Action allowing foreclosure on the mortgage on the Ground Lease. PSC subsequently purchased the unsold time-share units at a foreclosure sale.

D. The Eviction Action and the Stipulated Settlement

On June 5, 1996, Claimant sent notice to Legend and Fairway that it was terminating the Ground Lease as amended by Amendment II (although Fairway has no record of actual receipt of the notice). On October 4, 1996, Claimant brought an action for debt and eviction, Government of the Virgin Islands v. Legend Resorts, L.P., Civil No. 612/1996, (the "Eviction Action") to regain possession of Protestant Cay. On September 18, 1997, the Territorial Court entered a default judgment against Legend. On December 31, 1997, PSC filed a Motion for Leave to Intervene and to Set Aside the Entry of Default by contesting the validity of Amendment II and thus the ability of Claimant to terminate the lease according to Amendment II. The Territorial Court granted PSC's Motion to Intervene in the Eviction Action on May 28, 1998. HOTC also filed an intervenor complaint in the Eviction Action.

On May 22, 1998, Claimant and HOTC entered into a Stipulated Settlement which states that in consideration of HOTC withdrawing its complaint, Claimant will recognize HOTC as lessee of Protestant Cay, including the Resort that houses the 1,400 time-share units, "free and clear from any and all obligations and defaults of [Legend, PSC, PMC], Pantheon Enterprises, Inc. and/or all other prior lessees." Stipulated Settlement, ¶ 3a. The Stipulated Settlement also provides that HOTC is entitled to lease the property for $3,500 per month and that HOTC is not a successor owner to Legend, PSC, PMC or Pantheon and is not responsible for any of their debts or obligations. According to the terms of the Stipulated Settlement, HOTC's lease expires on December 31, 2039. The Governor, Attorney General, and Commissioner of Property and Procurement of the Virgin Islands all signed the Stipulated Settlement, which became effective on June 1, 1998.[2]

On December 22, 1999, Claimant filed a Motion for Immediate Possession of Protestant Cay, for Summary Judgment against PSC, to Set Aside the Stipulated Settlement, and to Reinstate Intervenor Complaints ("Motion for Summary Judgment") in the

---

[2]At a hearing before this Court on July 12, 2005, Claimant contended that the Governor did not sign the Stipulated Settlement. However, the Governor's signature clearly appears on the copy of the Stipulated Settlement contained in Claimant's materials submitted to the Receiver as part of the Claims Bar Date procedure.

Territorial Court. Claimant's Motion for Summary Judgment was stayed by this Court's March 13, 2000 Receivership Order appointing the Receiver and imposing a stay of the Eviction Action. On February 3, 2003, Claimant filed a Motion for Relief from the Receivership Stay Order so that the Eviction Action could continue before the Territorial Court. On September 30, 2003, this Court issued a Bench Order denying the Claimant's Motion to lift the stay.

E. Pantheon

The Receiver filed a Motion for Contempt on March 5, 2002 against Pantheon Enterprises, Inc. ("Pantheon"), formerly known as PSC, to return the time-share units to the Fairway Estate. This Court's Order dated April 9, 2002 (the "Contempt Order") declared that "all assets recorded in the St. Croix, U.S. Virgin Islands land records in Pantheon's name be deemed transferred to the Fairway Receivership Estate in the name of the SBA, as Receiver for Fairway Capital Corporation . . . ." Contempt Order, p.2. The Receiver then recorded an assignment of the time-share units in the land records of St. Croix. In its Order Granting Receiver's Motion for Partial Consolidation of Fairway Estate ("Consolidation Motion") dated January 8, 2004, this Court recognized Fairway as the true owner of Pantheon, formerly known as PSC, and declared that all claims against Pantheon would be recoverable from the Fairway Estate.

**Jurisdiction, Notice, and Abstention**

Claimant seeks to have this Court dismiss for lack of subject matter jurisdiction or for insufficient service of process the Receiver's opposition to Claimant's equitable claim for possession of Protestant Cay. Alternatively, Claimant requests that this Court abstain from making a determination regarding its equitable claim and allow the Territorial Court to do so. In denying Claimant's motion to lift the judicial stay in its September 30, 2003 Bench Order, this Court reasserted its exclusive jurisdiction over this matter and indicated that it will not abstain from making a determination regarding Claimant's equitable claim for possession. In this opinion, this Court now sets forth its reasoning.

I. Jurisdiction

Claimant moves to dismiss the Receiver's opposition to its equitable claim for possession for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Claimant asserts that according to 28 U.S.C. §§ 745 and 1692 and Federal Rule of Civil Procedure 66, this Court's subject matter jurisdiction extends only to assets belonging to Fairway on the date that the Receivership Order was issued: March 13, 2000. Claimant argues that this Court does not have subject matter jurisdiction over Claimant's equitable claim because Fairway did not have any recognized interest in the time-share

units on the date that the Receivership Order was issued. Claimant also contends that the Receiver has recognized that HOTC possesses the time-share units, yet has not sought to secure possession by bringing an independent action against HOTC.

