**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| **Plaintiff** | ) | **Civil Case No. 00-035-L** |
| **v.** | ) | **Judge Ronald R. Lagueux** |
| **FAIRWAY CAPITAL CORPORATION** **Defendant** | ) | |

# FOURTH RECEIVER'S REPORT FOR THE PERIOD AUGUST 1, 2005 TO JULY 31, 2006

## I. INTRODUCTION

This Fourth Receiver's Report ("Fourth Report") is being filed with this Court by the United States Small Business Administration ( "SBA"), which was appointed Receiver ("Receiver") for Fairway Capital Corporation ("Fairway") pursuant to the Order of this Court dated March 13, 2000 (the "Receivership Order").[1] This Fourth Report summarizes the activities of the receivership for the period from August 1, 2005 through July 31, 2006, the background of the receivership, and its current cash position. Where significant events occurred subsequent to the period covered by this Fourth Report but before the submission of this Report to this Court, they are also reported herein.[2]

---

[1] The Order was entered by the Honorable Mary M. Lisi. By Order entered June 11, 2002, Judge Lisi recused herself from participation in this case, and it was reassigned to the Honorable Ronald R. Lagueux.

[2] The First Receiver's Report ("First Report") was filed on August 21, 2001, summarized the receivership activities for the period from March 13, 2000 through May 31, 2001, and was approved and confirmed by this Court's Order dated August 23, 2001 (Docket No. 49).
The Second Receiver's Report ("Second Report") was filed on September 13, 2002, summarized the receivership activities for the period from June 1, 2001 through July 31, 2002, and was approved and confirmed by this Court's Order dated October 8, 2002 (Docket No. 126).

# TABLE OF CONTENTS


| | | | |
|---|---|---|---|
| I. | Introduction | | page 1 |
| II. | Background | | page 3 |
| III. | Operation of the Receivership | | page 3 |
| | A. | General Operations | page 3 |
| | B. | Notice of Receivership | page 4 |
| | C. | Personnel | page 4 |
| | D. | Corporate Compliance, Accounting and Tax Matters | page 5 |
| | E. | Claims Matters | page 5 |
| IV. | Asset Accounts | | page 5 |
| | A. | Cash | page 6 |
| | B. | Non-Performing Debt Instruments | page 6 |
| | C. | Real Estate Owned | page 6 |
| | D. | Other Assets | page 6 |
| | E. | Claims Against Others | page 10 |
| V. | Legal Actions | | page 12 |
| VI. | Claims Against the Receivership Estate | | page 14 |
| VII. | Receipts and Disbursements | | page 20 |
| VIII. | Conclusion | | page 20 |
| Exhibit A | | | page 21 |


---

The Third Receiver's Report ("Third Report") was filed on November 28, 2005, summarized the receivership activities for the period from August 1, 2002 through July 31, 2005, and was approved and confirmed by this Court's Order dated December 15, 2005 (Docket No. 339).

The First, Second, and Third Reports are incorporated by reference herein, and collectively referred to as the "prior Reports".

## II. BACKGROUND

The background of this receivership has been described in detail in the prior Reports. In summary, Fairway was licensed as a Small Business Investment Company ("SBIC") by SBA on January 31, 1990, under § 301(c) of the Small Business Investment Act of 1958 (the "Act"), as amended. SBA guaranteed two subordinated debentures issued by Fairway in September 1990 and in June 1991 in the total amount of $7,500,000. These debentures required Fairway to make periodic payments.

SBA informed Fairway by letter dated May 20, 1994 that it had violated certain regulations, and SBA accelerated Fairway's entire debt. On June 1, 1994, Fairway made full payment on the Second Debenture. On November 1, 1996, Fairway agreed to pay all its outstanding indebtedness to SBA by May 1, 1997. It defaulted and continued to violate the regulations. On January 25, 2000, SBA filed a Complaint seeking its appointment as Receiver for Fairway. After a hearing before this Court, SBA was appointed Receiver for Fairway on March 13, 2000.

On January 8, 2004, this Court entered its Order (the "January 2004 Order") (Docket No. 229) which found that Fairway is the true owner of Acropolis Enterprises, Inc. ("Acropolis") and Pantheon Enterprises, Inc. (f/k/a Participation Services Corporation) ("Pantheon"), that Acropolis and Pantheon were alter egos of Fairway up to March 13, 2000, and that its exercise of jurisdiction under 15 U.S.C. §687c contained in the Receivership Order includes jurisdiction over Acropolis, Pantheon and their subsidiaries. Therefore, all provisions of the Receivership

Order apply equally to Acropolis, Pantheon and their subsidiaries. The Receiver was authorized to establish a Supplemental Claims Bar Date and procedure for claims to be filed against Acropolis, Pantheon and their subsidiaries.

## III. OPERATION OF THE RECEIVERSHIP

### A. General Operations

The overall function of the Receiver is to identify, marshal, administer, and liquidate the assets of Fairway and subsidiaries, wherever located. The Receiver has continued to collect funds due to Fairway and to otherwise administer the Receivership, in order to effectuate an orderly liquidation of Fairway, subject to the approval of this Court.

Specific actions taken by the Receiver during this reporting period to identify, marshal, administer, and liquidate the assets of Fairway are discussed in detail below. Upon completion of the liquidation of Fairway and subsidiaries, the proceeds of the liquidation will be used to satisfy the claims of creditors, including SBA, in the order of priority determined by this Court. Any excess proceeds will be distributed to the shareholders as ordered by this Court.

