# United States Court of Appeals
## For the First Circuit

---

No. 06-2023

UNITED STATES OF AMERICA,
Plaintiff, Appellee,

v.

FAIRWAY CAPITAL CORPORATION,
Defendant,

---

GOVERNMENT OF THE VIRGIN ISLANDS,
Claimant, Appellant,

THE LAW OFFICES OF HOLLAND & KNIGHT, LLP,
as Counsel to Joseph M. DiOrio, Trustee for Arnold Kilberg;
HENRY D. VARA; FRANCIS DIMENTO; JAMES C. CALLAHAN,
Claimants.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND
[Hon. Ronald R. Lagueux, U.S. District Judge]

---

Before

Torruella, Circuit Judge,
Stahl, Senior Circuit Judge,
and Howard, Circuit Judge.

---

John J. Jacko, III, with whom H. Marc Tepper and Buchanan Ingersoll & Rooney PC were on brief, for claimant-appellant.

Thomas W. Rigby, Chief Counsel for SBIC Liquidation, Office of General Counsel, U.S. Small Business Administration, with whom Stacey P. Nakasian and Duffy Sweeney & Scott, LTD. were on brief, for appellee.

---

April 11, 2007

---

**TORRUELLA**, **Circuit Judge**. This is a case involving a claim for possession of property and a monetary claim that the Government of the Virgin Islands ("GVI") made against the Small Business Administration ("SBA") receivership estate for Fairway Capital Corporation. The SBA Receiver recommended that GVI's possessory claim be denied, and that its monetary claim be granted in part. GVI filed an objection, but the district court affirmed the Receiver's Report and Recommendation. GVI now appeals the court's disposition of its claims before the Receiver. After careful consideration, we affirm.

## I. Factual Background

### A. Before the Receivership Proceedings

Protestant Cay is an island in the Virgin Islands. In 1964, the Virgin Islands legislature approved Act 1179, which authorized GVI to negotiate a fifty-year lease for Protestant Cay. The same year, GVI leased the land on Protestant Cay to Hotel-On-The-Cay, Inc. for fifty years (the "Ground Lease"). In exchange for the lease, Hotel-On-The-Cay, Inc. agreed to pay rent to GVI, to construct a hotel, and to pay GVI a portion of the profits from the hotel.

In 1969, GVI and Hotel-On-The-Cay, Inc. executed Amendment No. 1 to the Ground Lease to protect the rights of lenders who might hold a mortgage over the leasehold interest. No legislative approval was sought for the amendment.

Hotel-On-The-Cay, Inc. assigned its interest in the Ground Lease to Oliver Plunkett ("Plunkett"). In 1980, Plunkett filed a declaration in the Virgin Islands stating his intention to create 2,900 weekly timeshare units to be known as "Hotel On The Cay Resort" (the "Resort"). Plunkett had a fair bit of success, selling 1,500 of the units. However, by 1982, 1,400 units remained unsold, forcing Plunkett to declare bankruptcy. In 1986, the trustee in Plunkett's bankruptcy conveyed Plunkett's interest in the Ground Lease to Harborfront Properties, Inc. ("Harborfront") and Plunkett's interest in the unsold timeshare units to Protestant Cay, Ltd. ("PCL").

In 1990, Legend Resorts L.P. ("Legend") and TSA Acquisition, Inc. ("TSA") agreed to acquire the unsold timeshare units from PCL. In order to finance the acquisition, Legend and TSA borrowed $1.7 million (the "Legend Loan") from Fairway Capital Corp. ("Fairway"), a Small Business Investment Company as defined in 15 U.S.C. § 681. The Legend Loan was secured by a mortgage on the unsold timeshare units; Fairway was also made a 20% limited partner in Legend. In addition, Harborfront gave Fairway a mortgage on Harborfront's interest in the Ground Lease; Harborfront later assigned the Ground Lease to Fairway in 1991. Thus, as of 1991, Fairway held (a) a mortgage interest in the unsold timeshare units, (b) a mortgage interest in the Ground Lease, and (c) a 20% limited partnership interest in Legend. The same year, GVI and

Legend entered into Amendment No. 2 to the Ground Lease, which provided in part that the lease would be subject to cancellation by the lessor if the lessee was in arrears for sixty days after notice of default. As with Amendment No. 1, this amendment was not separately approved by the legislature.

In order to service the Legend Loan, Fairway formed a subsidiary named Participation Services Corporation ("PSC") in 1994. Fairway assigned its interest in the Legend Loan to PSC the same year. Legend defaulted on the Legend Loan, and PSC foreclosed on the mortgages, naming Legend, TSA, Harborfront, and GVI in the foreclosure action. A stipulated judgment of foreclosure was entered on June 7, 1996. Thus, as of that date, PSC became the owner of (a) the leasehold interest in the Ground Lease and (b) the unsold timeshare units.