In order for a lawsuit to proceed in federal court, the court must establish and retain subject matter jurisdiction over the case at all times during the litigation. Fed. R. Civ. P. 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."). In the Receivership Order, this Court established exclusive jurisdiction over Fairway "and all of its assets and property, of whatever kind and wherever located" pursuant to 15 U.S.C. § 687c. Receivership Order, ¶ 1. This Court did not limit its jurisdiction to assets that Fairway possessed at the moment it was put into receivership. Rather, the Receivership Order appointed the SBA as Receiver to marshal and liquidate all of Fairway's assets, including "assets transferred by Fairway in violation of applicable statutes or regulations governing Small Business Investment Companies . . . ." Id. at ¶¶ 1, 7. The Receiver filed a copy of its Receivership Complaint and this Court's Receivership Order in the United States District Court for the District of the Virgin Islands pursuant to 28 U.S.C. §§ 754 and 1692, and asserted that the Legend Loan, collateral and

time-share units controlled by Pantheon at that time are assets of the Fairway Estate. In its Contempt Order, this Court held Pantheon/PSC in contempt for failing to turn the time-share assets over to the Receiver. By ordering that "all assets recorded in the St. Croix, U.S. Virgin Islands land records in Pantheon's name be deemed transferred to the Fairway Receivership Estate," this Court recognized that the time-share units were assets of the Fairway Estate. Contempt Order, p.2. After this Court issued the Contempt Order, the Receiver recorded an assignment of the time-share units in the Virgin Islands. Although the Receiver has indicated that HOTC is in possession of the Resort and the leasehold, the Receiver claims ownership of the specific time-share units at issue. Accordingly, the Receiver is not required to bring a separate action against any party in order for this Court to have control over the marshaled time-share units and to assert jurisdiction to decide Claimant's equitable claim.

Contrary to this Court's finding in the Contempt Order, Claimant argues that the Fairway Estate, and therefore the Receiver, cannot claim to possess any property interest relating to Protestant Cay and the Resort. Claimant's arguments in support of its claim are based on its purported termination of the Ground Lease and the alleged invalid judgment in the PSC Foreclosure Action. As will be demonstrated, this Court concludes that these

arguments have no merit.

A. Termination of the Ground Lease

Claimant asserts that on August 4, 1996, sixty days after it sent notice of termination to Legend, the Ground Lease and the time-share units in which Fairway claims an interest were terminated. Furthermore, Claimant argues that the Ground Lease would have otherwise been terminated when the corporate charter of Legend's general partner, NEB, was revoked and Legend dissolved. According to Claimant, Legend's dissolution and default under the Ground Lease occurred before Fairway could foreclose on its mortgage with Legend, thus terminating Fairway's interest in the mortgage and time-shares.

There has not yet been a final judicial determination as to whether the Ground Lease has been terminated because Claimant's Motion for Summary Judgment in the Eviction Action before the Territorial Court was stayed by this Court at the time of the institution of this Receivership. In permitting PSC to intervene in the Eviction Action, the Territorial Court noted that, "[i]f the Government prevails on the merits, the leasehold interest may be terminated." Gov't of the Virgin Islands v. Legend Resorts, L.P., Civ. No. 612/96, 1998 V.I. Lexis 12, at *14 (V.I. Terr. Ct. May 28, 1998). The Ground Lease cannot be deemed terminated until after the judicial stay has been lifted and the Eviction Action has been resolved by the Territorial Court. Also, whether the

Ground Lease can be considered terminated depends on whether the Stipulated Settlement, which preserves the time-share structure under the Declaration, is valid and enforceable. Therefore, Claimant cannot yet declare the Ground Lease and subordinate time-share units terminated.

Claimant's contention that PSC acknowledged that the Ground Lease and time-share units had been terminated is also unfounded. As Claimant indicates, PSC sought to require Claimant to enter into a new lease with PSC if the Territorial Court upheld Claimant's alleged termination of the Ground Lease in the course of the Eviction Action. However, PSC's conditional request for a new lease if the Territorial Court upheld the termination was not an acknowledgment that the Ground Lease had been terminated. On the contrary, PSC intervened in the Eviction Action in order to challenge Claimant's ability to terminate the Ground Lease.

B. The PSC Foreclosure Action

Claimant argues that Fairway should not be permitted to rely on the PSC Foreclosure Action to assert an interest in the time-shares because the foreclosure judgment is invalid. According to Claimant, the foreclosure judgment was based on Legend's consent to the entry of judgment, which is void because it was signed by the president of Legend's general partner, NEB, whose corporate charter previously had been revoked. Under Rhode Island law, however, "[n]o act of a corporation . . . is invalid because the

corporation was without capacity or power to do the act . . . ." R.I. Gen. Laws § 7-1.2-303 (1999 Reenactment). A corporation's lack of capacity or power to perform an act can only be asserted in a proceeding by a shareholder, the corporation itself, a receiver, trustee, other legal representative, or the Rhode Island attorney general. Id. Claimant therefore has no standing to assert that Legend lacked capacity to consent to the entry of judgment because NEB's corporate charter had been revoked.

Claimant also asserts that Fairway should not be allowed to rely on the Foreclosure Action because Fairway fraudulently assigned the Legend Loan and related mortgages to PSC. According to Claimant, the fraudulent nature of this transfer, which was unknown to the Territorial Court and to creditors named in the Foreclosure Action, was confirmed by the Court in Hotel on the Cay Time-Sharing Ass'n v. Kilberg, C.A. No. 97-279-T, 2000 WL 34019282 (D.R.I. Apr. 6, 2000).[3] The Court in Kilberg found that PSC was an alter ego of Fairway and that Fairway assigned the loan to PSC for no consideration. 2000 WL 34019282, at *10. However, neither the Court in Kilberg nor any other court has declared Fairway's transfer of the Legend Loan and mortgages to

---

[3]Kilberg involved a separate action in which HOTC brought suit against PSC, Fairway and others seeking damages for misappropriation of fees and negligence arising from the management of the Resort. Id. at *1. The Court in Kilberg concluded that Fairway and PSC were liable for amounts owed to HOTC. Id. at *16.