### B. Notice of Receivership

As previously reported, the Receiver gave written notice of its appointment in accordance with paragraph 4 of the Receivership Order. In addition, the Receiver notified all U.S. District Courts, in accordance with 28 U.S.C. §754.

### C. Personnel

The Receiver maintains all of Fairway's corporate, financial, and accounting records, and performs all accounting functions at its Receivership Office, located at 666 Eleventh Street,

N.W., Suite 200, Washington, D.C. 20001. The Receiver shares office space and administrative services with a large number of other receiverships.

During the period of this Fourth Report, pursuant to paragraph 5 of the Receivership Order, the Receiver has continued to utilize the services of professionals to assist in operating the receivership. Brian S. Stern has been retained as Principal Agent since May 2002. The duties of the Principal Agent have been described in the prior Reports. In addition to the Principal Agent, during this Fourth Reporting period the Receiver has also retained Charles P. Fulford to assist the Receiver on issues concerning Hotel on the Cay in St. Croix; The Riggs Group, P.C., CPAs (f/k/a Zarrelli & Riggs, P.C., CPAs), which maintains the books and accounting records of the Receiver; Duffy, Sweeney & Scott, Ltd., a Providence, Rhode Island law firm to assist the Receiver in various legal issues in Rhode Island; Jacobs & Brady, P.C., a St. Croix law firm, to assist the Receiver on certain issues concerning Hotel on the Cay in St. Croix; the Law Offices of Ronald Markoff, a Providence, Rhode Island law firm to assist the Receiver in title issues relating to real property in which Fairway holds an interest; and Ober, Kaler, Grimes, & Shriver, a Washington, D.C. law firm retained to assist the Receiver in various commercial issues.

**D. <u>Corporate Compliance, Accounting and Tax Matters</u>**

The Receiver has maintained Fairway's "good standing" as a Rhode Island S Corporation. Additionally, the Receiver has timely filed Fairway's U.S. and Rhode Island tax returns for all years through December 31, 2005.

**E. <u>Claims Matters</u>**

This Court's Order entered May 2, 2001 (Docket No. 45) established August 6, 2001 as

the claims bar date by which date all claims against Fairway, the Receiver, or the Fairway Receivership Estate were to be submitted to the Receiver or be forever barred. In response to the Receiver's published and mailed notices to claimants and creditors, twenty-two (22) individuals and entities filed claims. The Receiver filed its Recommended Disposition of Claims in the Court on October 20, 2004 (Docket No. 261), and this Court approved the Receiver's recommendations by its Order entered February 17, 2005 (Docket No. 284).

Objections to the Court's Order were filed by Government of the U.S. Virgin Islands (US VI) (Docket No. 316), the Trustees of the Parkos Trusts (Docket No. 294), and the Law Offices of E. Petronio (Docket 296). The Petronio objection was resolved by this Court's Amended Order entered May 18, 2005 (Docket No. 307). After hearing on July 12, 2005, this Court entered its Order on July 19, 2005, denying the Parkos objection (Docket No. 3300). This Court entered its Decision and Order on the US VI's Objections on June 9, 2006 in *USA v. Fairway Capital Corp.*, -- F. Supp.2d -- , 2006 WL 1554593 (D. RI) (Docket No. 340). The U.S. V.I. filed its Notice of Appeal to the U.S. Court of Appeals for the First Circuit on July 6, 2006 (Docket No. 341).

## IV. ASSET ACCOUNTS

Fairway's assets during this reporting period consisted of cash, equity positions in four syndicated loans and the assets acquired through foreclosures on the secured collateral for those loans, and claims against five other persons and/or entities. The current status of these accounts is described below.

**A. <u>Cash</u>**

All cash is deposited into a fully collateralized, interest bearing bank account in the name of SBA as Receiver for Fairway Capital Corporation. The Receivership began operations on March 13, 2000, with a zero cash balance. Through the date of the filing of this Fourth Report, Fairway has issued eight (8) Receiver's Certificates for and borrowed from SBA a total of $600,000. As shown on Exhibit A to this Fourth Report, the balance in the Receiver's bank account as of July 31, 2006, was $375,451.21.[3] During this Fourth Reporting Period, receipts from receivership operations totaled $15,816.88. Exhibit A to this Report is a detailed Cash Summary.

**B. <u>Non-Performing Debt Instruments</u>**

None during the period of this Fourth Report.

**C. <u>Real Estate Owned</u>**

None during the period of this Fourth Report.

**D. <u>Other Assets</u>**

1. <u>Roseland Acres Equestrian Center, Inc.</u>

The history of this asset has been detailed in the prior Reports. During the Third Reporting Period, the loan was in default. Wallace Capital Corporation ("Wallace"), another SBIC which was in receivership and was the lead lender of this participation loan, foreclosed its

[3] The eight (8) Receiver's Certificates were described in detail in Footnote 3 of the Third Report, which is incorporated by reference herein.

mortgage and security interests to liquidate this working horse farm and equestrian center located in Tiverton, Rhode Island. The public auction was held on March 29, 2004.

The Wallace Receiver also determined that Ms. Nancy White, the sole personal guarantor of the loan, did not have assets with market value nor disposable income which could be attached to satisfy the remaining balance of the debt. At the termination of the Wallace Receivership, the Wallace Receiver assigned to the Fairway Receiver its duties as the lead lender to pursue any possible collection from Ms. White. The assumption of the lead lender responsibilities by the Fairway Receiver did not add an asset with value to the Fairway Receivership.