GVI then sent notice to Legend and Fairway that Legend was in arrears and that GVI would terminate the Ground Lease. Sixty days later, GVI filed an eviction action against Legend and Fairway in the Territorial Court of the Virgin Islands (the "eviction action"). Neither Legend nor Fairway appeared, and the Territorial Court entered a default judgment on September 18, 1997. On December 31, 1997, PSC filed a motion to intervene and to set aside the default judgment in the eviction action. At the same time, a similar motion was filed by Hotel On the Cay Timeshare

Association, Inc. ("HOTC"), an entity incorporated by the owners of the sold timeshare units. Both motions were granted.

On May 22, 1998, GVI and HOTC entered into a settlement agreement, which the parties refer to as the "Stipulated Settlement." The Stipulated Settlement provided that in exchange for HOTC withdrawing its intervention in the eviction action, GVI would recognize HOTC as the lessee of the timeshare resort, including the unsold timeshare units. In addition, the Stipulated Settlement stated that HOTC would not be deemed a successor to Legend or Fairway. Finally, the parties agreed in the Stipulated Settlement that in the event that Legend and Fairway prevailed in the eviction action and their lease of the resort was reinstated, GVI would give credit to Legend and Fairway for all of HOTC's rent payments. After concluding the Stipulated Settlement with HOTC, GVI continued to prosecute its eviction action against Legend and Fairway in the Territorial Court, filing a motion for summary judgment on December 22, 1999.

On January 19, 2000, the SBA filed a complaint against Fairway in the United States District Court for the District of Rhode Island. The SBA's complaint asked that Fairway be placed in receivership because of Fairway's breach of various SBA regulations and its failure to pay amounts owed to the SBA. On March 13, 2000, the district court entered an order placing Fairway in receivership and imposing a stay on all litigation involving Fairway, including

GVI's eviction action. At this time, the Territorial Court had not yet ruled on GVI's motion for summary judgment in the eviction action. Thus, as of March 13, 2000, PSC continued to hold an interest in the Ground Lease and the unsold timeshare units subject to the outcome of the stayed eviction proceedings. In March 2002, the district court ordered these interests transferred to the Fairway receivership estate.[1]

**B. The Receivership Proceedings**

GVI filed two claims with the SBA Receiver: an equitable claim asking for immediate possession of the unsold timeshare units and a monetary claim asking for $1,450,760 for unpaid rent, taxes, unemployment insurance contributions, and associated costs, interest, and penalties. The Receiver recommended denying the equitable claim and granting the monetary claim to the extent of $430,421.84. The Receiver found that the remainder of GVI's monetary claim was either not supported by evidence that met requirements set forth in the "Notice to Creditors," or that the claim covered time during which neither Fairway nor Legend were in possession of the resort.

---

[1] PSC and its successor Pantheon were found to be instruments and alter egos of Fairway. See Hotel on the Cay Time-Sharing Ass'n, Inc. v. Kilberg, 2000 WL 34019282 at *10 (D.R.I. Apr. 6, 2000). As such, assets owned by PSC and Pantheon were deemed to be assets of Fairway.

At a preliminary hearing on the Receiver's Report, held on February 16, 2005, the district court stated the procedure for making objections:

> Any objectors should file their materials within 30 days as the order provides. The Receiver will have 30 days to respond. And then when I have that material, I will make a determination of whether I can decide those matters on the papers or whether a bench trial is necessary. And I will reserve decision on that until I see those papers.

After GVI stated that it would raise the issue of abstention, the court responded:

> I think [GVI] should put forth all of its contentions in the objection, and then [the Receiver will] respond to it, and then I'll decide whether I'm going to have a hearing separately on that question of abstention or not.

GVI filed an objection to the Receiver's Report and Recommendation, suggesting that the court abstain from deciding whether GVI was in actual possession of the unsold timeshare units, and in the alternative, arguing that GVI was in actual possession of the unsold timeshare units, and thus would be entitled to judgment on its equitable claim. GVI's objection also stated that it was entitled to an additional $120,000 on its monetary claim, of which it identified approximately $59,000 as being undisputed.

At a hearing on the objection on July 12, 2005, the court asked GVI if it wanted to "present any evidence, any testimonial evidence." GVI responded, "Not in addition to what's already been

submitted, your Honor, that's correct." GVI then proceeded to state that only its monetary claim was properly before the court because the district court lacked jurisdiction over its equitable claim for possession of the unsold timeshare units. The court responded, "I thought everything was before the court. I have jurisdiction over the whole works." GVI then argued that the court lacked jurisdiction because the court had jurisdiction only over assets possessed by Fairway, and that Fairway did not possess the Resort. The court responded, "That's a question I will have to decide, not the Territorial Court of the Virgin Islands. I have exclusive jurisdiction of this matter. I've already ruled that. I denied the lifting of the stay." The court then explained:

> I have taken exclusive jurisdiction of this matter and any property that the Receiver claims that belongs to Fairway. And you want to contest that? Fine. That's what I'm here to hear. . . . I will make a decision as to whether the receiver owns those 1400 units of timeshares, not the Territorial Court of the Virgin Islands. . . . Now, if you say its not before me today, then we'll put it before me at some later time, but I considered it before me today. I considered that I would hear arguments on those issues, all those issues today. And I'm prepared to take it under advisement and write a written opinion about this Court's jurisdiction, the question of abstention, the question of title, the question of forfeiture of the ground lease, the power of the governor to enter into a settlement stipulation which transferred title to the tenants association, all the issues in this case. I'm prepared to decide them all.