PSC to be fraudulent. Therefore, the Receiver is not prohibited from relying on the judgment in the Foreclosure Action to assert an interest in the time-shares.

II. Notice

Claimant also seeks to have this Court dismiss for insufficient service of process the Receiver's claim for possession against Claimant pursuant to Federal Rule of Civil Procedure 12(b)(5). Claimant contends that the Receiver failed to serve it with a proper summons or complaint to challenge the Ground Lease termination and that the Receiver has not alleged facts sufficient to establish the continued existence of the Ground Lease. As previously discussed, the Receiver provided Claimant with adequate notice of the Claims Bar Date Procedure through which Claimant ultimately submitted its monetary and equitable claims. No further service of process by the Receiver is required under the Receivership Order. Rather, Claimant has the burden of providing specific grounds for any objection to the findings of fact or conclusions of law contained in the Receiver's Recommendations. Accordingly, Claimant's motion to dismiss for insufficient service of process is denied.

III. Abstention

Claimant requests that this Court abstain from making a determination regarding its equitable claim for possession and refer the issue to its place of origin: the Territorial Court.

Although this Court has discretion to assert its exclusive jurisdiction under 15 U.S.C. 687c, Claimant argues that this Court should refrain from deciding this matter in light of relevant federal abstention doctrines. Although a federal court must typically proceed to judgment in every case over which it has jurisdiction, abstention is "an extraordinary and narrow exception" that permits a federal court, in exceptional circumstances, to decide not to hear a matter properly before it. County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 188-89 (1959). This writer concludes that this case does not present such an exception.

A. *Colorado River* Abstention

Claimant argues that this Court should abstain from deciding its equitable claim based on the abstention doctrine set forth by the United States Supreme Court in Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976). Under this doctrine, a federal court may, in exceptional circumstances, exercise its discretion in choosing to abstain when there is a parallel proceeding pending in state court. Id. at 817-18; Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 19 (1983). Federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." Colorado River, 424 U.S. at 817. In deciding whether to refrain from acting, therefore, district courts should maintain a "heavy presumption

favoring the exercise of jurisdiction." Villa Marina Yacht Sales, Inc. v. Hatteras Yachts, 915 F.2d 7, 13 (1st Cir. 1990).

The First Circuit has recognized a non-exhaustive list of factors, based on the United States Supreme Court's decision in Colorado River and its subsequent decision in Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 19 (1983), that a court should consider in determining whether to abstain from its unflagging obligation to exercise jurisdiction:

> (1) Whether either court has assumed jurisdiction over a *res*; (2) the [geographical] inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether state or federal law controls; (6) the adequacy of the state forum to protect the parties' interests; (7) the vexatious or contrived nature of the federal claim; and (8) respect for the principles underlying removal jurisdiction.

Rio Grande Cmty. Health Ctr., Inc. v. Rullan, 397 F.3d 56, 71-72 (1st Cir. 2005) (quoting KPS & Assocs., Inc. v. Designs by FMC, Inc., 318 F.3d 1, 10 (1st Cir. 2003)). These factors do not comprise a mechanical checklist. See Moses H. Cone, 460 U.S. at 16. Nor is any single factor necessarily determinative. Colorado River, 424 U.S. at 818; Villa Marina, 915 F.2d at 12. Instead, "a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required." Colorado River, 424 U.S. at 818-19.

In order to apply the Colorado River doctrine, a parallel

state proceeding must exist such that substantially the same parties are litigating substantially the same issues in the state and federal forums. See McLaughlin v. United Virginia Bank, 955 F.2d 930, 935 (4th Cir. 1992). In both its Motion for Summary Judgment in the Eviction Action before the Territorial Court and its Objection to the Receiver's Recommendations before this Court, Claimant has petitioned that the Stipulated Settlement be deemed void in order to regain possession of Protestant Cay. Also, Fairway can be considered a party to both actions. PSC, which is owned by Fairway, is a party to the Eviction Action, and the Receiver of the Fairway Estate is a party to the present action before this Court. Thus, the action pending before the Territorial Court is sufficiently parallel to warrant consideration of the Colorado River doctrine.

In balancing the factors that are relevant to the present case, however, it is apparent that the requisite exceptional circumstances needed to justify abstention do not exist. The fact that the Territorial Court obtained jurisdiction over Claimant's action to regain possession of Protestant Cay prior to this Court's Receivership Order is the sole factor that weighs in favor of abstention. Consideration of the remaining factors relevant to this matter direct this Court to fulfil its obligation to exercise jurisdiction.

The first factor in the Colorado River analysis applies to

situations in which a court assumes jurisdiction over a res in the course of an *in rem* proceeding. See Chase Brexton Health Servs., Inc. v. Maryland, 411 F.3d 457, 463 (4th Cir. 2005); Britton v. Britton, 223 F. Supp. 2d 276, 284 (D. Me. 2002). An *in rem* or *quasi in rem* action requires that the court have possession or control of the property that is the subject of the suit to give effect to its jurisdiction. Princess Lida of Thurn & Taxis v. Thompson, 305 U.S. 456, 466 (1939); Penn Gen. Cas. Co. v. Pennsylvania, 294 U.S. 189, 195 (1935). The Territorial Court does not have *in rem* jurisdiction over the res at issue. HOTC has been in possession of Protestant Cay under the terms of the Stipulated Settlement since June 1, 1998. Although Claimant petitioned the Territorial Court to void the Stipulated Settlement in its Motion for Summary Judgment in the Eviction Action, this Court's Receivership Order stayed that proceeding. Therefore, the Territorial Court has not assumed jurisdiction over any res as contemplated by the first factor articulated by the Court in Colorado River.