The Fairway Receiver's further investigation during this Reporting period disclosed that the property is owned by Roseland, LLC ("LLC"), which acquired it at the auction. The records of the Rhode Island Secretary of State indicated that the principal office of LLC is in Weathersfield, Connecticut. The Secretary of State has advised the Receiver that a limited liability company is not required to identify its members. The Receiver also has discovered that Ms. White is residing at the real property and apparently is operating the LLC as an employee. The Receiver's current asset search did not disclose any indication that Ms. White has any ownership interest in LLC or that she has any assets with market value or disposable income from which to satisfy the remaining balance of the debt. The Receiver will continue to monitor the status of Ms. White.

2. <u>Country Crest Place, Cumberland, Rhode Island</u>

The history of this asset also has been detailed in the prior Reports. Fairway owns a 5.1% interest in the participation loan. The Moneta Receiver closed on the sale of the secured real

property during Fairway's second reporting period. It is continuing to resolve certain accounting issues. Any proceeds remaining after resolution of these issues will be distributed to the participants in the original loan.

3. Rocky Point Amusement Park

The history of this participation loan has been detailed in the prior Reports. Fairway owns a 5.1% participation interest. The Moneta Receiver, as lead lender, acquired title to the 124 acres of waterfront land on Warwick Neck, Rhode Island at the foreclosure sale of the mortgage July 29, 2003. In May 2004 the Moneta Receiver and Vanderbilt Capital, LLC ("Vanderbilt") agreed upon the terms of a purchase and sale agreement for Vanderbilt's purchase of the property for $25 million. The parties executed two contracts: the first for the Rocky Beach portion of the property, and the second for the remaining portion of Rocky Point. The sale is contingent upon Vanderbilt receiving all of the required permits for the development of the property. The Moneta Receivership Court approved the sale by Order dated November 10, 2004. After advertising the sale in December 2004, no counteroffers were received. Two objections to the approval of the sale were filed, both of which were described in detail in the Third Report.

Scotti & Associates ("Scotti"), a real estate brokerage firm, claimed that the Moneta Receiver should pay it a commission on the $25 million sale to Vanderbilt. The Moneta Receivership Court denied Scotti's motion, overruled its objection, and instructed it to file a claim with the Moneta Receiver, which it did. The Moneta Receiver opposed Scotti's position. After a hearing was held before the Moneta Receivership Court, the Court entered its Decision and Order dated August 3, 2006 overruling Scotti's Objection and affirming the Moneta

Receiver's decision to disallow a real estate commission to Scotti.

The Rocky Beach Association (the "Association"), consisting of the owners of the cottages located on the Rocky Beach portion of the property, objected to the sale. After a hearing, the Moneta Receivership Court overruled the objection. The Association appealed to the First Circuit Court of Appeals. During the pendency of the appeal, the parties reached a settlement agreement which, as pertinent, allowed the members to remain on the property for the summer of 2006, after which the members' structures must be removed or will be demolished.

The Moneta Receiver prospectively believes that it will realize a substantial net recovery after payment of senior liens and its costs of marketing and sales. The Fairway Receivership is entitled to its *pro rata* share of any net recovery.

4. Hotel on the Cay/Legend Resort, LP, Christiansted, St. Croix, USVI.

The background and history of this portfolio have been described in detail in the prior Reports and is summarized and restated here only to the extent required for continuity. Hotel on the Cay is a time share resort located on Protestant Cay, an island located in Christiansted Harbor, St. Croix, U.S. Virgin Islands. In 1991, Fairway made a $1.7 million loan to TSA Acquisition, Inc. and Legend Resorts, LP (collectively "Legend"), the operator of the Hotel. Fairway took a security interest in approximately 1,447 unsold timeshare unit weeks and in Legend's ground lease with the Virgin Islands Government ("US VI"). After Legend defaulted on the loan in 1993, PSC, now known as Pantheon Enterprises, Inc. ("Pantheon"), foreclosed on the unsold time share units and on the ground lease interest in 1994. Participation Management Corporation ("PMC"), ran the daily affairs of Hotel on the Cay commencing in 1994.

In 1996, the US VI filed a debt and eviction action against Legend to recover the leased property, *Government of the Virgin Islands v. Legend Resorts, L.P. v. Participation Services, Inc.*, Civil No. 612/1996, Territorial Court of the Virgin Islands, division of St. Croix (the "Legend suit"). The Hotel on the Cay Time Share Owners Association ("HOTC"), formally incorporated in April 1997 and took over the management of the Hotel on the Cay on June 1, 1997. In June 1998, the US VI and HOTC entered into a Stipulated Settlement which provides that starting June 1, 1998 the US VI recognized HOTC as the lessee and granted it a lease through December 31, 2039 for the two hotel buildings.

HOTC filed suit against PSC, PMC, Fairway, et al. in *HOTC v. Arnold Kilberg, Fairway, et al.*, C.A. No. 97-279T, US DC, D RI, (the "HOTC suit"). After a bench trial, Judge Torres on April 7, 2000 awarded HOTC judgment against Fairway totaling in excess of $1.3 million. The enforcement of the Judgment is stayed by the Fairway Receivership Order. After the inspection of the Hotel properties, the Fairway and the Moneta Receivers determined that in order to market the approximately 1,447 unsold timeshare units in which they have interests, the best course of action to follow was to enter into an agreement of cooperation with HOTC, and necessarily into a lease control agreement with the US VI. On or about June 24, 2001, the Fairway Receiver, the Moneta Receiver, and HOTC entered into an Agreement of Cooperation ("Agreement"), approved by the Moneta Receivership Court on July 13, 2001 and by the Fairway Receivership Court on July 25, 2001 (Docket No. 46).