After a brief colloquy, GVI responded:

> [T]o the extent that you believe jurisdiction exists over a possession issue and claim, it's our understanding that we would have the opportunity to participate in a plenary hearing on that issue.

The court answered, "I thought it was before me now. The Receiver denied your equitable claim. So that matter is before me unless you're waiving it."

Both GVI and the Receiver proceeded to make their arguments regarding jurisdiction, abstention, and the substantive question of whether or not GVI was in possession of the unsold timeshare units. After both parties made their arguments, GVI stated, "The issue of whether there exists a timeshare interest that the receiver has title to is clearly one that's entitled to a plenary hearing, whether it's something that is effectively resolved in the territorial court or here." The court asked, "What do you mean by that, plenary hearing?" GVI answered:

> Well, [the Receiver] take[s] the position that they actually have title in this mortgage leasehold interest, which we say doesn't exist anymore. So clearly there's a conflict there. To the extent that they claim this title exists, that's an issue that would have to be fully litigated.

The court responded:

> I gave you an opportunity to litigate it here today. You were advised that if you had any evidence to present on any of these issues, you present it today.

GVI then stated:

> My understanding, and this was going to the last point, so maybe I misunderstood you earlier. In an earlier proceeding before your Honor, you indicated that there would be a full and fair opportunity to address the concerns of [GVI], you know, to the extent that evidence needs to be presented at a full hearing, and I was articulating earlier that [there are] logistical difficult[ies in bringing witnesses.] . . . I was under the impression that once you determined whether there was jurisdiction here, which you said you were going to make that determination, that we would be given the opportunity to have that hearing at another time.

The court responded, "Well, your impression is wrong. I set aside two days to take testimony here starting today and tomorrow. . . . My order from the bench was clear that when I was going to hear this matter, I would hear any evidence you had to present on any of these issues." GVI then conceded that, "what we're talking about here and now, your Honor, are issues of law . . . . [A]ll of the issues that are before your Honor in any event really are issues of law that are based upon the record that is before you, that are contained in our briefs." The court then stated, "You had an opportunity to present any evidence you wanted to present today. You didn't choose to do so. So I'm taking this case under advisement."

On June 8, 2006, the court issued a written decision affirming its jurisdiction over the unsold timeshare units and rejecting GVI's arguments for abstention, its equitable claim for possession, and its request for a higher monetary claim. The court

then affirmed and accepted the Receiver's Report and Recommendation with respect to GVI's claims. GVI now appeals.

## II. Discussion

GVI makes four claims. First, GVI argues that the district court should have abstained from deciding whether GVI was entitled to possession of the unsold timeshare units. Second, GVI suggests that the district court did not give it sufficient opportunity to present evidence in favor of its claims. Third, GVI argues that the district court wrongly concluded that it was not entitled to possession of the unsold timeshare units. Fourth, GVI contends that the district court erroneously resolved its monetary claim. We take each claim in turn.

### A. Abstention

GVI argues that the Territorial Court was in a better position than the district court to hear its equitable claims for possession and that the district court should have abstained from hearing the case. GVI argues that two theories of abstention support this argument: the doctrine of abstention discussed in Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976), and the doctrine of abstention referenced in Odell v. H. Batterman Co., 223 F. 292 (2d Cir. 1915).[2]

[2] GVI also proposes a third theory of abstention based on the holding in Princess Lida of Thurn and Taxis v. Thompson, 305 U.S. 456 (1939). Princess Lida held that "if the two suits are in rem, or quasi in rem, so that the court, or its officer, has possession or must have control of the property which is the subject of the

**1. Colorado River Abstention**

In Colorado River, the Supreme Court held that in certain circumstances, a court may abstain from hearing a case "due to the presence of a concurrent state proceeding for reasons of wise judicial administration." 424 U.S. at 818. We have emphasized that these circumstances are quite limited, and that there is a "heavy presumption favoring the exercise of jurisdiction." Villa Marina Yacht Sales, Inc. v. Hatteras Yachts, 915 F.2d 7, 13 (1st Cir. 1990). We consider eight factors in determining whether such limited circumstances exist:

> (1) whether either court has assumed jurisdiction over a res; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether state or federal law controls; (6) the adequacy of the state forum to protect the parties' interests; (7) the vexatious or contrived nature of the federal claim; and (8) respect for the principles underlying removal jurisdiction.