The federal forum is not inconvenient as counsel for both parties are located in this geographic area of the United States and have appeared before this Court on multiple occasions. Although Claimant protests that potential witnesses and evidence are located in the Virgin Islands, any presentation of evidence at this stage is unnecessary because the issues before this Court

are almost exclusively questions of law. Furthermore, Claimant chose not to present any evidence when this Court gave it the opportunity to do so.

Interests of judicial efficiency and of avoiding piecemeal litigation strongly favor this Court's exercise of jurisdiction. In the course of asserting its exclusive jurisdiction, this Court already has resolved certain issues relevant to Claimant's equitable claim. Having decided these issues, this Court would be forcing the Territorial Court to engage in a duplicative judicial effort if it were to abstain. In addition, Claimant's monetary claims are now before this Court. This Court would perpetuate the piecemeal resolution of this litigation if it were to decide Claimant's monetary claims but decline to decide Claimant's equitable claim.

Federal and Rhode Island law provide the primary basis for determining all issues concerning the Fairway Estate, including the matter currently before this Court. Whereas "the presence of federal-law issues must always be a major consideration weighing against surrender," it is only in "rare circumstances [that] the presence of state-law issues may weigh in favor of that surrender." Moses H. Cone, 460 U.S. at 26. The validity of the Stipulated Settlement is the sole significant issue before this Court that must be decided by interpreting Virgin Islands law. This Court can resolve this issue by applying the Restatement of

the Law of Contracts, which the Virgin Islands has adopted and this Court can readily interpret.

Finally, this Court is best equipped to adequately protect the interests of the Fairway Estate under federal law. The Territorial Court of the Virgin Islands is not established under Article III of the United States Constitution. See Parrott v. Gov't of the Virgin Islands, 230 F.3d 615, 623 (3d Cir. 2000). Instead, the Territorial Court has been established by congressional authority to regulate United States territories under Article IV, § 3, and it derives its jurisdiction from the Revised Organic Act, 48 U.S.C. §§ 1541-1645. Id. at 622-23. The federal statute that this Court relied on in establishing the Fairway Receivership reflects Congress's intent that a singular federal court should be designated to exercise exclusive jurisdiction over a receivership under the Small Business Investment Act. See United States v. Royal Bus. Funds Corp., 29 B.R. 777, 779-80 (S.D.N.Y. 1983), aff'd, 724 F.2d 12 (2d Cir. 1983). Thus, this Court is better equipped than the Territorial Court to protect the parties' rights in this case.

After considering these factors, this Court concludes that the instant matter does not present an extraordinary exception to the duty of this Court to adjudicate the controversy properly before it. See Colorado River, 424 U.S. at 813.

B. *Princess Lida* Abstention

Claimant also argues that this Court should abstain from deciding this matter according to the abstention principle articulated in Princess Lida of Thurn & Taxis v. Thompson, 305 U.S. 456 (1939). The Princess Lida doctrine is based upon the principle of comity that when one court has taken possession and control of property in an *in rem* or *quasi in rem* action, a second court cannot exercise jurisdiction over that same property in a subsequent *in rem* or *quasi in rem* proceeding. 305 U.S. at 466. In essence, "the first court to exercise *in rem* jurisdiction over the *res* exercises jurisdiction to the exclusion of a second court that later attempts to proceed against the same *res*." United States v. One 1986 Chevrolet Van, 927 F.2d 39, 44 (1st Cir. 1991). As previously indicated, however, there is no *in rem* or *quasi in rem* action pending before the Territorial Court. Furthermore, the matter presently before this Court is not an action *in rem* as this Court's jurisdiction is based upon 15 U.S.C. § 687c. Therefore, the Princess Lida doctrine is inapplicable to this matter.

C. Exclusive Jurisdiction

Further support for this Court's refusal to abstain from deciding Claimant's equitable claim exists in the exclusive nature of the jurisdiction that Congress intended this Court to exercise over all matters concerning this receivership. See

Royal, 29 B.R. at 779-80. In appointing the SBA as a federal receiver of a Small Business Investment Company ("SBIC") that violated the Small Business Investment Act, this Court has broad discretion to take exclusive jurisdiction over the offending SBIC and its assets wherever located. See 15 U.S.C. 687c (1997); United States v. ESIC Capital, Inc., 685 F. Supp. 483, 485 (D. Md. 1988). Section 687c "reflects and embodies Congress's clear intent that the court which chooses to exercise 'exclusive' jurisdiction under the Small Business Investment Act do so to the exclusion of all other courts." Royal, 29 B.R. at 779-80.

In United States v. Norwood Capital Corp., 273 F. Supp. 236 (D.S.C. 1967), the United States District Court for the District of South Carolina exercised exclusive jurisdiction over an SBIC pursuant to the Small Business Investment Act and stayed and enjoined related state court proceedings that had already been in process. 273 F. Supp. at 242. The Court indicated that through the Small Business Investment Act, Congress had expressly authorized federal district courts to take exclusive jurisdiction where appropriate "to protect the assets pending the Small Business Administration's recovery on its investment, as well as to permit discovery of any past abuses of program funds." Id. at 240, 242.