This Court entered its Order April 9, 2002 (Docket No. 71) ordering that all assets recorded in the St. Croix, U.S. Virgin Islands land records in Pantheon's name be deemed

transferred to the Fairway Receivership Estate in the name of the Receiver. In January 2002, the representatives of the Fairway and the Moneta Receivers met with the Governor of the U. S. Virgin Islands and presented the Receivers' proposed Lease Control Agreement. Subsequent meetings were held between the Receiver's representatives and the Governor's representatives. However, to this date, there has not been any action taken by the Governor on the Lease Control Agreement.

As noted in Section III (E), *supra.*, the US VI filed its claim in response to the Notice of Claims Bar Date. In pertinent part, it seeks the immediate possession of Protestant Cay and the Hotel properties. After hearing, this Court's February 17, 2005 Order (Docket No. 284) denied the US VI's claim for possession, confirmed the validity and enforceability of the Stipulated Settlement effective June 1, 1998, and further confirmed that the HOTC Association is the rightful holder of the leasehold premises until December 15, 2020. This Court also denied the US VI's Objections by its Decision and Order served June 8, 2006. The US VI has appealed to the First Circuit Court of Appeals.

In response to the Receiver's Supplemental Claims Bar Date Notice, the US VI filed its claim against the Fairway alter ego entities. It seeks additional monetary awards for additional taxes, and reasserted its initial claim for possession of Protestant Cay and the Hotel. Its Supplemental Claim is discussed in Section VI, *infra*.

**E. <u>Claims Against Others.</u>**

The claims which are summarized below were described in detail in the Third Report, to which specific reference is made. They have not been satisfied as of the date of this Fourth

Report.

1. Against Arnold Kilberg

*In re: ARNOLD KILBERG*, Debtor, Case No. 04-10632, Chapter 7, US Bankruptcy Court, District of Rhode Island (converted from Chapter 11). On April 25, 2005, the Receiver timely filed its general unsecured proof of claim on behalf of the Fairway Receivership estate in the Chapter 7 proceeding, in the amount of $22,048,502, which embraces all claims which Fairway had at the date of filing against Arnold Kilberg and all of his owned or controlled alter-ego entities. The Bankruptcy Court has not determined the disposition of claims as of the date of preparation of this Report.

. Against Northeast Capital Corporation ("Northeast Capital")

*Norman J. Bolotow v. Northeast Capital Corporation, et al.*, Providence, RI Superior Court, P.M. No. 03-1199. The Receiver timely filed a general unsecured proof of claim in this state court receivership in the total amount of $697,199 on September 25, 2003, which includes $30,552 owed by Northeast Capital to Fairway as of December 31, 1998 for amounts booked as "Due from Affiliates and Associates." Under a common fund owed by Arnold Kilberg, Northeast Capital owes Fairway the principal amount of $697,199 which he admitted had been improperly taken from Fairway in the form of "Shareholder Loans" and other amounts booked as "Due from Affiliates and Associates", plus interest.[4] (see discussion in Third Report at Footnote 8.)

[4] The principal amount claimed, $697,199, includes amounts booked as "Shareholder Loans". The total amount claimed after the addition of pre-judgment interest thereon, will be credited with the negotiated settlement amounts received from Paul Anjoorian and from Gary, Cheryl, and Jennifer Kilberg (the "Kilberg Children"), in satisfaction of the Receiver's claims against them for recovery of an asset titled "Loans Receivable from

3. Against Rosedale Properties, LLC ("Rosedale")

*Sovereign Bank vs. Rosedale Properties, LLC,* Providence, RI Superior Court, P.M. No. 03-3750. On December 19, 2003, the Receiver timely filed its general unsecured proof of claim in the total stated amount of $697,199 under the common fund owed by Arnold Kilberg, including $38,915 directly owed by Rosedale.

4. Against Governor Financial Center, LLC ("Governor")

*Sovereign Bank vs. Governor Financial Center, LLC,* Providence, RI Superior Court, P.M. No. 03-3749. On December 19, 2003, the Receiver timely filed its general unsecured proof of claim in the total stated amount of $697,199 under the common fund owed by Arnold Kilberg, including $6,500 directly owed by Governor.

5. Against Hamlet Properties, LLC ("Hamlet Properties")

*US SBA as Receiver of Wallace Capital Corporation vs. Hamlet Properties, LLC,* Providence, RI Superior Court, P.M. No. 04-2807. On October 8, 2004, the Receiver timely filed its general unsecured proof of claim in the total stated amount of $697,199 under the Kilberg common fund, including $45,000 directly owed by Hamlet Properties.

In addition, Arnold Kilberg owes to the Fairway Receivership estate the amount which this Court ultimately determines is owed by Fairway, the Fairway Receiver, or the Fairway Receivership estate to claimants who filed claims in response to the Receiver's Bar Date and Supplemental Bar Date Notices.[5] The Court in *Paul Anjoorian v. Arnold Kilberg, et al.,* C.A.

---

Shareholders", which was reported in the Third Receiver's Reposrt.

[5] See discussion in Section III (E). Claims Matters, *supra*. The determination of the total amount of claims allowed is pending the decision by the First Circuit Court of Appeals of the claims filed by the US VI. In addition, see the discussion in Section VI, *infra.*, of the 38 claims filed in response to the Notice to All Creditors

No. 94-1125, RI Superior Court, Providence Co., concluded that Rosedale, Governor, and Hamlet Properties are entities that are part of Arnold Kilberg's common fund, and as such each is liable to the Fairway Receivership estate for all of the amounts owed to it by Arnold Kilberg, including all amounts which this Court determines are owed by the Fairway Receivership estate to Bar Date and Supplemental Bar Date Claimants.