KPS & Assocs. v. Designs by FMC, Inc., 318 F.3d 1, 10 (1st Cir. 2003). These factors are not "exhaustive, nor is any one factor necessarily determinative." Id. Where a district court has

---

litigation in order to proceed with the cause and grant the relief sought the jurisdiction of the one court must yield to that of the other." 305 U.S. at 466. We have treated the issue of a state court's in rem or quasi in rem jurisdiction as the first factor to be considered in the Colorado River abstention analysis, and as such, it is unnecessary to address abstention under Princess Lida separately. See Bergeron v. Estate of Loeb, 777 F.2d 792, 799 (1st Cir. 1985) (discussing application of Princess Lida doctrine in Colorado River context).

declined to exercise its discretion to abstain from hearing a case under Colorado River doctrine, we review for abuse of discretion. Río Grande Cmty. Health Ctr., Inc. v. Rullán, 397 F.3d 56, 68 (1st Cir. 2005).

As to the first factor, the district court found that in the eviction action, the Territorial Court did not exercise in rem (or quasi in rem) jurisdiction over the unsold timeshare units. We disagree. A quasi in rem action requires that "the court or its officer have possession or control of the property which is the subject of the suit in order to proceed with the cause and to grant the relief sought." Penn Gen. Cas. Co. v. Pennsylvania, 294 U.S. 189, 195 (1935). Here, the Territorial Court must have jurisdiction over the resort (including the unsold timeshare units) in order to adjudicate GVI's possessory claim. As such, it is only the parties' interests in the resort that serve as the basis of the Territorial Court's jurisdiction. See Virgin Islands v. Legend Resorts, L.P., 39 V.I. 12, 14 (V.I. Terr. Ct. 1998) (noting that the subject of GVI's eviction action was "an interest related to the leasehold"); Schindel v. Pelican Beach Inc., 16 V.I. 237, 250 (V.I. Terr. Ct. 1979) (describing a quasi in rem action as one that "ha[s] the effect of adjudicating the parties' 'rights to property'"); see also State Eng'r v. S. Fork Band of the Te-Moak Tribe of W. Shoshone Indians of Nev., 339 F.3d 804, 811 (9th Cir. 2003) ("But 'it is the [parties'] interest[s] in the property that

serve[] as the basis of the jurisdiction.' Therefore, the action is quasi in rem." (quoting Black's Law Dictionary 1245 (6th ed. 1990)). Because GVI brought the eviction action to adjudicate GVI's rights to the unsold timeshare units, i.e., whether it was entitled to possession, the Territorial Court had "jurisdiction over a res." KPS & Assocs., 318 F.3d at 10.

Nevertheless, a state court's quasi in rem jurisdiction does not make abstention mandatory. See Bergeron v. Estate of Loeb, 777 F.2d 792, 798 (1st Cir. 1985) ("Considering the Colorado River factors in turn, we do not think that the Nevada state district court's assumption of in rem jurisdiction over the trust res compels dismissal here."). Here, the importance of the Territorial Court's quasi in rem jurisdiction is diminished by the fact that 15 U.S.C. § 687c(b) gives a district court "exclusive jurisdiction" over the property of an SBA receivership estate. Because the eviction action had not proceeded to final judgment, the unsold timeshare units remained the property of the Fairway estate at the time that GVI made its claim.[3] While it may be true

[3] GVI suggests that it possessed the unsold timeshare units, and thus that the property was not part of the Fairway estate. This allegation is at odds with the fact that GVI brought an eviction action, which is "[a]n action for the recovery of the possession of the premises." V.I. Code Ann. tit. 28, § 789(b). If GVI had been in actual possession of the unsold timeshare units, it would not have needed to bring an action for their recovery. Whether GVI is ultimately entitled to possession is not determinative of whether GVI was in actual possession of the unsold timeshare units at the time that the eviction action was stayed.

that § 687c(b) gives a district court discretion over whether to retain jurisdiction over the property of an estate, it was not an abuse of discretion for the district court to have concluded that jurisdiction was necessary to disentangle Fairway's assets. See United States v. Royal Bus. Funds Corp., 29 B.R. 777, 779-80 (S.D.N.Y. 1983) ("[T]he purpose of the federal receivership was to protect the assets pending the Small Business Administration's recovery on its investment, as well as to permit discovery of any past abuses of program funds." (quoting United States v. Norwood Capital Corp., 273 F. Supp. 236, 240 (D. S.C. 1967))). In addition, the district court was only determining the validity of GVI's claim to rights in the unsold timeshare units; as the Supreme Court stated in Princess Lida, "an action in the federal court to establish the validity or the amount of a claim constitutes no interference with a state court's possession or control of a res." 305 U.S. at 467; see also Bergeron, 777 F.2d at 799 (stating that Colorado River abstention was inappropriate where "claims against the [res] appear to be unrelated to the administration of the [res]"); Mattei v. V/O Prodintorg, 321 F.2d 180, 184 (1st Cir. 1963) ("[A] state court may properly adjudicate rights in property in the possession of a federal court and . . . the same procedure may be followed by a federal court with respect to property in the possession of a state court."). Because of the district court's "exclusive jurisdiction" over the timeshare units, we conclude that

the Territorial Court's quasi in rem jurisdiction over the units does not strongly favor abstention.