Similarly, under the terms of the Receivership Order, this Court has taken exclusive jurisdiction over all of Fairway's

assets, including those assets transferred by Fairway in violation of SBA regulations. The Receivership Order also stayed the Eviction Action pending before the Territorial Court. This Court's September 30, 2003 Bench Order reiterated its decision to assert exclusive jurisdiction by denying Claimant's Motion to lift the stay and permit the Eviction Action to continue before the Territorial Court. Through these Orders, this Court has exercised jurisdiction over Fairway and all of its assets to the exclusion of all other courts, including the Territorial Court.

**Resolution by Summary Procedure**

As this Court refuses to abstain from deciding Claimant's equitable claim, Claimant argues that it is entitled to a plenary trial concerning its disputed claim for possession. Claimant asserts that a plenary trial is necessary because summary proceedings would unfairly prejudice its interests.

In Central Republic Bank & Trust Co. v. Caldwell, 58 F.2d 721 (8th Cir. 1932), the Eight Circuit Court of Appeals articulated the differences between a summary proceeding and a plenary suit:

> The main characteristic differences between a summary proceeding and a plenary suit are: The former is based upon petition, and proceeds without formal pleadings; the latter proceeds upon formal pleadings. In the former, the necessary parties are cited in by order to show cause; in the latter, formal summons brings in the parties other than the plaintiff. In the former, short

> time notice of hearing is fixed by the court; in the latter, time for pleading and hearing is fixed by statute or by rule of court. In the former, the hearing is quite generally upon affidavits; in the latter, examination of witnesses is the usual method. In the former, the hearing is sometimes ex parte; in the latter, a full hearing is had.

Id. at 731-32.

Federal district courts have wide discretion in granting relief in an equity receivership and may use summary proceedings in fashioning such relief. SEC v. Elliott, 953 F.2d 1560, 1566 (11th Cir. 1992); SEC v. Hardy, 803 F.2d 1034, 1037, 1040 (9th Cir. 1986); United States v. Arizona Fuels Corp., 739 F.2d 455, 458 (9th Cir. 1984). Summary proceedings allow for the consolidation of all litigation concerning the receivership before a single district court and the efficient resolution of disputes. SEC v. Wencke, 783 F.2d 829, 837 n.9 (9th Cir. 1986). Receivership courts can employ summary procedures in allowing, disallowing and subordinating claims of creditors. Hardy, 803 F.2d at 1040; Arizona Fuels Corp., 739 F.2d at 458. Summary proceedings should afford creditors fair notice and an opportunity to be heard. See Hardy, 803 F.2d at 1040; Arizona Fuels Corp., 739 F.2d at 459. They should also allow parties to present evidence when the facts are in dispute and to make arguments regarding those facts. Elliott, 953 F.2d at 1567. These features of summary proceedings are consistent with Federal Rule of Civil Procedure 53(g)(1), which requires that "[i]n acting on

a master's order, report, or recommendations, the court must afford an opportunity to be heard and may receive evidence . . . ."

In its Approval Order, this Court established a procedure to hear any claimant's objection to the Receiver's Recommendations, including the specific factual and legal grounds for the objection. Claimant submitted a Response in Opposition to the Receiver's Recommendations, to which the Receiver filed a response. Claimant then appeared before this Court having been advised that it would have a full opportunity to litigate any issue and to present evidence to support its claims. Although this Court gave Claimant the opportunity to participate in a full hearing, Claimant chose not to present any evidence at that time. Instead, both parties have acknowledged that, with one exception, the matters presently before this Court are exclusively matters of law and are not issues of disputed facts. Claimant has not demonstrated how its interests are being prejudiced or how it has been inhibited from fully presenting its case. Therefore, this Court can now properly render a decision based on the materials already before it.

**Equitable Claim**

Claimant objects to the Receiver's recommendation that this Court deny Claimant's equitable claim for immediate possession of Protestant Cay. According to Claimant, the Receiver should be

estopped from challenging the Claimant's equitable claim for possession. Claimant supports its equitable claim for possession by arguing that the Stipulated Settlement, which recognizes HOTC as lessee of the property, should be set aside as invalid.

I. Estoppel

Claimant argues that a variety of estoppel doctrines should prohibit the Receiver from contesting Claimant's equitable action for immediate possession. Claimant alleges that the doctrines of claim preclusion, issue preclusion, equitable estoppel, and judicial estoppel all should be applied against the Receiver. However, the rationale that Claimant provides for application of these estoppel doctrines is unfounded and does not preclude the Receiver from contesting Claimant's equitable claim for possession before this Court.

As a basis for its estoppel arguments, Claimant argues that the decision in Pantheon Enterprises, Inc. v. Hotel on the Cay Timesharing Ass'n, Inc., No. 553/1998, 1999 WL 744018 (V.I. Terr. Ct. Aug. 20, 1999) established that a time-share mortgage to which Pantheon, as successor to PSC, was claiming a right was void under Virgin Islands law. Claimant reasons that because this mortgage was declared void, the Receiver should be estopped from enforcing the Ground Lease and ownership of the related time-share units and mortgages. The decision in Pantheon, however, concerns an entirely separate mortgage that Pantheon had

attempted to assert as a lien against time-share units that were sold before the mortgage had been recorded. 1999 WL 744018, at *2. The mortgage at issue in Pantheon was from Harborfront, not from Legend and TSA. Furthermore, the decision concerned those time-share units that had already been sold, not the unsold units owned by Legend and TSA that the Fairway Estate now claims to own. Therefore, the decision in Pantheon is not relevant to this discussion.