## V. LEGAL ACTIONS

The following summarizes the litigation cases which have impacted the liquidation of one or more portfolio assets during this Fourth Reporting Period. Each case has generally been discussed in the prior Reports.

A. *Blackstone Nine, GP v. Danglares Lopes, et al.*, State of Rhode Island, Providence County Superior Court, C.A. No. 00-2786

This case was detailed in the First Report. The Receiver filed a Notice of Stay in this case in June 2000. During the Third Reporting Period, the Fairway Receiver confirmed that Fairway had received a payment from Moneta in 1996 (pre-receivership) for the sale by Fairway and purchase by Moneta of the Lopes loan. During this Fourth Reporting Period, Lopes paid off the mortgage. The payment check has been received jointly by the Fairway and Moneta Receivers. The Receivers will distribute the payment appropriately between the Receivers. This case is concluded as to the Fairway Receivership.

---

or Claimants of Acropolis, Pantheon, PMC and Their Subsidiaries, served in accordance with this Court's January 2004 Order directing the Receiver to establish a Supplemental Claims Bar Date. The Receiver reserved its right to amend its Proof of Claim filed in Northeast, Rosedale, Governor, and the Hamlet Properties, LLC receivership, *infra*. The Receiver anticipates that it will amend each Proof of Claim upon this Court's final disposition of all claims filed in response to both the Notice of the claims bar date and the Notice of the supplemental claims bar date.

B. Litigation related to Hotel on the Cay - Several lawsuits have been filed involving the Hotel on the Cay and Fairway. The most important of these were discussed in the body of the Second Receiver's Report, at Section IV (D) (3) therein.

1. *HOTC Timeshare Association, Inc. v. Arnold Kilberg, Fairway, et al.*, C.A. No. 97-279T, US DC, D RI (the "HOTC suit").

This lawsuit was discussed in detail in the Second Report and in the Receiver's Recommended Disposition of Bar Date Claims. In his Memorandum and Order entered on April 7, 2000, Judge Torres awarded HOTC Timeshare Association, Inc. ("HOTC") judgments totaling $1,312,860. Enforcement of the judgments was enjoined by the judicial stay contained in the Fairway Receivership Order. Pursuant to the terms of the Agreement of Cooperation entered June 24, 2001, by the Fairway and Moneta Receivers and HOTC (see discussion at Section IV(D)(4), *supra.*) for consideration received, HOTC assigned to the Moneta Receiver all of its rights in the civil action and in the Judgment.

2. *Government of the Virgin Islands v. Legend Resorts, L.P. v. Participation Services, Inc.,* Civil No. 612/1996, Territorial Court of the Virgin Islands, St. Croix Division (the "Legend suit")

The Government of the Virgin Islands ("US VI") seeks (1) payment of approximately $1.45 million for unpaid rent, taxes, workman's compensation insurance premiums, and other related penalties and costs; and (2) the immediate possession of Protestant Cay, including the Hotel property. The case was stayed, which remains in effect, and this Court has retained jurisdiction of the US VI's equitable and monetary claims.

3. *Belisle, et al. v. N.E.B., Inc., Legends Resort, L.P., et al.,* Civil No. 587/1996, Territorial Court of the Virgin Islands, St. Croix Division

The Belisle Group of timeshare owners sued N.E.B., Inc. (the general partner of Legend), Legend, and PSC, in an action for conversion, breach of contract and declaratory judgment. Fairway was added as a defendant in an amended complaint. The Receiver filed its Notice of Appointment and Stay in April 2000. The Belisle Group filed a claim in response to the Claims Bar Date Notice which was denied by this Court. This matter is concluded.

4. *Pantheon Enterprises, Inc. v. Hotel on the Cay Timesharing Association, Inc., et al.,* Civil No. 553/1998, Territorial Court of the Virgin Islands, St. Croix Division

This is an action for debt and foreclosure of mortgage. The Court granted defendants' motion to dismiss the Complaint. Pantheon's appeal is pending. The Receiver filed its Notice of Appointment and Stay in April 2000.

Pantheon filed a third action, *Pantheon Enterprises, Inc. v. Hotel on the Cay Timesharing Association, Inc., et al.,* Civil No. 259/1999, an action for intentional interference with contractual relations and for damages against HOTC and its officers and directors. The Receiver filed its Notice of Appointment and Stay in April 2000.

C. Litigation related to Rocky Point Amusement Park - There is no current litigation involving Rocky Point Amusement Park.

## VI. CLAIMS AGAINST THE RECEIVERSHIP ESTATE

This Court's January 2004 Order, *inter alia,* authorized the Receiver to establish a Supplemental Claims Bar Date and procedure for creditors and claimants to file claims against Acropolis, Pantheon and their subsidiaries. March 1, 2005 was established as the Supplemental

Claims Bar Date. In response to the mailed and published Notices, the Receiver has received a total of 38 supplemental claims from 34 claimants through the date of this Fourth Report to the Court. The following is a summary of the 38 supplemental claims.

1. SBA as Receiver for Moneta Capital Corporation ("Moneta") vs. Acropolis; $1,657,128.18; contingent claims against Arnold Kilberg ("Kilberg"), as an alter ego of Acropolis.

2. SBA as Receiver for Moneta vs. Pantheon; $1,657,128.18; contingent claims against Kilberg, as an alter ego of Pantheon.