With respect to the second factor, we agree with the district court that the federal forum was not inconvenient. Although GVI initially claimed the need to present witnesses and evidence, it later renounced that desire when it stated to the court that "all of the issues that are before your Honor in any event really are issues of law that are based upon the record that is before you, that are contained in our briefs."[4] Even though Rhode Island may be physically distant from the Virgin Islands, in this era of electronic communications, legal arguments travel quickly. Because there was no need to bring any witnesses or present any evidence, GVI's claims of inconvenience carry little weight. See Villa Marina Yacht Sales, 915 F.2d at 15 (noting that the inconvenient forum factor is "concerned with the physical proximity of the federal forum to the evidence and witnesses").

The third factor requires the district court to determine whether there is a risk that "piecemeal litigation" would result if the case was held in a federal forum. The district court found that there was little risk of piecemeal litigation. We agree. The

---

[4] Indeed, we can discern no evidentiary disputes here; it appears that the primary disagreements are over the contractual construction of the Stipulated Settlement, which is a matter of law. See U & W Indus. Supply, Inc. v. Martin Marietta Alumina, Inc., 34 F.3d 180, 185 (3d Cir. 1994) (finding that "[t]he construction of an unambiguous contract is a matter of law for the court").

concern for piecemeal litigation does not arise simply when two courts might exercise parallel jurisdiction; "in considering whether the concern for avoiding piecemeal litigation should play a role in this case, the district court must look beyond the routine inefficiency that is the inevitable result of parallel proceedings to determine whether there is some exceptional basis for requiring the case to proceed entirely in [state] court." Id. at 16. In Colorado River, the Supreme Court found an exceptional basis where the federal statute that provided the cause of action had a "clear federal policy [of] . . . the avoidance of piecemeal adjudication." 424 U.S. at 819. In the present case, the jurisdictional statute at issue evinces a clear federal policy of resolving all disputes over Fairway's property in federal court. See 15 U.S.C. § 687c(b) (noting that in a SBA receivership proceeding, a court may "take exclusive jurisdiction of the licensee or licensees and the assets thereof, wherever located; and the court shall have jurisdiction in any such proceeding to appoint a trustee or receiver to hold or administer under the direction of the court the assets so possessed" (emphasis added)).

In addition, we have found that a risk of piecemeal litigation arises when "a ruling from the [state court] . . . would render our opinion merely advisory." Rivera-Feliciano v. Acevedo-Vilá, 438 F.3d 50, 62 (1st Cir. 2006). Here, there is little risk of that occurring: regardless of the ruling of the

Territorial Court, GVI would not be entitled to possession of the unsold timeshare units. If the Territorial Court was to rule in the eviction proceeding that Fairway was entitled to possession, then GVI would not be entitled to possession of the unsold timeshare units. If the Territorial Court ruled in favor of GVI in the eviction proceeding, GVI would still not be entitled to possession of the unsold timeshare units because it has already re-leased the property to HOTC.[5] Thus, a later ruling by the Territorial Court would have no effect on the district court's determination that GVI is not entitled to possession of the unsold timeshare units. Accordingly, there is little risk of piecemeal litigation.

As for the fourth factor, neither party disputes the fact that the Territorial Court obtained jurisdiction over the unsold timeshare units before the district court, and that this factor weighs in favor of abstention.

With regard to the fifth factor, the district court is correct that this case does not present one of the "rare circumstances [where] the presence of state-law issues may weigh in favor of [the] surrender" of federal jurisdiction. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 26 (1983). The

---

[5] GVI argues that a third possibility exists: that the Territorial Court would rule the Stipulated Settlement unenforceable, and thus HOTC's leasehold interest would revert to GVI. We find this argument implausible. See infra Part II.C.

district court found that the only issue involving Virgin Islands law was the interpretation of the Stipulated Settlement because, as we explained before, the only way that GVI could obtain possession of the unsold timeshare units is if (a) it prevailed in the eviction action and (b) the Stipulated Settlement was considered unenforceable. The only argument based on Virgin Islands law that GVI propounds in favor of finding the Stipulated Settlement unenforceable is that the Stipulated Settlement violates V.I. Code Ann. tit. 31, § 205(c), which states that no lease of Government property exceeding one year shall be valid unless approved by the legislature.[6] In light of the statutory policy of giving federal courts exclusive jurisdiction to resolve disputes over property involved in a SBA receivership proceeding, 15 U.S.C. § 687c(b), we conclude that it was within the discretion of the district court to find that the presence of a single state law issue did not outweigh the federal interests here.