Claimant also cites its alleged termination of the Ground Lease and the invalid nature of the judgment in the PSC Foreclosure Action as grounds for its estoppel arguments. However, as this Court has previously indicated in asserting its exclusive jurisdiction over this matter, Claimant cannot yet characterize the Ground Lease as terminated or the Foreclosure Action judgment as invalid.

II. Stipulated Settlement

The importance of determining whether the Stipulated Settlement is valid and enforceable in deciding Claimant's equitable claim cannot be overstated. If enforceable, the Stipulated Settlement would prohibit Claimant from taking immediate possession of Protestant Cay by recognizing HOTC as the current lessee of Protestant Cay under the Ground Lease and by permitting the Receiver to retain the ability to liquidate the 1,400 unsold time-share units. If the Stipulated Settlement is

invalid and unenforceable, Claimant could then establish the termination of the Ground Lease, which would eliminate all the time-share units in which the Receiver claims the Fairway Estate has an interest. In support of its equitable claim for immediate possession, Claimant contends that the Stipulated Settlement should be set aside as unenforceable and invalid.[4]

A. Standing

As a threshold matter, Claimant argues that the Receiver

---

[4]In its Motion for Summary Judgment in the Eviction Action before the Territorial Court, Claimant alleged that HOTC had failed to make required payments and was therefore in default of its obligations under the Stipulated Settlement. Claimant had cited this allegation as an independent basis for invalidating the Stipulated Settlement. In its Recommendations, however, the Receiver found that HOTC had satisfied all lease payments due and had not defaulted on the Stipulated Settlement. In its present Response in Opposition to the Receiver's Recommendations, Claimant has not challenged this finding and has not specifically identified HOTC's alleged default as a basis for setting aside the Stipulated Settlement. Therefore, this Court will treat Claimant's argument relating to HOTC's alleged default as waived.

Furthermore, although Claimant has incorporated by reference its Motion for Summary Judgment in the Eviction Action before the Territorial Court pursuant to Fed. R. Civ. Pro. 10(c), this Court will only consider arguments specifically mentioned in its Memorandum in Support of its Motion Objecting to the Receiver's Recommendations. Any arguments that Claimant has not expressly identified in its Memorandum are deemed waived because Claimant must plead all prior claims with sufficient specificity that the Receiver could recognize that the claims had been asserted. See Kolling v. Am. Power Conversion Corp., 347 F.3d 11, 17 (1st Cir. 2003); see also Lowden v. William F. Mercer, Inc., 903 F. Supp. 212, 216 (D. Mass. 1995) (asserting that a later pleading must specifically identify which portions of the prior pleading are being adopted under Fed. R. Civ. P. 10(c)); 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1326 (3d ed. 2004) ("references to prior allegations must be direct and explicit, in order to enable the responding party to ascertain the nature and extent of the incorporation").

lacks standing to challenge or enforce any interest in the Stipulated Settlement because Fairway was not an intended third-party beneficiary under the Stipulated Settlement and was not in privity with HOTC. According to the Claims Bar Date Procedure established by this Court, the Receiver was appointed to receive the claims of all creditors of the Fairway Estate and to recommend the disposition of those claims. In submitting its equitable claim to the Receiver, Claimant introduced the issue of whether the Stipulated Settlement is valid before this Court. In its Recommendations, the Receiver refuted Claimant's arguments as to why the Stipulated Settlement is void and unenforceable. According to the procedure established by this Court's Approval Order, the Receiver now has the ability to provide further support for its rejection of Claimant's arguments regarding the Stipulated Settlement as part of its Recommendations to this Court.

B. Legislative Approval

Claimant contends that a prior administration of the Virgin Islands Government exceeded its authority by entering into the Stipulated Settlement. According to Claimant, the Stipulated Settlement is void because it was intended to constitute a new, independent lease and thus required the separate approval of the Legislature of the Virgin Islands apart from the 1964 Enabling Act. *See* 31 V.I.C. 205(c) (1995) (requiring that the Virgin

Islands Legislature approve any lease of real estate owned by the Government of the Virgin Islands exceeding one year).[5]

It is well recognized that settlement agreements are highly favored in the law as a means of resolving claims brought before the courts. See, e.g., Williams v. First Nat'l Bank, 216 U.S. 582, 595 (1910); Justine Realty Co. v. American Nat'l Can Co., 976 F.2d 385, 391 (8th Cir. 1992); Ins. Concepts, Inc. v. Western Life Ins. Co., 639 F.2d 1108, 1111. (5th Cir. 1981); D. H. Overmyer Co. v. Loflin, 440 F.2d 1213, 1215 (5th Cir. 1971). As a result, agreements such as the Stipulated Settlement that determine the rights of parties to the settlement should not be lightly set aside. See Justine Realty Co., 976 F.2d at 391.

By its terms, the Stipulated Settlement must be interpreted according to Virgin Islands law. Settlement agreements are treated as contracts and enforced under the rules governing contracts generally. Red Ball Interior Demolition Corp. v. Palmadessa, 173 F.3d 481, 484 (2d Cir. 1999); see also Interspace Inc. v. Morris, 650 F. Supp. 107, 109 (S.D.N.Y. 1986) (holding that under general contract principles, a settlement agreement "is binding despite the fact that it was never submitted for court signature and filing"). The Restatement (Second) of

[5]Notably, the Legislature of the Virgin Islands has never attempted to intervene in this case during the whole course of this extensive pending litigation despite the notoriety of the issues.