3. U.S. Small Business Administration ("SBA") as assignee of the assets and claims of the Wallace Capital Corporation ("Wallace") receivership estate at its termination; $1,583,263 total; funds allegedly improperly taken by Kilberg or Kilberg controlled entities, from participation loan assets of Wallace, including: (a) secured and/or priority claims totaling $1,159,722 consisting of Wallace's *pro-rata* share of funds due from the American Shipyard Loan, the Chateau Enterprises and Valley Enterprises Loan, the Mary's Motor Lodge Loan, the Taunton Coin Loan, the Corliss Landing/Marsh Landings Associates Loan, and the sale of collateral securing the Rocky Point loan; and (b) unsecured and/or non-priority claims totaling $423,491 consisting of $400,000 principal investment in Legend Resorts Loan, $23,491 fees paid by Wallace to Arnold Kilberg & Co. for accounting services which proved to be of no value.

4. Verdolino & Lowey, P.C. ("V&L") as accountants to the Chapter 7 Trustee for the bankruptcy estate of Arnold Kilberg, V&L seeks reimbursement of approximately $166,402.36 in fees and expenses from Acropolis as an alter ego of Kilberg.

5. Holland & Knight LLP ("H&K") were counsel to the Chapter 7 Trustee. H&K seeks reimbursement from Acropolis as an alter ego of Kilberg of approximately $436,476.22 in fees and expenses.

6. Robert Miller ("Miller"); $100,000 total; $50,000 subparticipation purchased from Joan F. Kilberg in Fairway loan to J.T. Properties, Inc., which Miller alleges was transferred to Northeast Capital, an alter ego of Acropolis; and $50,000 participation in a loan from Joan F. Kilberg to the Trustees of the E. Walsh Trust.

7. Richard Lubin ("Lubin"); $100,000 total; same claims as filed by Miller, above.

8. L&M Cars, Inc. ("L&M"); $100,000 plus interest; claimant alleges that it made a loan to Northeast Capital, an alter ego to Acropolis.

9. Joan F. Kilberg ("Kilberg"); $1,013,220 total; $150,000 participation interest in loan to Rocky Point Amusements, Inc.; $150,000 subparticipation interest in Rocky Point loan purchased from John Holmes, Jr.; $12,000 subparticipation interest in Rocky Point loan purchased from Harold Schein; and $701,220 accrued interest.

10. Timesharing Associates, Ltd. ("TSA"); $372,697.08 principal plus interest in the amount of $350,320.35 as of May 1, 1997, a total of $723,017.43; TSA recorded a Security Agreement and Mortgage in September 1992, and recorded a Notice of Judgment Lien on August 13, 1993 in the St. Croix Recorder of Deeds office on numerous timeshare unit weeks in the Hotel on the Cay, Legend Resorts mortgaged the Hotel to Fairway and Participation Services Corporation ("PSC") which sought to foreclose their mortgage. TSA argues that its liens were senior to the Fairway/PSC mortgage, and alleges that it entered into an agreement with Fairway/PSC which provided that in exchange for TSA releasing its priority liens and allowing Fairway/PSC to proceed with the foreclosure, Fairway/PSC would pay TSA 14.3% of the proceeds from the sales of unit weeks in the Hotel. In reliance on Fairway/PSC's representations, TSA released its liens which enabled Fairway/PSA to foreclose and assume operation of the Hotel. TSA claims Fairway/PSC has sold unit weeks but has not delivered any portion of the proceeds to TSA.

11. Elizabeth Wuillermin; $30,000; alleged lost value of time share in Aruba that Acropolis, Pantheon, PMC, or subsidiaries service and/or manage.

12. Government of the U.S. Virgin Islands ("US VI"); (1) $182,354.26 for unemployment insurance trust fund owed by PMC; (2) $541,172.77 for unemployment insurance trust fund owed by Pantheon Enterprises Inc.; and (3) the US VI reasserts its prior claim for "any portion of that claim not satisfied by Fairway", including its equitable claim for immediate possession of Protestant Cay.

13. Law Offices of Everett A. Petronio, Inc. ("Petronio"); dollar amount not specified; for legal services rendered to Arnold Kilberg and alter ego entities.

14. Nancy Troy Lovett ("Lovett"), Nancy Troy Lovett Self-Directed Individual Retirement Account ("Lovett SDIRA"), and Raul L. Lovett Marital Trust ("Lovett Trust") (all jointly referred to as the "Lovetts"); $661,272 total: (1) for conversion by Acropolis of $94,151 payable to the Lovetts for their participation interest in American Shipyard Corp.; and (2) an open-end mortgage and note in the principal amount of $234,000 plus interest thereon totaling $252,720 owed to Lovett SDIRA by Acropolis as an alter ego of Northeast Capital; and (3) Acropolis owes Lovett interest totaling $80,401 on another open-end mortgage and note.

15. Gregory T. Parkos, Trustee of The Gregory T. Parkos Revocable Trust – 1994 ("Gregory Trust"), and Joan M. Parkos Moran, Trustee of the Joan M. Parkos Revocable Trust – 1994 ("Joan Trust") both as assignees of The Parkos Family 1986 Trust ("Family Trust"); $428,581.27 total: (1) $120,000 as its unpaid share of the proceeds from the auction sale of the Rocky Point equipment, in which it has a $400,000 participation; (2) the Family Trust participation totaled 12.8% in the American Shipyard Loan ("ASC") based on which it claims (a) $206,021.35, for $112,809.25 of capitalized interest when the Loan was reorganized in bankruptcy, and $57,049 as its share of the principal payment of $245,000 made within five days of the confirmation of the bankruptcy plan, and $36,163.10 in interest payments which it alleges were received by Pantheon or Acropolis from January 1, 1999 through March 13, 2000; and (b) $102,559.92 for interest payments after March 13, 2000.