As to the sixth factor, we do not agree with the district court that the Territorial Court would be inadequate to protect federal interests simply because it is not a court constituted

---

[6] The district court was correct to conclude that any remaining questions of contract construction under Virgin Islands law could be resolved by reference to the Restatement (Second) of Contracts. <u>See</u> <u>James</u> v. <u>Zurich-Amer. Ins. Co.</u>, 203 F.3d 250, 255 (3d Cir. 2000) ("All of the ALI Restatements of the Law (thus including the Restatement (Second) of Contracts . . .) have been adopted as definitive sources of rules of decision by the Virgin Islands Legislature.").

under Article III of the Constitution. State and territorial courts are normally competent to hear cases that involve federal interests. See, e.g., Gulf Offshore Co. v. Mobil Oil Corp., 453 U.S. 473, 479 (1981) ("[T]he presumption of concurrent jurisdiction can be rebutted by an explicit statutory directive, by unmistakable implication from legislative history, or by a clear incompatibility between state-court jurisdiction and federal interests."). The statement in 15 U.S.C. § 687c(b) that a federal court "may take . . . exclusive jurisdiction" over the assets of a SBA receivership estate is not sufficient to establish an "explicit statutory directive" to divest state courts of all jurisdiction over matters involving those assets, nor is there an "unmistakable implication from legislative history" to that effect. See Gulf Offshore Co., 453 U.S. at 479. Nor has the SBA Receiver argued that there is clear incompatibility between state court jurisdiction and federal interests. See id. Thus, the Territorial Court would not necessarily have been an inadequate forum to hear GVI's possessory claim. However, the fact that the Territorial Court might be an adequate forum does not militate in favor of abstention; we understand this factor to be important only when it disfavors abstention. See Bethlehem Contracting Co. v. Lehrer/McGovern, Inc., 800 F.2d 325, 328 (2d Cir. 1986). In other words, because "the possibility that the state court proceeding might adequately protect the interests of the parties is not enough to justify the

district court's deference to the state action," id., we find that this factor is neutral.

The seventh factor is the "vexatious or contrived nature of the federal claim." The district court did not address this factor directly. However, we do not see any basis for an argument that the receivership proceedings were "vexatious" or "contrived."

Finally, the eighth factor is "respect for the principles underlying removal jurisdiction." The district court did not make any finding as to this factor, but we believe that it does not favor abstention. In Villa Marina Yacht Sales, we stated that this factor was relevant if a plaintiff was attempting to evade the policy in 28 U.S.C. § 1441 that only a defendant be able to remove a lawsuit from state court to federal court. 915 F.2d at 14. We do not see how this factor is relevant in the present case, where GVI has evinced no desire to remove its eviction action from the Territorial Court to federal court.

Thus, of the eight factors, only one factor favors abstention: that the Territorial Court obtained jurisdiction before the district court did. The remaining factors are either neutral or favor a federal forum. Given that federal courts have a "virtually unflagging obligation" to exercise jurisdiction, Colorado River, 424 U.S. at 817, we do not believe that the district court abused its discretion in determining that this case

did not present the "exceptional" circumstances required for abstention.

### 2. "Odell Abstention"

In Odell v. H. Batterman & Co., the Second Circuit held that where a federal receiver had taken a tenant into receivership (because of financial problems), the receivership court should allow the tenant's landlord to pursue eviction proceedings in a parallel proceeding in state court. 223 F. at 299. The Second Circuit held that "[a] landlord has a right, which the court cannot properly disregard, to have its claim to the possession of [its] property passed upon and determined, and, if found to be valid, it has a right to be restored to the immediate possession of the property." Id. One might understand Odell to stand for the proposition that where a blanket stay of litigation would prohibit a party from having its claim of possession adjudicated, a federal court may exercise its discretion to lift the stay as to that party. Thus, our review is for abuse of discretion. See, e.g., Manhattan Rubber Mfg. Co. v. Lucey Mfg. Co., 5 F.2d 39, 41 (2d Cir. 1925) (finding that Odell applied an abuse of discretion standard); see also New Eng. Power and Marine, Inc. v. Town of Tyngsborough (In re Middlesex Power Equip. & Marine, Inc.), 292 F.3d 61, 69 (1st Cir. 2002) (noting that appellate courts review discretionary abstention decisions for abuse of discretion).

Odell was decided in 1918, and has not been cited since 1952. We need not decide whether it should be resurrected because there is a clear and significant difference between the facts of Odell and the situation here. In Odell, the landlord seeking to regain possession of his property had no forum in which to pursue a remedy; its state court action was stayed, and the federal court did not provide an opportunity for resolution of its claims. 223 F. at 299. GVI, however, has a federal forum for the resolution of its claims: the district court. In fact, GVI has had its possessory claim adjudicated. Thus, even assuming that we would recognize a doctrine of Odell abstention, we would find that the district court did not abuse its discretion in refusing to abstain from hearing GVI's possessory claim.