Contracts has been adopted by the Virgin Islands as the definitive authority on contract law in the absence of contrary local laws and precedent. Alejandro v. L.S. Holding, Inc., 310 F. Supp. 2d 745, 748 n.2 (D. Virgin Islands 2004); see also 1 V.I.C. § 4, (declaring that in absence of contrary local laws, courts of the Virgin Islands apply the common law as expressed in the restatements of the law).

The Restatement (Second) of Contracts § 203(a) (1981) provides that in interpreting an agreement and its terms, "an interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect . . . ." Fabrica De Tejidos La Bellota S.A. v. M/V MAR, 799 F. Supp. 546, 557-58 (D. Virgin Islands 1992). Furthermore, "[i]n the absence of contrary indication, it is assumed that each term of an agreement has a reasonable rather than an unreasonable meaning, and that the agreement is intended to be lawful rather than unconscionable, fraudulent or otherwise illegal." Restatement (Second) of Contracts, § 203(a) cmt. c. Thus, this Court begins this analysis with the presumption that the Government of the Virgin Islands, through its officials, and HOTC intended to enter into a valid and binding contract.

The language of the Stipulated Settlement indicates that it was designed to take effect under the existing Ground Lease

rather than constitute an unlawful independent lease. The fact that the Stipulated Settlement declares that HOTC takes its interest "free and clear from any and all obligations and defaults of . . . prior lessees" suggests that HOTC is taking an interest under the same Ground Lease under which prior lessees held an interest. Stipulated Settlement, ¶ 3.a. Although Claimant contends that the Stipulated Settlement did not obligate HOTC to the Ground Lease or Amendments, the Stipulated Settlement expressly describes the leasehold property in reference to the Declaration established under the Ground Lease by describing HOTC "as the lessee of that portion of property as shown on the Declaration of Partial Leasehold Ownership Plan . . . together with all easements and other rights set forth in said Declaration . . . ." Id. at ¶ 3.a. Furthermore, the Stipulated Settlement indicates that HOTC's monthly rent payment "represents a pro-rata share of the lease payment due under Amendment No. II to the original Lease Agreement . . . ." Id. at ¶ 3.b. Consistent with the principle articulated in Section 203(a) of the Restatement (Second) of Contracts, this Court interprets the language of the Stipulated Settlement in a manner which confirms that it was designed to be effective under the existing Ground Lease rather than establish a new, unlawful lease that is without sufficient legislative approval.

The Enabling Act provided the Governor of the Virgin Islands

with more than merely the narrow authority to enter into a singular lease with Hotel on the Cay, Inc. in 1964. Rather, the Enabling Act granted a blanket authority to the Governor with respect to the leasing of Protestant Cay. Implicit within that broad grant is the authority conferred on the Governor to deal with any issues and disputes that would arise out of the lease of that property. Section 8.03 of Amendment II, entitled "Repossessing and Reletting," states that "[i]n the event of a default by Lessee hereunder . . . Lessor may at once thereafter, or at any time subsequent during the existence of such breach or default: . . . [e]ither cancel this Lease by notice or without canceling this Lease, relet the Leased Premises or any part thereof upon such terms and conditions as shall appear advisable to Lessor." Subsequent to Legend's default under the Lease, the Governor executed the Stipulated Settlement and exercised his broad authority under the Enabling Act to relet Protestant Cay to HOTC as contemplated by § 8.03 of Amendment II. Although the Stipulated Settlement was a settlement between HOTC and Claimant, the Stipulated Settlement also essentially served as an amendment to the Ground Lease by establishing the rights of HOTC as an intervening party in the Eviction Action.

The Stipulated Settlement is deemed valid, effective and enforceable until December 15, 2020, which is the conclusion of

the term of years set forth in Amendment II to the Ground Lease.[6] According to the terms of the Stipulated Settlement, HOTC is the rightful holder of the leasehold premises described in the Declaration. Therefore, Claimant's equitable claim for immediate possession of Protestant Cay is unsupportable and lacking in merit.

**Monetary Claim**

I. Undisputed Claims

Claimant originally submitted approximately $1.45 million in monetary claims against the Fairway Estate as part of the Claims Bar Date Procedure. The Receiver has recommended that this Court allow Claimant's monetary claims in the total amount of $430,421.84. Claimant does not object to the Receiver's recommended allowance of $230,293.35 to satisfy Claimant's general unsecured claim for unpaid rent and late charges, interest and other arrearages. However, Claimant argues that the Receiver intended to approve an additional $259,258.74 (for a total of $489,552.09), rather than an additional amount of $200,128.49 (for a total of $430,421.84) that appears in the

[6]Although the Stipulated Settlement originally attempted to extend the term of the Ground Lease to the year 2039, both parties recognize that the Stipulated Settlement could not be considered effective beyond the year 2020 as established by Amendment II. Any attempt to extend the Ground Lease to 2039 under the Stipulated Settlement was ultra vires. This Court deems this issue settled by the actions of the parties. Therefore, the Ground Lease is enforceable only until the year 2020.