16. Joanne & Jack Mascola ("Mascolas"); $1,725; the Mascolas seek recovery of their payment of $975 to PSC for a special assessment on their Hotel on the Cay timeshares and $750 paid as a retainer to the attorney who represented the HOTC Timesharing Association in defense of Pantheon's suit.

17. Ronald Carmark, CPA, MBA ("Carmark"); $26,641.50; Carmark purchased all accounts receivable of the Arnold Kilberg & Company ("AK&Co.") accounting practice from the Kilberg Bankruptcy estate. The claim consists of an account receivable in the amount of $26,641.50 for accounting services provided by AK&Co. to Acropolis from December 1, 2001 through January 31, 2004.

18. Ronald Carmark, CPA, MBA ("Carmark Assignee"); $5,864.80; for an account receivable for accounting services provided by AK&Co. to Fairway from June 1, 1999 through August 31, 2003.

19. Ronald Carmark, CPA, MBA ("Carmark CPA"); $41,630.53 total; $12,305.36 for wages, $13,868.03 for pension plan contributions, back earned vacation wages of $9,844.82, and unreimbursed business expenses $1,483.54, all earned and accrued while an employee of AK&Co., an alter ego of Acropolis.

20. Alicia A. Sasso ("Sasso"); $1,269.22; for wages earned while an employee of AK&Co., an alter ego of Acropolis.

21. Carol Ann Izzard ("Izzard"); $5,248.10 total; for wages $1,615.38, pension plan contributions of $3,168.24, unreimbursed business expenses of $464.48, all earned and accrued while an employee of AK&Co., an alter ego of Acropolis.

22. Dennis J. Maxwell, CPA ("Maxwell"); $8,111.18; wages earned while an employee of AK&Co., $4,000, earned and unpaid vacation days totaling $2,200, unreimbursed out-of-pocket expenses totaling $1,933.18.

23. Isherwood & Isherwood, P.C. ("Isherwood"); $8,758.22; unpaid invoices for legal services rendered to PSC.

24. Hotel on the Cay Timeshare Association, Inc. ("HOTC"); $2,565,372.10, Judgment awarded in *HOTC v. Kilberg, Fairway, et al., supra.*, $1,312,860.20, and accrued interest thereon at 10% per annum, $1,252,511.90.

25. Legend Resorts, LP, Estate of Joan Cerilli, Benedetto A. Cerilli, Jr., Estate of Joseph Cerilli.; no amount specified; claimant attached its prior claim.

26. Metacom Medical Associates, Inc. 401k Plan ("Metacom"); claim for repayment of $54,000 invested with Fairway in August 1992, which claimant believes were invested in Rocky Point.

27. John P. Gyorgy, Noel & Gyorgy LLP ("Gyorgy"); $3,290.39; unpaid invoices for legal services rendered to Acropolis between June 2000 and September 2001.

28. Joseph Longo ("Longo"); $115,199.39; IRS assessed Longo penalties totaling $86,430.67 plus interest of $28,352.84 for nonpayment of Federal employee withholding taxes (Form 941) by PMC.

29. The Narragansett Bay Commission ("NBC"); $4,737.87; for sewer use fees at five real properties located in Providence, RI.

30. PHH Mortgage ("PHH"); $351,575.93 as of February 9, 2005 total balance outstanding on Note secured by first Mortgage on real estate owned by Joan and Arnold Kilberg located at 3554 Pine Lake Court, Delray Beach, FL 22445.

31. Deutsche Bank National Trust Company ("Deutsche Bank"); $592,332.68 as of February 9, 2005, total balance of outstanding on Note secured by first Mortgage on real estate owned by Joan and Arnold Kilberg located at 642 Blackstone Blvd., Providence, RI 02906.

32. Henry Vara, Francis DiMento, Rita DiMento and James Callahan ("Vara et al."); claimants are 49% minority owners of C.R. Amusements, LLC, and are Appellants in *Callahan et al. v. Moneta Capital Corporation*, Case No. 04-1950, 1st Cir.; claimants request that any hearing to be scheduled on the Receiver's Objection to its Proof of Claim herein be stayed until the Circuit Court issues its decision on claimants' Appeal.

33. JoAnn Palmieri ("Palmieri"); $440,000 (current value of home) or discharge of mortgage on residence given to Fairway as security for its loan to Chateau Enterprises, which was assigned to PSC and then to Acropolis. The Receiver confirmed that the loan had been repaid and recorded the Discharge of the mortgage during this Fourth Reporting Period. The Receiver notified the claimant.

34. Susan E. Bergeron ("Bergeron"); amount unspecified; claim against Acropolis as an alter ego of Arnold Kilberg for payment to claimant of the pension/profit sharing plan owed to Bergeron's late husband, Alfred A. Bergeron Jr., CPA, employed by AK&Co.

35. Ruth Haber Shonbrun ("R. Shonbrun"); $194,850 total; $60,000 participation interest in Rocky Point Loan plus $134,850 interest thereon.

36. Estate of Arthur Shonbrun ("Shonbrun Estate"); $259,800 total; $80,000 participation interest in Rocky Point Loan plus $179,800 interest thereon.

37. Metacom Medical Associates, Inc. 401k Plan ("Metacom"); $90,000 participation interest in Rocky Point purchased from PSC dated September 26, 1994.