**B. Plenary Hearing**

GVI argues that it was entitled to a plenary hearing on its equitable and monetary claims, and that the district court did not provide it with one. The district court treated the Receiver's Report and Recommendation much like a summary judgment: it determined that there were no material disputes of fact and resolved the questions of law. Cf. City Equities Anaheim v. Lincoln Plaza Dev. Co. (In re City Equities Anaheim), 22 F.3d 954, 958 (9th Cir. 1994) ("Like many litigants, Lincoln sought to end a suit based on the absence of any disputed material facts. In this respect, its motion was akin to a motion for summary judgment.").

Summary judgment is appropriate only when "there is no genuine issue of material fact." Vives v. Fajardo, 472 F.3d 19, 21 (1st Cir. 2007). We review a grant of summary judgment de novo. Id.

GVI's claim that it was entitled to a plenary hearing cannot succeed because it fails to identify any disputed issues of fact. This was ultimately the same position GVI took in the district court. The court ordered GVI to put all of its objections (both factual and legal) to the SBA Receiver's Report and Recommendation in one single motion. GVI failed to raise any issues of fact in this motion. At the hearing on GVI's motion, when asked whether it had any additional evidence, GVI stated "Not in addition to what's already been submitted." Although GVI later asked for an evidentiary hearing on its equitable and monetary claims, after the court denied the request, GVI retreated and instead stated that "what we're talking about here and now, your Honor, are issues of law."

In light of GVI's on-the-record position that there were no factual disputes, and in light of GVI's inability to now point to evidence that would establish a disputed issue of material fact, we conclude that the district court did not err in approving the SBA Receiver's report and denying GVI an evidentiary hearing on its claims. See United States v. Ianniello, 824 F.2d 203, 207 (2d Cir. 1987) (finding no need for a plenary hearing where the court "gave defendants ample opportunity to rebut the government's case").

**C. GVI's Equitable Claim for Possession**

GVI argues that the court erred in denying its equitable claim for possession of the unsold timeshare units. Because there appear to be no disputed facts, we review the court's decision de novo. See Villafañe-Neriz v. FDIC, 75 F.3d 727, 730 (1st Cir. 1996) ("As the essential facts are not in dispute, and all that is before us is a question of law, our review of the district court's decision is de novo."); Hope Furnace Assocs. v. FDIC, 71 F.3d 39, 42 (1st Cir. 1995).

We begin by assuming, as the district court appears to have done, that GVI was entitled to terminate the Ground Lease with Fairway and that this would give GVI possession of the unsold timeshare units. However, GVI has entered into the Stipulated Settlement with HOTC, which gives HOTC possession of the units. Thus, if the Stipulated Settlement is valid and enforceable, HOTC, and not GVI, would be entitled to equitable possession of the timeshare units.[7] The district court found that the Stipulated

[7] GVI also raises an objection to consideration of the Stipulated Settlement under Federal Rule of Evidence 408. Rule 408 provides that a settlement agreement may not be used to prove "liability for, invalidity of, or amount of a claim that was disputed as to validity or amount." Here, the Stipulated Settlement is not being used as evidence of liability on the part of GVI. To the contrary, we have assumed for the purposes of argument that Fairway was liable and that GVI was entitled to terminate the Ground Lease. Instead, we use the Stipulated Settlement only to determine whether GVI has subsequently relet the unsold timeshare units to another party, in which case GVI would no longer be entitled to possession of the premises. Thus, the district court's use of the Stipulated Settlement does not implicate Rule 408 concerns.

Settlement was valid and enforceable, and thus denied GVI's equitable claim for possession. We agree that GVI is not entitled to possession of the unsold timeshare units.

GVI raises two arguments against enforcing the Stipulated Settlement. First, GVI argues that V.I. Code Ann. tit. 31, § 205 (c) requires that all dispositions of government property, including each individual lease and subsequent reletting, be approved by the legislature of the Virgin Islands. Section 205(c) states, in relevant part:

> [N]o sale, exchange, lease or sublease of government real estate, nor any use permit of the same for a term exceeding one year (including the period of any allowable extensions or renewals) nor sublease of government real estate for a term exceeding five years (including the period of any allowable extensions or renewals) shall be deemed binding upon the Government of the United States Virgin Islands, unless and until (1) such proposed sale or exchange or such proposed lease or sublease shall have been submitted to the Legislature, while in regular or special session, (2) shall have been approved by the Legislature.