Receiver's Recommendations, to satisfy Claimant's priority government claims. Claimant contends that this $59,130.25 discrepancy between what the Receiver intended to approve and what it actually approved can be attributed to the Receiver's reliance on a scrivener's error contained in Hotel on the Cay Time-Sharing Ass'n v. Kilberg, C.A. No. 97-279-T, 2000 WL 34019282 (D.R.I. Apr. 6, 2000). According to Claimant, the Kilberg decision mistakenly identifies the date when HOTC took over management of the Resort as June 1, 1997 instead of June 1, 1998, which is the date when the Stipulated Settlement became effective and HOTC became liable for rent due under the Ground Lease. By presuming that the Kilberg decision contains this mistake, Claimant suggests that PSC/Pantheon managed the Resort through PMC until May 31, 1998 and that Claimant's claims for unpaid taxes and insurance premiums should be approved for amounts owed through that date instead of through May 31, 1997. Approval of these claims through May 31, 1998 would provide the additional $59,130.25 requested by Claimant. The Receiver, however, maintains that because it properly relied on the Court's finding in Kilberg that HOTC took over management of the property on June 1, 1997, it accurately calculated the amount of Claimant's monetary claims that it intended to approve. Thus, the sole disputed factual issue between the Receiver and Claimant in this matter is whether PSC/Pantheon managed the Resort from June

1, 1997 through May 31, 1998.

In Kilberg, Chief Judge Torres made findings of fact based upon the testimony of witnesses and exhibits presented to the Court. 2000 WL 34019282, at *1. The Court determined that "PMC managed the 'hotel' from September 1, 1994 until May 31, 1997," during which time PMC collected maintenance fees from the time-share owners. Id. at *4. The Court also found that on June 1, 1997, HOTC took over management of the time-share property and that HOTC has assessed maintenance fees against all time-share units each year since then. Id. at *6. The Receiver relied upon these findings of fact in establishing its Recommendations to this Court regarding whether to approve Claimant's monetary claims.

Claimant argues that the Stipulated Settlement and the Receiver's Recommendations confirm that the Kilberg decision's reference to June 1, 1997 as the date when HOTC took over management of the property is the result of a scrivener's error. The Stipulated Settlement and the Receiver's Recommendations both confirm that June 1, 1998 is the date when HOTC took over physical possession of the Resort and became obligated for monthly rent payments. However, neither document suggests that HOTC did not manage the property from June 1, 1997 through May 31, 1998.

In submitting its monetary claims to the Receiver as part of

the Claims Bar Date Procedure established by this Court, Claimant failed to produce any proof that PSC/Pantheon managed the Resort after May 31, 1997 or that there was a scrivener's error in the Kilberg decision. Chief Judge Torres clearly found as a fact that June 1, 1997 was the date when HOTC took over management of the property. That finding is supported by the evidence presented in that case by the former President of HOTC, Frank Mina (the tapes of that trial are available through the Clerk's Office and were reviewed by this Court). Mina testified that HOTC took over financial management of the Resort and began collecting maintenance fees as a result of the Consent Order entered by Chief Judge Torres on May 28, 1997. Claimant has offered no evidence to refute that either by pointing out contradictory evidence in the record or by affidavit of some person having knowledge of that situation. Claimant contends that a plenary trial is necessary to resolve this issue. However, any further proceedings are unnecessary because this Court provided Claimant with an opportunity to present evidence and make arguments regarding this disputed fact. Because Claimant has failed to provide any support for its allegation that PSC/Pantheon rather than HOTC managed the property from June 1, 1997 through May 31, 1998, this Court has no basis for concluding that the Kilberg decision contains a scrivener's error. Accordingly, the Receiver properly approved Claimant's claim for unpaid taxes and insurance

premiums through May 31, 1997 and disallowed those claims for the period June 1, 1997 to May 31, 1998. Thus, the Receiver correctly calculated the total amount of the undisputed claims as $430,421.84 based upon the established facts.

II. Disputed Claims

Claimant disputes the Receiver's recommendation to this Court to reject a portion of certain monetary claims. Specifically, Claimant contests the Receiver's denial of its claims for: (1) $29,993.27 for accrued additionals to tax, to which Claimant also asserts an additional claim for $980.22 for accruals from September 1994; (2) $21,614.46 for interest related to unpaid Workman's Compensation insurance premiums; and (3) $17,940.80 for interest and $265.00 for penalties related to unpaid Unemployment Compensation insurance premiums. In its Recommendations, the Receiver indicated that none of these claims met the requirements of the Receiver's Notice to Creditors. The Receiver stated that Claimant did not explain or establish any basis for the accrued additionals to tax or the interest related to unpaid Workman's Compensation insurance premiums. The Receiver also indicated that Claimant did not provide any substantiation for its claim for interest and for penalties related to unpaid unemployment insurance contributions.

Claimant argues that a plenary trial must be scheduled with regard to these disputed claims. As previously indicated,

however, Claimant was given the opportunity to present evidence to this Court in support of its disputed claims but chose not to do so. Thus, Claimant has failed to provide any basis for its disputed claims. This Court finds that the Receiver properly denied in part the claims for accrued additionals to tax, interest related to unpaid Workman's Compensation insurance premiums, and interest and penalties related to unpaid unemployment insurance contributions.

**Conclusion**

For the foregoing reasons, the objections of the Government of the Virgin Islands to the Receiver's Recommended Disposition of the Claims of that claimant are all overruled. Therefore, all of the Receiver's recommendations are adopted and approved. In summary, this Court denies Claimant's equitable claim for possession of Protestant Cay and all permanent improvements thereon, allows Claimant's monetary claims in the amount of $430,421.84 and disallows the remainder of Claimant's monetary claims.

It is so ordered.

Ronald R. Lagueux
Senior United States District Judge
June 8, 2006