38. Paul J. Agatiello, MD ("Agatiello"); $100,000 participation interest in Rocky Point purchased from PSC dated September 26, 1994

The Receiver will file with this Court and serve on each claimant the Receiver's Notice and Determination of Claims Received in Response to the Supplemental Claims Bar Date. That Notice will contain the Receiver's recommendation for the disposition of each claim, and its recommendation for a summary procedure by which this Court will be able to expeditiously resolve any disputes by any claimant arising from the Receiver's recommended disposition of its claim.

## VII. RECEIPTS AND DISBURSEMENTS

The Schedule attached as Exhibit A to this Report sets forth Cash Receipts and Disbursements for the current reporting period, August 1, 2005 to July 31, 2006, and from the inception of the receivership through the current period, March 13, 2000 to July 31, 2006.

## VIII. CONCLUSION

This Fourth Receiver's Report was prepared by Brian S. Stern, Principal Agent for the Receiver, with accounting information provided by The Riggs Group, PC, CPAs.

Respectfully submitted,
U.S. SMALL BUSINESS ADMINISTRATION,
AS RECEIVER FOR FAIRWAY CAPITAL CORPORATION

Dated: October 10, 2006

*/s/ Brian S. Stern*

Brian S. Stern, Principal Agent for Receiver
666 Eleventh St., N.W. - Suite 200
Washington, DC 20001
Tel: (202) 272-3604
FAX: (202) 504-2247

# EXHIBIT A

## SUMMARY OF CASH RECEIPTS
## AND DISBURSEMENTS

**AUGUST 1, 2005 - JULY 31, 2006**

**and**

**MARCH 13, 2000 – JULY 31, 2006**

SBA, Receiver for FAIRWAY CAPITAL CORPORATION

The schedule below sets forth receipts and disbursements for the periods from 08-01-05 to 7-31-06 and 03-13-00 through 7-31-06, respectively

| | 08/01/2005 to 7/31/2006 | 03/13/2000 to 7/31/2006 |
|---|---|---|
| 1. Total Cash on Hand at the Beginning of Period | $ 533,470.02 | $ 0.00 |
| 2. Receivership Operations | | |
| A. Receipts from Receivership Operations: | | |
| Payment on Loans: | | |
| American Shipyard Corporation | | 760,220.32 |
| ProRata RE: Participation/Inn at Cape Cod | | 164,547.85 |
| A&R Trucking | | 14,418.44 |
| Sale of Assets: | | |
| 390 Newport Avenue | | 140,491.28 |
| Roseland Properties | | 138,389.80 |
| Other: | | |
| Anjourian Settlement | | 279,589.33 |
| Shareholders Settlement (Kilberg) | | 274,432.00 |
| Interest Earned from Cash Accounts | 15,816.88 | 29,742.19 |
| Wyndell O. Banks (Settlement) | | 5,447.35 |
| Stephen Gordon(settlement){via U.S.Treasury} | | 1,600.00 |
| Arnold Kilberg/Miscellaneous Credit (Court Fines) | | 100.00 |
| Sovereign Bank (Close of Account) | | 7.53 |
| Total Receipts from Receivership Operations | $ 15,816.88 | $ 1,808,986.09 |
| B. Disbursements from Receivership Operations: | | |
| Legal/Agent Fees | 112,720.74 | 722,172.02 |
| Accounting/Bookkeeping Fees | 31,297.17 | 234,792.99 |
| Rent/Overhead Allocation | 20,822.92 | 140,024.54 |
| Administrative Services | 3,651.42 | 77,673.52 |
| Appraisal/Inspection Fees | 750.00 | 19,110.00 |
| Investigative/Research/Asset Searches | 489.00 | 17,556.67 |
| Travel | 535.11 | 14,040.77 |
| Advertising (Including Bar Date Notice) | | 8,894.64 |
| Real Estate/Municipality Taxes | | 8,891.65 |
| Delivery Services | 131.50 | 6,374.74 |
| Property Insurance | | 5,422.51 |
| Engineering Services | | 5,127.63 |
| Photocopy Fees | | 4,569.38 |
| Deposit For Receivership Office Space | | 4,000.00 |
| Bank Charges/Trustee Fee | 822.16 | 3,751.52 |
| Utilities on REO | | 3,693.10 |
| Corporate Taxes | 500.00 | 2,300.00 |
| Property Management Fees | | 2,250.00 |
| Water/Sewer on REO | | 2,247.12 |
| Corporate Compliance | 160.30 | 1,248.18 |
| Rocord Storage | 947.71 | 1,232.21 |
| Telephone Expenses | | 966.09 |
| Pro-rata Share of Receivership Expansion | 907.66 | 907.66 |
| Hardware/Software: Puchase and Maintenance | | 613.50 |
| Repair/Maintenance on REO | | 519.17 |
| Miscellaneous Expenses | | 471.95 |
| Filing Fees | 100.00 | 250.00 |
| Furniture & Equipment | | 100.00 |
| Service of Process | | 81.00 |
| Total Disbursements from Receivership Operations | $ 173,835.69 | $ 1,289,282.56 |
| Net Cash Gain/(Loss) from Receivership Operations | $ (158,018.81) | $ 519,703.53 |
| 3. Distributions: | | |
| Total to Participants RE: ASCLN | $ | $ 744,252.32 |
| 4. Borrowings for Receivership Operations | | |
| Receiver Certificates Obtained from SBA | $ | $ 600,000.00 |
| Receiver Certificates (Paid) to SBA | | |
| 5. Total Cash on Hand for Period Ended July 31, 2006 | $ 375,451.21 | $ 375,451.21 |