V.I. Code Ann. tit. 31, § 205(c). Although there do not appear to be any Virgin Islands law decisions that interpret Section 205(c), we find GVI's proposed interpretation of the law to be highly improbable. First, neither of the prior amendments to the Ground Lease appear to have received legislative approval. In addition, V.I. Code Ann. tit. 3, § 218(a)(5) appears to give the Department of Property and Procurement of the Virgin Islands the power to

"manage rental properties owned or controlled by the Government, except as limited by Federal law, hotels, and housing development programs or projects; and make inventory and establish forms and procedures for the sale, rental, or disposition thereof." In addition, Article 8.03(b) of Amendment No. 2 to the Ground Lease, whose validity is not in dispute, plainly states that in the event of a lessee's default, GVI may "[e]ither cancel this Lease by notice or without canceling this Lease, relet the Lease premises or any part thereof upon such terms and conditions as shall appear advisable to [GVI]." Thus, while § 205(c) may require some authorizing act for the disposition of government real estate, we do not believe it requires the legislature to engage in the minutiae of defaults and relettings. Because the legislature authorized the initial lease of Protestant Cay in Act No. 1178 (April 2, 1964), we conclude that no additional legislative approval was needed for the Stipulated Settlement, which relet the premises to HOTC.[8]

---

[8] To the extent that GVI claims that the Stipulated Settlement constituted an entirely new lease, we agree with the district court that, in the absence of contrary indication, contracts should be construed so as to be legal and enforceable. Restatement (Second) of Contracts, § 203(a) cmt. c. Thus, in accordance with this canon of contract construction, we construe the Stipulated Settlement to be a valid and lawful reletting rather than an invalid and unlawful separate lease. This conclusion is bolstered by the fact that GVI calls the Stipulated Settlement "merely an attempt to mitigate GVI's damages," rather than a new contractual arrangement. <u>See</u> Appellant's Br. at 59.

GVI's second argument is that the SBA Receiver may not use the Stipulated Settlement to deny GVI's equitable claim because Fairway was neither a party to the agreement nor an intended beneficiary of the agreement. Thus, GVI argues, the only party who may use the Stipulated Settlement to deny GVI's claim is HOTC. The district court found that "the Receiver was appointed to receive the claims of all creditors of the Fairway Estate and to recommend the disposition of those claims." Thus, the district court concluded that the SBA Receiver could use the Stipulated Settlement in determining whether GVI was entitled to possession of the unsold timeshare units.

Section 687c(b) gives a court the power to put a Small Business Investment Company into receivership; "the receiver is charged with the responsibility for obtaining possession of the assets of the corporation prior to its liquidation." Small Business Administration v. Segal, 383 F. Supp. 198, 203 (D. Conn. 1974). Receivership is "an attempt to provide equitable relief on the road to some form of full and final relief." 13 Moore's Federal Practice § 66.03. Thus, "a district court in its discretionary supervision of an equitable receivership may deny remedies like rescission and restitution where the equities of the situation suggest such a denial would be appropriate." United States v. Vanguard Inv. Co., 6 F.3d 222, 227 (4th Cir. 1993). Here, the SBA Receiver was charged with collecting, disentangling,

and liquidating the assets of Fairway. The SBA Receiver collected the unsold timeshare units because Fairway was "in possession" of them at the time the receivership proceedings were brought. GVI then submitted a equitable claim to the Receiver because it believed that it was entitled to possession of the resort. However, the SBA Receiver was not limited to merely determining whether GVI's claim to the unsold timeshare units was superior to that of Fairway. Rather, the SBA Receiver was entitled to determine, based on the evidence submitted, whether GVI had any equitable claim to possession of the unsold timeshare units. While Fairway may or may not have been entitled to possession of the unsold timeshare units,[9] it is clear from the Stipulated Settlement that GVI was not entitled to possession of them. Thus, neither the SBA Receiver nor the district court erred in concluding that, based on the Stipulated Settlement, GVI's possessory claim to the unsold timeshare units should be denied.

**D. GVI's Monetary Claim**

GVI also brought a monetary claim against the Fairway receivership estate in the amount of $1,450,760. The district court granted $430,421.84 of the claim, denying the remainder. GVI argues that at a minimum, it was entitled to $489,552.09. This

---

[9] In this respect, HOTC also submitted a monetary, but not a possessory, claim to the Receiver. Whether HOTC or the receivership estate would prevail in a possessory claim is beyond the scope of this opinion.

discrepancy appears to be the result of a disagreement as to when PSC stopped managing the resort and HOTC took over. GVI claims that PSC stopped managing the resort on May 31, 1998, and thus it is entitled to rent until this date. The district court, relying on the findings of fact in Hotel on the Cay Time-Sharing Assoc. v. Kilberg, 2000 WL 34019282 (D.R.I. 2000), found that PSC stopped managing the resort on May 31, 1997. GVI seems to suggest that some of the findings of fact in that case were erroneous. However, GVI does not point to any evidence that it submitted which would suggest that Kilberg got the date wrong, or that its date is the correct date. Simply put, GVI cannot show, based on the record, what was wrong with the district court's disposition of its monetary claim. Accordingly, we detect no error.

### III. Conclusion

For the reasons stated herein, we affirm the judgment of the district court.

**Affirmed**.